**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHARI AHRENDSEN, BARRY CLEMENT, and LISA BUSH on behalf of the World Travel, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PRUDENT FIDUCIARY SERVICES, LLC, a California Limited Liability Company, MIGUEL PAREDES, JAMES A. WELLS, JAMES R. WELLS, AND RICHARD G. WELLS.<br><br>    Defendants. | **Case No. 2:21-cv-02157-HB** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS PRUDENT FIDUCIARY
SERVICES AND MIGUEL PAREDES'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

   I.  Background and Legal Framework for ESOP Transactions. ................................. 2

   II.  Summary of the Transaction. ...................................................................... 6

LEGAL STANDARD............................................................................................. 7

ARGUMENT ...................................................................................................... 7

   I.  Virtually the Entire FAC is Baseless Speculation................................................ 7

      A.  The FAC shows that the ESOP did not overpay. ....................................... 9

      B.  The FAC fails to allege deficiencies in Mr. Paredes's process. ............................... 11

   II.  Plaintiffs Fail to Adequately Allege a Prohibited Transaction Under § 1106(a). ............. 13

   III.  Plaintiffs Fail to Adequately Allege a Prohibited Transaction Under § 1106(b). .............. 16

   IV.  Plaintiffs Have Failed to State a Claim For Any Breach of Fiduciary Duty..................... 19

   V.  Plaintiffs Have Failed to Allege Sufficient Facts to Show that PFS Functioned as an ERISA Fiduciary. ............................................................................... 25

CONCLUSION.................................................................................................... 25

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Allstate Vehicle & Prop. Ins. Co. v. Phila. Housing Auth.*,
   394 F. Supp. 3d 535 (E.D. Pa. 2019) ........................................................ 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 2, 7, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 7, 8

*Buck v. Hampton Tp. School. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ................................................................. 10

*Byers v. Intuit, Inc.*,
   No. 07-cv-4753, 2009 WL 948651 (E.D. Pa. Mar. 18, 2009), *aff'd*, 600 F.3d 286
   (3d Cir. 2010) ................................................................................ 25

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ............................................................. 22, 24

*Carson v. Tucker*,
   No. 5:20-cv-00399, 2020 WL 1953655 (E.D. Pa. Apr. 23, 2020) ............................ 13

*Cervantes v. Invesco Holding Co. (US)*,
   No. 1:18-cv-2551, 2019 WL 5067202 (N.D. Ga. Sept. 25, 2019) ............................. 2

*Chao v. Hall Holding Co.*,
   285 F.3d 415 (6th Cir. 2002) .............................................................. 3, 4

*Cook Techs., Inc. v. Panzarella*,
   Nos. 15-cv-1028, 15-cv-3568, 2018 WL 6616932 (E.D. Pa. Dec. 18, 2018) ................. 3, 4, 5

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ...................................................... 3, 4, 13, 15

*Eyler v. Comm'r*,
   88 F.3d 445 (7th Cir. 1996) ................................................................ 15

*F.H. Krear & Co. v. Nineteen Named Trs.*,
   810 F.2d 1250 (2d Cir. 1987) ........................................................... 18, 19

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .................................................................. 3, 7, 15

*Garfield v. Shutterfly, Inc.*,
   No. 20-2249, 2021 WL 2026854 (3d Cir. May 21, 2021) ...................................... 23

*Gochin v. Haaz*,
   No. 16-cv-5359, 2017 WL 4475973 (E.D. Pa. May 10, 2017), *aff'd*, 724 F. App'x 155
   (3rd Cir. 2018).................................................................................................... 8

*Goldman v. Barrett*,
   825 F. App'x 35 (2d Cir. 2020)............................................................................ 8

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004)................................................................................ 24

*Harmon v. FMC Corp.*,
   No. 16-6073, 2018 WL 1366621 (E.D. Pa. Mar. 16, 2018).................................... 20

*Henry v. Champlain Enters., Inc.*,
   445 F.3d 610 (2d Cir. 2006) ....................................................................... 3, 4, 13, 14

*Henry v. Champlain Enters., Inc.*,
   No. 01-cv-1681, 2010 WL 2038841 (N.D.N.Y. May 21, 2010)............................. 12

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)............................................................................... 10

*In re Exxon Mobil Corp. Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007 ).......................................................................... 21, 22

*In re Fid. ERISA Fee Litig.*,
   No. 19-cv-10335, 2020 WL 759542 (D. Mass. Feb. 14, 2020), *aff'd*, 990 F.3d 50
   (1st Cir. 2021) .................................................................................................... 18

*In re Processed Egg Prods. Antitrust Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012) .................................................................. 22

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002)................................................................................. 23

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018)............................................................................... 7

*Institutional Invs. Grp. v. Avaya*,
   564 F.3d 242 (3d Cir. 2009)................................................................................ 23

*Johnson v. Radian Grp. Inc.*,
   No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009).................................... 22

*Keach v. U.S. Tr. Co., N.A.*,
   313 F. Supp. 2d 818 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005) ................................ 2

*Keach v. U.S. Tr. Co., N.A.*,
   419 F.3d 626 (7th Cir. 2005) ........................................................................................ 3, 4

*Leber v. Citigroup, Inc.*,
   No. 07 Civ. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ................................. 14

*Lee v. Argent Trust Co.*,
   No. 5:19-cv-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ............................................. 10

*Leventhal v. MandMarblestone Grp. LLC*,
   No. 18-cv-2727, 2020 WL 2745740 (E.D. Pa. May 27, 2020) ............................................. 14

*Leveto v. Lapina*,
   258 F.3d 156 (3d Cir. 2001) ................................................................................................ 14

*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
   No. 20-6827, 2021 WL 2103231 (D.N.J. May 24, 2021) ..................................................... 24

*Marks v. Indep. Blue Cross*,
   71 F. Supp. 2d 432 (E.D. Pa. 1999) ............................................................................... 18, 19

*Nat'l Ret. Fund v. Metz Culinary Mgmt.*,
   946 F.3d 146 (2d Cir. 2020) ............................................................................................... 10

*Nicolas v. Trs. of Princeton Univ.*,
   No. 17-3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017) .................................................... 24

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ........................................................................................................... 18

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ............................................................................................... 20

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) .............................................................................................. 15

*Perez v. Koresko*,
   86 F. Supp. 3d 293 (E.D. Pa. 2015) .................................................................................... 21

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ............................................................................................... 23

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) ................................................................................................. 21

iv

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ................................................................... 18, 19

*Rogers v. Conair Corp.*,
   No. 10-1497, 2011 WL 1809510 (E.D. Pa. May 12, 2011) ..................................... 24

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................... 22

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................ 11

*Sacerdote v. New York Univ.*,
   No. 16-CV-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017)....................... 24

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ............................................................... 14, 20

*Top v. Ocean Petroleum, LLC*,
   No. 10-cv-1042, 2010 WL 3087385 (D.N.J. Aug. 3, 2010) ................................. 8, 9

*United States v. Eastwick Coll.*,
   657 F. App'x 89 (3d Cir. 2016) ................................................................ 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 22

*Vigeant v. Meek*,
   953 F.3d 1022 (8th Cir. 2020) ............................................................... 22

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir.1997) .................................................................... 9

*Woods v. S. Co.*,
   396 F. Supp. 2d 1351 (N.D. Ga. 2005) ....................................................... 22

Statutes

29 U.S.C. § 1001 ................................................................................ 1
29 U.S.C. § 1002(14)(B) ........................................................................ 19
29 U.S.C. § 1002(14)(C) ......................................................................... 3
29 U.S.C. § 1002(14)(H) ......................................................................... 3
29 U.S.C. § 1002(18)(B) ......................................................................... 3
29 U.S.C. § 1104(a)(1) ..................................................................... 15, 20
29 U.S.C. § 1106 ....................................................................... 14, 17, 19
29 U.S.C. § 1106(a) ..................................................................... 3, 13, 14
29 U.S.C. § 1106(a)(1) ................................................................. 13, 14, 16
29 U.S.C. § 1106(b) ............................................................................ 16

29 U.S.C. § 1106(b)(2) ................................................................................ 16, 19
29 U.S.C. § 1106(b)(3) ...................................................................... 16, 17, 18, 19
29 U.S.C. § 1108 ............................................................................................... 14
29 U.S.C. § 1108(b) ......................................................................................... 16
29 U.S.C. § 1108(b)(2) ..................................................................................... 19
29 U.S.C. § 1108(b)(3) ................................................................................ 16, 19
29 U.S.C. § 1108(e) .......................................................................... 3, 14, 16, 17
29 U.S.C. § 1109 ............................................................................................... 25
I.R.C. § 404(a)(9) ............................................................................................. 16

Rules

Fed. R. Civ. P. 8 .............................................................................................. 25
Fed. R. Civ. P. 9 ........................................................................ 2, 22, 23, 24, 25
Fed. R. Civ. P. 9(b) ............................................................................. 22, 23, 24
Fed. R. Civ. P. 11 ......................................................................................... 8, 11
Fed. R. Civ. P. 11(b)(3) ...................................................................................... 7

Regulations

29 C.F.R. § 2550.408e ................................................................................. 16, 17
Proposed Regulation Relating to the Definition of Adequate Consideration,
    53 Fed. Reg. 17,632 (May 17, 1988) ......................................................... 12

## INTRODUCTION

Even after amending their Complaint, Plaintiffs' First Amended Complaint, Dkt. No. 36 ("FAC") still only consists of a single fact, two guesses, and a conclusion. The fact is unremarkable: two parties entered into a transaction. Specifically, the FAC describes that the World Travel, Inc. ("WTI") Employee Stock Ownership Plan ("ESOP") used a loan to acquire all of WTI's outstanding shares from Defendants James A. Wells, James R. Wells, and Richard G. Wells ("Wells Defendants") for $200,573,217 in December 2017 ("Transaction"). It alleges that Prudential Fiduciary Services, LLC ("PFS") and Miguel Paredes (together, the "Paredes Defendants") acted as the independent trustee of the ESOP in the deal. This information is publicly available and, despite some errors in the FAC's description, not controversial.

The FAC devolves into wild guesswork in two ways. *First*, Plaintiffs speculate that the appraisal on which Mr. Paredes[1] relied in the Transaction contained any one of a laundry list of errors that an appraiser ***might*** make when valuing a closely held company. *Second*, Plaintiffs simply guess that Mr. Paredes did not conduct the due diligence they say is required of an ESOP trustee before he caused the ESOP to agree to the deal. Plaintiffs give no reasons—***none***—to support their pure conjecture, but instead preface each with the Rule 11 qualifier that they "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Based on the product of this one fact ("there was a transaction") and these guesses ("the valuation could contain errors," "the process could have been deficient"), the FAC summarily concludes that the Paredes Defendants caused the ESOP to overpay for WTI's stock, in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Remarkably, nowhere does the FAC allege whether Plaintiffs believe the overpayment to be $100,

---

[1] As explained below, documents incorporated by reference in the FAC show that Mr. Paredes was the ESOP trustee, not PFS. *See infra* Part V.

$100 million, or something in between.

Against this backdrop, the Court should dismiss the FAC for four reasons. *First*, the Court should dismiss the entirety of the FAC because ***virtually all*** of its key allegations are pure speculation. Plaintiffs' assurance that their claims "will likely have evidentiary support" is a tacit admission that their suit is a fishing expedition. And, contrary to what Plaintiffs will argue, these words should not be used as a magic wand to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). *Second*, Count I should be dismissed because Plaintiffs have not adequately alleged, as they must, that the Transaction does not fall within one of ERISA's prohibited transaction exemptions. *Third*, the FAC's allegations in support of Plaintiffs' breach of fiduciary claims in Count II are so threadbare that they, too, must fail. *Fourth*, Count II's breach of fiduciary duty claims sound in fraud, but Plaintiffs have failed to meet Federal Rule of Civil Procedure 9's heightened standard to plead fraud with particularity. *Finally*, only Mr. Paredes was authorized to act as ESOP trustee in the Transaction, so all counts against PFS must be dismissed.[2]

## BACKGROUND

### I.   Background and Legal Framework for ESOP Transactions.

ESOPs are a type of benefit plan that "invest[] primarily in the employer's stock" and fosters employee ownership. *Keach v. U.S. Tr. Co., N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005). Congress views the proliferation of employee ownership as an important goal and, since ERISA's passage in 1974, has thus consistently encouraged employers

---

[2] Counts I and II are specifically addressed below. Should the Court dismiss Counts I and II against the Paredes Defendants, the Court must also dismiss Counts III (against the Paredes Defendants) and IV (against the Wells Defendants). Count III, which challenges whether an indemnification provision is void against public policy under section 410 or ERISA, would necessarily be mooted by the dismissal of Counts I and II. Count IV and V's claims against the individual defendants are similarly derivative of those in Counts I and II, and so must necessarily be dismissed alongside them. *See, e.g.*, *Cervantes v. Invesco Holding Co. (US)*, No. 1:18-cv-2551, 2019 WL 5067202, at *7, *13-14 (N.D. Ga. Sept. 25, 2019) (dismissing derivative ERISA claims where plaintiff "[had] not alleged enough . . . to state a claim for the underlying breaches").

to create ESOPs. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (describing congressional interest in encouraging ESOPs).

An ESOP's purchase of stock is technically a "prohibited transaction" under ERISA section 406(a), which prohibits a fiduciary from "caus[ing] the plan to engage in" the "sale or exchange . . . of any property between the plan and a party in interest[,]" including the "acquisition, on behalf of the plan, of any employer security." 29 U.S.C. § 1106(a).[3] Recognizing that ERISA's rules would "significantly hamper the implementation of ESOPs, particularly by small companies," Congress created a "conditional exemption . . . for acquisition of employer securities by ESOPs." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006); *Cook Techs., Inc. v. Panzarella*, Nos. 15-cv-1028, 15-cv-3568, 2018 WL 6616932, at *14 (E.D. Pa. Dec. 18, 2018) (discussing exemptions to prohibited transaction rules). The exemption allows ESOPs to acquire employer stock "if the purchase is made for 'adequate consideration.'" *Henry*, 445 F.3d at 618 (citing 29 U.S.C. § 1108(e)); *Cook Techs.*, 2018 WL 6616932, at *14 (same). ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." *Henry*, 445 F.3d at 618 (citing 29 U.S.C. § 1002(18)(B)); *Chao v. Hall Holding Co.*, 285 F.3d 415, 425 (6th Cir. 2002) (same), *cert. denied*, 537 U.S. 1168 (2003).

In a typical transaction, an ESOP, represented by an independent trustee, acquires employer stock through a stock purchase transaction. *See, e.g.*, *Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983) (describing a typical ESOP transaction). The trustee, in consultation with its professional advisors, conducts due diligence and negotiates with the selling shareholders to arrive at a purchase price. *See, e.g.*, *Keach*, 419 F.3d at 630 (describing advisors typically engaged in an

---

[3] Under 29 U.S.C. § 1002(14)(C), (H), a "party in interest" is an "employee, officer, director . . . or a 10 percent or more shareholder directly or indirectly" of "an employer any of whose employees are covered by the plan."

ESOP transaction). The issue of whether the ESOP paid "adequate consideration" in the transaction is "expressly focused upon the ***conduct*** *of* the fiduciaries . . . . ESOP fiduciaries will carry their burden . . . by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing." *Chao*, 285 F.3d at 437 (quoting *Cunningham*, 716 F.2d at 1467-68); *Cook Techs.*, 2018 WL 6616932, at *15 (same).

To aid its investigation, trustees often "secur[e] an independent assessment from a financial advisor or legal counsel." *Chao*, 285 F.3d at 430. For example, trustees typically retain an independent valuation expert to opine on the company's fair market value and legal counsel to advise it on negotiating the legal terms of the transaction. *See Henry*, 445 F.3d at 614 ("[G]eneral requirements of an ESOP transaction" include hiring "a financial appraiser, and a trustee to represent the ESOP."); *Keach*, 419 F.3d at 636-37 ("[S]ecuring an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation[.]"). Though fiduciaries "need not become experts in the valuation of closely-held stock" because "they are entitled to rely on the expertise of others," *Cunningham*, 716 F.2d at 1474, a fiduciary must "investigate the expert's qualifications, provide the expert with complete and accurate information[,] and make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Keach*, 419 F.3d at 637 (internal quotation marks omitted); *see Cook Tech.*, 2018 WL 6616932, at *15 (same).

Newly formed ESOPs have no assets when first established, but employee-participants rarely contribute any money to finance the ESOP's initial stock purchase. Instead, ESOPs nearly always finance their initial purchases with ***loans from*** the sponsor company, which the ESOP then pays down using ***contributions from*** the sponsor company. Vaughn Gordy, et al., Nat'l Ctr. for Emp. Ownership, LEVERAGED ESOPS AND EMPLOYEE BUYOUTS 5-9 (6th ed. 2017)

4

("NCEO Leveraged ESOPs").[4] While there are many ways to structure the financing of an ESOP transaction, one common arrangement involves the sponsoring company borrowing funds from a third party, like a financial institution (commonly called the "external loan"), and lending those funds—often at a below-market interest rate—to the ESOP for its stock purchase (commonly called the "internal loan"):



NCEO Leveraged ESOPs at 130.

Parties typically structure ESOP acquisitions using an internal loan with a long repayment period and low interest rate to spread out distributions of company stock to employees over many years. *See generally* NCEO Leveraged ESOPs at 5-9. Each year after the initial transaction, the ESOP receives funds from the sponsoring company, either in the form of required contributions or dividends, and sends those funds back to the company to pay down the internal loan (which the company often then uses to pay down the external loan). *Id.* As the ESOP pays down the internal loan, shares of the company's stock held in a suspense account are released to ESOP participant accounts in proportion to the amount of the amortized debt. *Id.* This structure motivates several

---

[4] This text is published by the National Center for Employee Ownership ("NCEO"). Founded in 1981, the NCEO is a nonprofit trade organization focused on employee ownership with over 3,000 members across the country that, among other things, "generate[s] original research, facilitate[s] the exchange of best practices . . . , [and] feature[s] the best and most current writing by experts in our publications . . . ." NCEO, *About*, https://www.nceo.org/about (last visited Sept. 19, 2021).

generations of employees to maximize a company's performance and value—a chief purpose of ESOPs—by sharing the company's growth and prosperity with them over time.

## II.      Summary of the Transaction.

Founded in 1983 by James R. Wells, Richard G. Wells, and James A. Wells, WTI is a global mid-market leader in corporate travel management. FAC ¶ 31. WTI is headquartered in Exton, Pennsylvania and has around 500 employees. *Id.* at ¶¶ 31-32.

WTI engaged Mr. Paredes to act as the independent trustee representing the WTI ESOP in the Transaction. Before establishing his company, PFS, Mr. Paredes had a distinguished twelve year career as an investigator and supervisor at the U.S. Department of Labor ("Department"), Employee Benefits Security Administration ("EBSA"). *See* Prudent Fiduciary Servs., *About Prudent Fiduciary Services*, https://www.fiduciaryservices.com/about-1/ (last visited Sept. 19, 2021). One of Mr. Paredes's primary responsibilities at EBSA was to oversee its regional office's ESOP investigations. *Id.* In this role, Mr. Paredes personally reviewed, in detail, valuation reports, terms, and ESOP fiduciaries' due diligence processes for many ESOP deals. *Id.*[5]

As the WTI ESOP's independent trustee, Mr. Paredes conducted financial and legal due diligence, negotiated on the ESOP's behalf, and ultimately decided whether the ESOP would enter into the deal. FAC ¶ 6. Mr. Paredes engaged his own financial and legal advisors to assist him.

The parties structured the Transaction as ESOP transactions are often structured: the ESOP would acquire a 100% interest in WTI for $200,573,217, financed with an internal loan from WTI with a forty-five-year term, and bearing interest at an annual nominal rate of 2.64%. FAC ¶ 5.

---

[5] Mr. Paredes made significant contributions to EBSA's ERISA enforcement program that directly resulted in improved compliance processes that not only affected particular employee benefit plans, but also had far-reaching effects within the employee benefits industry. Prudent Fiduciary Servs., *About Prudent Fiduciary Services*, https://www.fiduciaryservices.com/about-1/ (last visited Sept. 19, 2021). Mr. Paredes was recognized as a 3-time recipient of the prestigious U.S. Department of Labor Secretary's Award for these efforts. *Id.*

## LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are an "important mechanism for weeding out meritless claims" brought under ERISA. *Dudenhoeffer*, 573 U.S. at 425. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Id.* Allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.   Virtually the Entire FAC is Baseless Speculation.

By presenting a complaint to a court, a party represents that "the factual contentions have evidentiary support or, if specifically so identified, ***will likely*** have evidentiary support after a reasonable opportunity for further investigation and discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added). The Federal Rules permit this flexibility out of recognition that, as is sometimes the case with ERISA lawsuits, plaintiffs cannot state a claim "without pleading facts which tend systematically to be in the sole possession of the defendants." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir. 2018).

Yet prefacing nearly every allegation—especially the allegations that are at the very core of the dispute—with the disclaimer that it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," as Plaintiffs do, cannot convert conclusory,

speculative assertions into plausible allegations. *See* FAC ¶¶ 58, 62, 67, 69, 71, 72, 77. The Supreme Court has rejected the notion that such "a wholly conclusory statement of [a] claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." *Twombly*, 550 U.S. at 561 (internal quotation marks omitted); *see also Goldman v. Barrett*, 825 F. App'x 35, 38 (2d Cir. 2020) ("[A]n attorney may not rely on discovery to manufacture a claim that lacks factual support in the first instance."). There are limits to Rule 11's allowance of pleadings based on evidence anticipated after further investigation:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; ***it is not a license to join parties, make claims, or present defenses without any factual basis or justification***.

Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment (emphasis added); *see Gochin v. Haaz*, No. 16-cv-5359, 2017 WL 4475973, at *8 (E.D. Pa. May 10, 2017) ("The Circuit permits information and belief allegations where . . . there are no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations.") (internal quotation marks omitted), *aff'd*, 724 F. App'x 155 (3rd Cir. 2018).

In other words, while a plaintiff need not know everything about what occurred to make out a claim, he must know—and plead—*something* more than "a mere hunch or guess." *Top v. Ocean Petroleum, LLC*, No. 10-cv-1042, 2010 WL 3087385, at *4 (D.N.J. Aug. 3, 2010); *see United States v. Eastwick Coll.*, 657 F. App'x 89, 95 (3d Cir. 2016) ("[W]hen pleading on information and belief, 'boilerplate and conclusory allegations will not suffice' and the plaintiffs must make 'factual allegations that make their theoretically viable claim plausible.'").

Plaintiffs must instead "have some good reasons . . . for believing that the defendant has

engaged in some identifiable legal wrong, sufficient to convince the Court of the claim's plausibility in light of the other possible scenarios that are consistent with the facts alleged." *Top*, 2010 WL 3087385, at *4 (citing *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 318 n.8 (3d Cir.1997)); *see* Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 9(E) (4th ed. 2008) ("There is a distinction between a reasonable inference—one ***based upon and rationally linked to the evidence known to the presenter***—and rank speculation.") (emphasis added). Plaintiffs have given no reason—let alone a good one—to believe that future discovery will likely yield evidentiary support for their hunch that Mr. Paredes oversaw a deficient process that led the ESOP to overpay.

### A.  The FAC shows that the ESOP did not overpay.

Quite the contrary, Plaintiffs' allegations show that the WTI ESOP paid *less* than fair market value. Understanding why requires an understanding of the relationship between enterprise value and equity value. An asset's enterprise value is equal to its equity value plus any debt.[6] It is conceptually similar to the value of a home purchased with a mortgage: enterprise value is akin to the home's purchase price, while equity value is akin to a homeowner's equity stake in that home. Consider the following scenarios concerning a home whose fair market value is $1 million:

(1) A buyer purchases the home for $1 million with a $200,000 down payment and $800,000 mortgage. The "enterprise value" is $1 million and the "equity value" is $200,000.

(2) A buyer purchases the home for $1 million with no down payment and a $1 million mortgage. The "enterprise value" of the home is $1 million and the equity value is $0.

(3) A buyer is able to get a deal on the home—it pays $900,000 for the $1 million home— with no down payment and a $900,000 mortgage. The "enterprise value" is $1 million and the "equity value" is $100,000.

This enterprise-equity value distinction appears in case law regarding ESOP deals. The

---

[6] Shannon P. Pratt & Alina V. Niculita, *Valuing a Business: The Analysis and Appraisal of Closely Held Companies* 216 (5th ed. 2008) (enterprise value is the sum of "all the equity and all the interest-bearing debt" of a company).

Court in *Lee v. Argent Trust Co.*, No. 5:19-cv-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019),

which involved a near-identical complaint challenging the terms of another fully-leveraged ESOP

transaction, explained the concepts similarly:

> [I]t is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house. Suppose that a buyer finds a house that is listed at $198,000. The buyer has no money for a down payment, however, so she obtains a $198,000 mortgage loan in order to buy the house. The buyer has taken on a $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home). As a result, she has experienced no change in equity; her asset and her corresponding obligation result in $0 in new equity. But now suppose that the $198,000 house is actually worth $262,800, and our buyer was able to purchase the house at a discount. She still has her $198,000 mortgage, but now she also has $64,800 in equity; if she were to turn around and sell the house at its $262,800 value, after paying off her mortgage, she would be left with a tidy profit of $64,800.

*Id.* at *3. In dismissing the complaint, the *Lee* court held that the ESOP in question did not overpay

for the subject company's stock because its post-transaction Form 5500[7] disclosure filing showed

that it had equity value remaining after the fully-leveraged deal. *Id.* at *4. The ESOP was instead

"left with a tidy profit," like the buyer in scenario (3), above. *Id.* at *3.

Like the buyer in scenario (3) and the ESOP in *Lee*, the WTI ESOP's public filings reveal

that it got a deal—made "a tidy profit." Specifically, the WTI ESOP's Form 5500 for December

31, 2017, shows that, just ten days after its ***fully-leveraged*** acquisition, it had an equity stake in

WTI of ***$20,654,400***. *See* Golumbic Decl., Ex. 1, WTI 2017 Form 5500, Schedule H at 2.[8]

---

[7] The Form 5500 is "an annual report, filed with the United States Department of Labor, for an employee benefit plan." *Nat'l Ret. Fund v. Metz Culinary Mgmt.*, 946 F.3d 146, 148 n.1 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 246 (2020). They are available online. *See* Dep't of Labor, *Form 5500 Search*, https://5500search.dol.gov/ (last visited Sept. 19, 2021).

[8] Courts are generally limited to the four corners of the complaint at the pleadings stage. But Third Circuit Courts have recognized "an exception to the general rule" that allows a court to consider "a document *integral or explicitly relied* upon in the complaint" without converting a motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted); *see also Buck v. Hampton Tp. School. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that a district court may consider at the pleadings stage "documents that are attached to or submitted with the complaint" and "any 'matters incorporated by reference'"). The Court may consider the WTI ESOP's Form 5500 filing at the pleadings stage because Plaintiffs have incorporated it by reference and relied on it. *See* FAC ¶¶ 22, 41, 48-50, 128.

As in *Lee*, there is thus no reason to "reasonably anticipate[]" that discovery would yield evidence supporting an allegedly inflated purchase price given that Plaintiffs cannot plausibly allege that the price was inflated. *Rotella v. Wood*, 528 U.S. 549, 560 (2000) (stating that Rule 11 offers flexibility by "allowing pleadings based on evidence reasonably anticipated after further investigation or discovery"). When it comes to the supposed overpayment, Plaintiffs cannot offer a rational link between what they know and what they hope discovery will yield.

**B.  The FAC fails to allege deficiencies in Mr. Paredes's process.**

Plaintiffs run up against the same problems with their process-related claims. The few allegations having anything to do with WTI's due diligence are conclusory assertions and generic recitations of oft-complained of valuation issues in ESOP suits. Absent from the FAC is ***any*** plausible allegation that such issues actually occurred in ***this*** Transaction. For example, paragraph 71's allegation that WTI provided the Paredes Defendants with "unreasonably optimistic" financial projections is conclusory. Plaintiffs say nothing about what the projections were, why they were "optimistic," whether or how Mr. Paredes or his valuation advisor relied on the projections in valuing the WTI stock, or whether Mr. Paredes or his advisor adjusted or discounted the projections to account for any undue optimism. Bald assertions that Mr. Paredes received "optimistic" projections cannot support a claim that Mr. Paredes breached his fiduciary duties in assessing the Transaction.

Plaintiffs' allegations about purported flaws in the valuation on which Mr. Paredes relied are equally deficient. For example, Plaintiffs assert that "[t]he Plan paid a control premium for [WTI] even though the Plan did not obtain control" of WTI's board and "the Plan did not receive a discount for lack of control." FAC ¶ 67. A "control premium" adjusts the share price upward to reflect the value of the control rights that a buyer may obtain.

To begin with, Plaintiffs again allege ***no*** facts supporting the conclusory assertion that the

ESOP either paid a control premium or did not receive a discount for lack of control. Even assuming it were true that one or more of the Wells Defendants remained on WTI's board post-Transaction and that the ESOP paid a control premium, those facts would not support a claim that Mr. Paredes breached any fiduciary duty or that the ESOP overpaid. Plaintiffs overlook that the ESOP owned every single share of WTI's stock after the Transaction. If one or more of the Wells Defendants remained in their positions after the Transaction, it was only because the new shareholder—the ESOP—wanted them to. Moreover, as reflected in proposed regulations set forth by the Department, ESOPs can pay a control premium for a control interest *even if* selling shareholders remain involved in official positions after an ESOP transaction:

> The Department proposes that a plan purchasing control may pay a control premium . . . . [A] plan would not fail to receive control merely because individuals who were previously officers, directors or shareholders of the corporation continue as plan fiduciaries or corporate officials after the plan has acquired the securities.

Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632-01, 17,636 (May 17, 1988). Without more, Plaintiffs' control allegations cannot support a claim that the ESOP overpaid.[9]

The only other allegations about Mr. Paredes's process are in paragraph 72, and they fail to satisfy Plaintiffs' minimum pleading requirements. *First*, Plaintiffs baldly declare that Mr. Paredes's due diligence was not "similar to the due diligence that is performed by third-party buyers in large corporate transactions." FAC ¶ 72 Once again, this statement is conclusory. Plaintiffs offer no allegations about the due diligence processes in "large corporate transactions," how Mr. Paredes's due diligence process differed, or why, even if true, that would matter in the context of an ESOP's purchase of a privately held, mid-sized company.

---

[9] Though never finalized and thus not binding, courts have looked to the Proposed Regulation for guidance. *Henry v. Champlain Enters., Inc.*, No. 01-cv-1681, 2010 WL 2038841, at *1 (N.D.N.Y. May 21, 2010).

*Second*, engaging in rank speculation, Plaintiffs assert a litany of errors Mr. Paredes sup-posedly made in determining the value of WTI's stock. *Id*. This is just a generic list of common valuation issues that might arise in ***any*** valuation of a closely held company.[10] Plaintiffs provide no plausible factual basis to suggest that even one of these issues was present in Mr. Paredes's due diligence process. In other words, "[t]he Complaint contains nothing more than a laundry list of ***possible violations without any specific factual allegations*** to show that [Mr. Paredes] committed any such violations." *Carson v. Tucker*, No. 5:20-cv-00399, 2020 WL 1953655, at *8 (E.D. Pa. Apr. 23, 2020). This type of pleading fails to give Mr. Paredes fair notice of the claims against him and is exactly the type of claim that *Twombly* and *Iqbal* counsel must be dismissed.

## II. Plaintiffs Fail to Adequately Allege a Prohibited Transaction Under § 1106(a).

Plaintiffs' claims in Count I that the Paredes Defendants violated ERISA section 406(a)(1)(A), which prohibits a fiduciary from causing a plan "to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – (A) sale of exchange . . . of any property between the plan and a party in interest[.]" 29 U.S.C. § 1106(a)(1)(A). Plaintiffs have failed to state a claim that a prohibited transaction under section 1106(a) occurred because they have not adequately pleaded that the statutory exemption does not apply.

Recognizing that ERISA's broad prohibited transaction rules would "significantly hamper the implementation of ESOPs, particularly by small companies," Congress created "a conditional exemption from the prohibited transaction rules for acquisition of employer securities by ESOPs and certain other plans." *Henry*, 445 F.3d at 618 (citing *Cunningham*, 716 F.2d at 1465). This exemption "permits the sale of employer stock by a party in interest to an ESOP if the purchase is

---

[10] Indeed, the allegation is a bare recitation of the factors the Department of Labor applies when reviewing an ESOP trustee's valuation due diligence. *See* Agreement Concerning Fiduciary Engagements and Process Require-ments for Employer Stock Transactions (June 2, 2014), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/enforcement/esop-agreement-appraisal-guidelines.pdf.

made for 'adequate consideration.'" *Id.* (citing 29 U.S.C. § 1108(e)).

The Third Circuit has rejected the notion that Rule 8 is satisfied by pleading the bare bones of section 1106(a), holding that "[r]eading § 1106(a)(1) as a per se rule barring all transactions between a plan and party in interest would . . . expose fiduciaries to liability for every transaction whereby services are rendered to the plan," thereby "miss[ing] the balance that Congress struck in ERISA." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 337 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020). A per se prohibition on "necessary services would be absurd," which leads courts to "consider an alternative interpretation that avoids the absurdity." *Id.* Plaintiffs thus must allege more than the simple fact of a section 1106 prohibited transaction—something more than a "***sheer possibility*** that a defendant has acted unlawfully." *Leventhal v. MandMarblestone Grp. LLC*, No. 18-cv-2727, 2020 WL 2745740, at * 3 (E.D. Pa. May 27, 2020) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678); *see also, e.g., Leber v. Citigroup, Inc.*, No. 07 Civ. 9329 (SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (holding that, if a "complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption[,] . . . it is deficient."). Specifically, a complaint alleging violations of section 1106(a) must also allege facts sufficient to support a plausible inference that section 1108's exemptions do not apply. *See Leber*, 2010 WL 935442, at *10. Plaintiffs fall far short of that requirement.[11]

"Adequate consideration" is determined not by focusing on the dollar amount paid, but on the process the fiduciary applied when determining the value to be paid. *See Champlain Enters.,*

---

[11] Even if Plaintiffs were not required to plead aspects of section 1108's exemptions to state a prohibited transaction claim, the Court should still consider the Paredes Defendants' arguments because they are affirmative defenses that appear in the FAC. *See Allstate Vehicle & Prop. Ins. Co. v. Phila. Housing Auth.*, 394 F. Supp. 3d 535, 538-39 (E.D. Pa. 2019) ("[A] complaint may be dismissed pursuant to a 12(b)(6) motion when the affirmative defense appears on its face.") (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). As discussed *supra* Part I.A., the ESOP's 2017 Form 5500 filing referenced throughout Plaintiffs' FAC shows that the ESOP made a "tidy profit" on the Transaction. Thus, section 1108's exemption applies on the face of the FAC itself.

*Inc.*, 445 F.3d at 619-20 ("[T]he adequate consideration test focuses on the conduct of the fiduci-aries in determining the price, not the price itself.") (quoting *Eyler v. Comm'r*, 88 F.3d 445, 455 (7th Cir. 1996)); *see also Cunningham*, 716 F.2d at 1467 ("[T]he adequate consideration test, like the prudent man rule, is expressly focused upon the *conduct* of the fiduciaries."). To determine whether an ESOP pays no more than adequate consideration for a company's shares, the ESOP trustee must determine the range of fair market value of the stock to be acquired. For companies with publicly traded stock, this determination is often simple—a trustee may rely on the market price, with certain limited exceptions. *See Dudenhoeffer*, 573 U.S. at 425-27.

Appraisal of privately held stock, on the other hand, is a "very inexact science[.]" *Cun-ningham*, 716 F.2d at 1473. Because of the "uncertainty inherent in the process and the variety of potential fact patterns," ESOP fiduciaries, when dealing with privately held companies, rely on the expertise of others to determine whether no more than adequate consideration is paid. *Id*. While reliance on a qualified appraiser alone does not guarantee that an ESOP fiduciary discharged its obligations under ERISA, fiduciaries may point to an appraiser's guidance as evidence of a good-faith investigation. *Perez v. Bruister*, 823 F.3d 250, 263 (5th Cir. 2016). Unless there is evidence of fraud, conspiracy, or self-dealing, it is inappropriate for a court to view a fiduciary's reliance on an appraiser's advice with 20/20 hindsight. *See, e.g.*, *id*.; *see also* Am. Inst. of Certified Public Accts., *Valuation of Privately-Held-Company Equity Securities Issued as Compensation* 107-09 (2013) (noting the risk of bias in a retrospective valuation). Thus, ESOP fiduciaries establish ade-quate consideration based on a determination of fair market value through a prudent investigation under "the circumstances ***then prevailing***." *Bruister*, 823 F.3d at 262-63 (emphasis added); *see also* 29 U.S.C. § 1104(a)(1)(B).

The FAC fails to plausibly allege that Mr. Paredes's process for reviewing the proposed

Transaction and determining adequate consideration was flawed or that Mr. Paredes caused the ESOP to overpay for WTI's stock. Indeed, as shown above, the FAC alleges virtually nothing at all about Mr. Paredes' process: there is nothing describing who his legal or financial advisors were; nothing about their qualifications; nothing about the information Mr. Paredes or his advisors considered; and nothing about Mr. Paredes' negotiations—ultimately, nothing about process at all.

As discussed above, the WTI ESOP's Form 5500 for 2017 shows that the ESOP acquired WTI's stock in a leveraged deal for *less* than fair market value. The FAC's allegation that the ESOP overpaid is thus implausible on its face. Rather than plead that section 1108(e)'s exemption *does not* apply, as they must, the FAC shows the exemption *does* apply.

Plaintiffs' threadbare and conclusory allegations thus fall well short of plausibly alleging that Mr. Paredes caused the Plan to pay more than adequate consideration for WTI stock.[12]

## III.   Plaintiffs Fail to Adequately Allege a Prohibited Transaction Under § 1106(b).

Count I also claims that the Paredes Defendants violated sections 1106(b)(2) and (3) of ERISA. Section 1106(b)(2) provides that plan fiduciaries may not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants." FAC ¶ 86; 29 U.S.C. § 1106(b)(2).

---

[12] Plaintiffs make cursory allegations that the Paredes Defendants caused the ESOP to borrow money from a party in interest (WTI) in violation of 29 U.S.C. § 1106(a)(1)(B), and that the Paredes Defendants caused a transfer of plan assets (the Transaction's consideration) to a party in interest (the selling shareholders) in violation of 29 U.S.C. § 1106(a)(1)(D). FAC ¶¶ 82-83. The same adequate consideration analysis applied to section 1106(a)(1)(A) also applies to section 1106(a)(1)(D). *See* 29 U.S.C. §§ 1108(b)(17), (e); 29 C.F.R. § 2550.408e(a) ("Section 408(e) . . . exempts from the prohibitions of section 406(a) and 406(b)(1) and (2) of the Act any acquisition or sale by a plan of qualifying employer securities.").

As to Plaintiffs' section 1106(a)(1)(B) claims, Plaintiffs overlook that an ESOP has no cash of its own except amounts received in the form of employer contributions, which are subject to strict annual limits imposed by the IRS. *See* I.R.C. § 404(a)(9), 26 U.S.C. § 404(a)(9). Thus, the *only way* to accomplish an ESOP stock purchase such as this one without violating IRS contribution limits is for the ESOP to borrow the cash needed to complete the transaction. Taken to its logical end, Plaintiffs' contention that a loan from WTI to the ESOP violates ERISA would mean that the ESOPs that ERISA specifically authorizes and Congress sought to encourage could no longer exist. That is why Congress included in ERISA an exemption for loans to ESOPs for the benefit of plan participants and beneficiaries, so long as the loan is "at an interest rate which is not in excess of a reasonable rate." 29 U.S.C. § 1108(b)(3)(B). Plaintiffs nowhere allege that the 2.64% interest rate on the $200 million ESOP loan was unreasonable. FAC ¶ 5.

This claim fails because Plaintiffs have alleged facts confirming that the adequate consideration exemption applies to the Transaction. *See supra* Part II; 29 U.S.C. § 1108(e) ("Sections 1106 and 1107 of this title shall not apply" when the elements of section 408(e) are met); 29 C.F.R. § 2550.408e ("Section 408(e) . . . exempts from the prohibitions of section 406(a) and 406(b)(1) and (2) of the Act any acquisition or sale by a plan of qualifying employer securities."). Moreover, the only allegation in support of this claim is that, in approving the Transaction, Mr. Paredes "primarily" benefitted the sellers by "caus[ing] the Plan to acquire World Travel stock from the Selling Shareholders and/or World Travel above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders." FAC ¶ 100. This is just a recitation of the elements of the claim. Plaintiffs allege no facts supporting that Mr. Paredes "act[ed] . . . on behalf of" or "represent[ed]" the sellers in connection with the Transaction. The FAC itself contradicts that claim; Plaintiffs' allegations ***support*** the conclusion that Mr. Paredes acted on behalf of the ESOP and its participants. *See, e.g.*, FAC ¶ 1 (the Paredes Defendants were "the trustee for the [ESOP]"), ¶ 3 (the Paredes Defendants "caused the Plan to buy shares"), *id.* ¶ 6 (the Paredes Defendants "represented the Plan and its participants as trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf."), *id.* ¶ 52 ("World Travel appointed [the Paredes Defendants] as trustee of the Plan."). Parroting a claim's elements with no factual allegations in support, as Plaintiffs do here, does not state a claim for relief.

Plaintiffs' claim under section 1106(b)(3) likewise fails. That section provides that a fiduciary may not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). To begin with, a claim under section 1106(b)(3) depends on an allegation of fiduciary status. *Id.* ("A ***fiduciary*** with respect to a plan shall not . . . receive any consideration for his

own personal account . . . .) (emphasis added); *see also* DOL Advisory Op. 99-03A (Jan. 25, 1999) ("[A] *fiduciary* does not engage in an act described in section 406(b)(3) . . . if the *fiduciary* does not use any of its authority, control, or responsibility to cause a third party to pay to the *fiduciary* any compensation in connection with a transaction . . . .") (emphasis added).

Plaintiffs allege generally that the Paredes Defendants were "a fiduciary of the Plan." FAC ¶ 20. "[F]iduciary status is not an all or nothing proposition," however. *In re Fid. ERISA Fee Litig.*, No. 19-cv-10335, 2020 WL 759542, at *5 (D. Mass. Feb. 14, 2020), *aff'd*, 990 F.3d 50 (1st Cir. 2021). The "threshold question" for any claim that a fiduciary violated ERISA, then, is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) ***when taking the action subject to complaint***." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added). Service providers such as Mr. Paredes ordinarily are not fiduciaries with respect to their compensation, the "action subject to complaint" in Plaintiffs' claim under section 1106(b)(3). *See* FAC ¶ 88 (the Paredes Defendants "received consideration for its own personal account from World Travel . . . as trustee for the Plan in the ESOP Transaction").

The critical inquiry for assigning fiduciary responsibility for a service provider's compensation is who controlled the "decision whether or not, and on what terms, to enter into [the] agreement." *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) (citing *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)). A service provider may be a fiduciary for other purposes, but it becomes a fiduciary as to its own compensation only if its agreement with the plan "give[s] it such control over factors that determine the actual amount of its compensation." *F.H. Krear & Co.*, 810 F.2d at 1259; *Marks v. Indep. Blue Cross*, 71 F. Supp. 2d 432, 437 (E.D. Pa. 1999) (same).

Plaintiffs allege nothing suggesting that Mr. Paredes controlled WTI's decision to hire him

or that he somehow controlled the amount he was paid.  The *only* fact Plaintiffs allege about Mr. Paredes's fees is that WTI—who, unlike the selling shareholders, was not a "party dealing with [the] plan," 29 U.S.C. § 1106(b)(3); DOL Advisory Op. 91-44A (Nov. 14, 1991)—paid him "under a contract" made between Mr. Paredes and WTI.  FAC ¶ 54.  In other words, Mr. Paredes's compensation was governed by the sort of arm's-length bargaining that ensures a service provider is "unable to exercise any control over . . . whether or not, and on what terms, to enter into an agreement with him." *Renfro*, 671 F.3d at 324 (quoting *F.H. Krear*, 810 F.2d at 1259); *Marks*, 71 F. Supp. 2d at 437 (same). Because Mr. Paredes was not acting as a fiduciary with respect to his compensation, Plaintiffs' section 1106(b)(3) claim fails.

Even if Plaintiffs had alleged that Mr. Paredes was a fiduciary with respect to his compensation, the claim still fails because Plaintiffs have pleaded no facts in support of it other than that WTI paid Mr. Paredes to act as trustee. FAC ¶ 54. Because of the nature of ESOP stock transactions, it is common practice for the sponsor company to pay the trustee's fees. Indeed, ERISA section 1108(b)(2) permits parties in interest (which all service providers are, 29 U.S.C. § 1002(14)(B)), to make reasonable arrangements for services if they receive "no more than reasonable compensation." 29 U.S.C. § 1108(b)(2)(A) (providing that section 1106 does not apply to "[c]ontracting or making reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid"). Plaintiffs offer no factual allegations about PFS's compensation, let alone that it was unreasonable. Plaintiffs' claim section 1108(b)(3) claim should thus be dismissed.

## IV. Plaintiffs Have Failed to State a Claim For Any Breach of Fiduciary Duty.

In Count II, Plaintiffs allege that the Paredes Defendants breached the fiduciary duties of prudence and loyalty under ERISA by failing to conduct "an appropriate investigation[, which]

would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the [WTI] stock purchased by the Plan." FAC ¶ 98. Both claims fail.

To begin with, claims for breach of the duty of prudence must either refer directly to defendants' knowledge, methods, or conduct, or make "circumstantial factual allegations" from which a court "may reasonably infer . . . that the process was flawed." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (internal quotation marks omitted); *Sweda*, 923 F.3d at 332 (stating a plaintiff is required to "provide[] substantial circumstantial evidence from which the District Court could 'reasonably infer' that a breach had occurred"); *Harmon v. FMC Corp.*, No. 16-6073, 2018 WL 1366621, at *5 (E.D. Pa. Mar. 16, 2018) ("[T]o survive a motion to dismiss, a plaintiff must allege facts that support a finding that the defendant's process . . . was flawed.). Plaintiffs do not refer directly to any imprudent process, and, indeed, the FAC omits ***any*** description of Mr. Paredes's decision-making process. So Plaintiffs must instead provide sufficient factual allegations from which this Court can reasonably infer that it was flawed. They have failed to do so.

As discussed above, Plaintiffs' only "facts" are conclusory: that Mr. Paredes's process was "less extensive and thorough than the due diligence performed by third party buyers in corporate transactions." This is insufficient to infer that Mr. Paredes's process was in any way deficient. Indeed, the documents referenced in Plaintiffs' FAC support the ***opposite*** inference, given that WTI's post-Transaction stock price suggests that the ESOP got a deal. Simply put, the FAC fails to plausibly allege that Mr. Paredes's process was flawed or that the ESOP overpaid. The Court therefore should dismiss Plaintiffs' claim for breach of the fiduciary duty of prudence.

As for Plaintiffs' disloyalty claim, ERISA section 404(a)(1) imposes on plan fiduciaries a duty to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). To

state a claim, Plaintiffs must plausibly allege that Mr. Paredes acted self-interestedly or to further

a third party's interests rather than "with an eye single to the interests of the participants and ben-

eficiaries of the plan." *Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995); *see Perez v. Koresko*,

86 F. Supp. 3d 293, 383 (E.D. Pa. 2015). They have not.

The FAC rests entirely on Plaintiffs' allegations of a fraudulent scheme in which one or

more of the Wells Defendants and the Paredes Defendants are supposed to have collaborated to

manipulate financial information and boost WTI's fair market value. Plaintiffs say that Defendant

Jim Wells first "direct[ed] the preparation of financial projections" that "did not fully report the

scale of" the company's revenue-sharing liabilities even though he was "fully aware of and con-

trolled how World Travel accrued liabilities from these revenue-sharing arrangements." FAC ¶¶

62, 68, 69. WTI sent these inflationary projections to the Paredes Defendants, who allegedly "re-

lied upon" them and took other actions to overvalue WTI. *Id.* ¶ 67 (alleging that the Paredes De-

fendants did not apply a discount for lack of control and instead applied a control premium); *id.* ¶

72 (alleging that the Paredes Defendants used "unrealistic growth projections, unreliable or out-

of-date financials . . . and/or . . . fail[ed] to test assumptions . . . and/or [relied on] other factors"

inflating WTI's value).

According to the FAC, the Paredes Defendants supposedly agreed to "act in favor of the"

sellers for their own pecuniary gain: *first,* the Paredes Defendants purportedly wanted the company

to hire them as the ESOP's post-Transaction trustee, and, *second*, the Paredes Defendants allegedly

needed "sellers of [other] companies" to learn that the Paredes Defendants "applied a lesser degree

of due diligence in ESOP purchases" than others, which would earn them the "possibility of busi-

ness" from those other sellers. *Id.* ¶ 73.

Such allegations sound in fraud. *See In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189,

197 (3d Cir. 2007 ) ("[W]e should look at claims in a practical manner, not a 'categorical' one—

. . . under our precedent, if a claim not otherwise requiring proof of scienter nonetheless sounds in

fraud, the Federal Rule of civil Procedure 9(b)'s heightened pleading standard applies") (citing

*Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004) (particularity requirement applies to "all

averments of fraud[] . . . and is not limited to allegations styled or denominated as fraud") (internal

quotation marks omitted)). When "alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). There is "no requirement

that fraud or mistake be a necessary element of a *prima facie* claim in order for Rule 9(b) to apply."

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 879 (E.D. Pa. 2012) (citing *Cal.*

*Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 161 (3d Cir. 2004)). Instead, a plaintiff must

satisfy the heightened pleading standards of Rule 9(b) if he or she alleges a "unified course of

fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of a claim." *Id.*

(citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)); *see also In re Exxon*

*Mobil Corp. Secs. Litig.*, 500 F.3d at 198 (citing *Rombach*, 355 F.3d at 171).[13]

Plaintiffs' vague insinuations of an illicit scheme do not come close to satisfying Rule 9's

heightened pleading requirement for fraud. Rule 9(b) requires far more—specifically

> (1) a specific false representation of material fact; (2) knowledge by the person who
> made it of its falsity; (3) ignorance of its falsity by the person to whom it was made;
> (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it
> to his [or her] damage.

---

[13] Many courts have concluded that Rule 9(b)'s requirement apply to claims brought under ERISA. Courts apply Rule 9(b) to ERISA breach of fiduciary duty claims where the allegations underlying those claims sound in fraud. *See, e.g.*, *Vigeant v. Meek*, 953 F.3d 1022, 1027-28 (8th Cir. 2020) (applying Rule 9(b) to dismiss claims that ESOP trustee breached its fiduciary duties in connection with valuation of sponsor company's stock); *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1359-60 & n.5 (N.D. Ga. 2005) (acknowledging that although ERISA generally requires only notice pleading, "[a] more rigorous pleading requirement may be imposed when a plaintiff's ERISA claim amounts to an allegation of fraud"). Courts within the Third Circuit have held that "[a]lthough Rule 8's pleading requirements apply generally to ERISA claims for breach of fiduciary of duty, . . . to the extent that any claims sound in fraud, they are subjected to the heightened pleading requirements of Rule 9(b)." *Johnson v. Radian Grp. Inc.*, No. 08-2007, 2009 WL 2137241, at *12 (E.D. Pa. July 16, 2009) (collecting cases).

*Garfield v. Shutterfly, Inc.*, No. 20-2249, 2021 WL 2026854, at *8 (3d Cir. May 21, 2021).

The FAC alleges none of the "the 'who, what, when, where and how'" of the fraud required by Rule 9(b). *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). For example, all the allegations regarding the company's supposedly fraudulent accounting of its revenue-sharing agreements are confined to a single paragraph. FAC ¶ 68. The facts are relayed by a "confidential witness," identify no other employees aware of or involved in the scheme, and include no information about the supposed "instruct[ions]" Mr. Wells gave to others or the amount of the alleged underreporting. *Id.*; *see also id.* ¶ 61.[14]

The FAC also lacks any details about how the alleged fraudsters executed their plan to inflate the ESOP's purchase price. Plaintiffs' provide only a generic list of common valuation issues in ESOP transactions and then to assert in conclusory fashion that these issues pervaded the valuation Mr. Paredes relied on. *See* FAC ¶ 67 (alleging liability for supposed failure to obtain a discount for lack of control, application of control premium); *id.* ¶ 72 (listing issues such as projections, financials, discount rates, comparable companies, assumptions, "and/or" other factors). Plaintiffs provide no factual basis for these allegations, let alone any specifics. Reciting a laundry list of common valuation issues that ***might*** arise in any stock transaction and that ***could*** have increased the fair market value of WTI's stock is insufficient to plead fraud with particularity under Rule 9.

Plaintiffs' allegations about Mr. Paredes's supposed financial incentives to engage in the

---

[14] "[W]hen dealing with confidential witnesses, courts should assess the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations and similar indicia." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 244 (3d Cir. 2013). If, after this assessment, the anonymous allegations "are found wanting," a court "must discount them steeply." *Rahman*, 736 F.3d at 244 (quoting *Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 263 (3d Cir. 2009)). Plaintiffs give no information from which the Court can assess the basis of their confidential witness's knowledge or their reliability. The allegations are thus "wanting," and the Court should "discount them steeply." *See id.*

scheme are also paper-thin. Simply asserting, as Plaintiffs do in paragraph 73 of the FAC, that a business has a general incentive to boost earnings is insufficient to plausibly allege that the business committed fraud. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) ("[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud."). As noted above, the FAC contains zero facts about the other sellers and companies to which Mr. Paredes was supposedly catering or about how the scheme worked. It is not clear how these companies would even know that Mr. Paredes inflated WTI's share price, unless they had access to the confidential valuation he relied on ***and*** independently knew WTI's "true" value—implausible facts Plaintiffs do not allege.

In short, the FAC's scant allegations regarding the supposed scheme to inflate the ESOP's purchase price fail to satisfy Rule 9(b). Where claims sounding in fraud fail to satisfy Rule 9(b), Third Circuit courts dismiss them outright. *See, e.g.*, *Chubb Corp.*, 394 F.3d at 145 (affirming district court's decision to dismiss with prejudice a Second Amended Complaint for failure to allege fraud with particularity). Dismissing Count II for this reason advances Rule 9's "gatekeeping function," by "assuring that only viable claims reach discovery and preventing [plaintiffs] from using discovery as a fishing expedition." *Rogers v. Conair Corp.*, No. 10-1497, 2011 WL 1809510, at *3 (E.D. Pa. May 12, 2011).[15]

---

[15] Plaintiffs' disloyalty claim fails for a second reason: it improperly piggybacks on his prudence claim. *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) ("To state a loyalty-based claim under ERISA § 404(a)(1)(A), a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.") (emphasis omitted). For example, Plaintiffs allege that the Paredes Defendants acted "in favor of the" sellers by "appl[ying] a lesser degree of due diligence in [the Transaction] than is typical for non-ESOP-buyers' purchases of businesses." FAC ¶ 73. This is just a different way to say the Paredes Defendants employed an imprudent process. In order to plead a loyalty claim, a plaintiff must include "***additional facts*** suggesting an improper motive or financial benefit." *Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 20-6827, 2021 WL 2103231, at * 9 (D.N.J. May 24, 2021) (emphasis added); *see also Nicolas v. Trs. of Princeton Univ.*, No. 17-3695, 2017 WL 4455897, at * 3 (D.N.J. Sept. 25, 2017) ("Plaintiff's loyalty claims are merely characterizations that piggyback off of the prudence claims without any independent factual predicate.").

V.     **Plaintiffs Have Failed to Allege Sufficient Facts to Show that PFS Functioned as an ERISA Fiduciary.**

Plaintiffs allege that Mr. Paredes and his company, PFS, jointly operated as the ESOP's trustee with discretionary authority to cause the ESOP to enter into the Transaction. *See* FAC ¶ 1. Plaintiffs claim in Count I that, as such, both are liable under ERISA section 409, 29 U.S.C. § 1109, for breaching their fiduciary obligations to the ESOP. Though Mr. Paredes acted as a discretionary fiduciary in the Transaction as the ESOP's trustee, PFS did not.

Mr. Paredes's engagement agreement with WTI—which is incorporated by reference in the FAC, FAC ¶¶ 76-79, 105-08; *see supra* n.8—grants discretionary authority to cause the ESOP to enter into the Transaction only to Mr. Paredes:

> This Engagement Agreement (Agreement) is made and entered into by [WTI] and Miguel Paredes (Trustee), a professional ERISA Fiduciary. [PFS] is the Trustee's operating company. . . . ***The Company hereby appoints Miguel Paredes to serve as Trustee of the Plan for the ESOP Transaction. . . . Trustee shall for purposes of the ESOP Transaction have discretionary responsibility*** . . . .

Golumbic Decl., Ex. 2, at 1; *see id.* at 7 (emphasis added) (showing Mr. Paredes, not PFS, as signatory).

"When allegations in a complaint are contradicted by the materials appended to or referenced in the complaint, 'the document controls and the court need not accept as true the allegations of the complaint.'" *Byers v. Intuit, Inc.*, No. 07-cv-4753, 2009 WL 948651, at *2 (E.D. Pa. Mar. 18, 2009), *aff'd*, 600 F.3d 286 (3d Cir. 2010). The Court should therefore dismiss PFS.

## CONCLUSION

Plaintiffs cannot skate to discovery using only conclusory, generalized allegations and conjecture. Rules 8 and 9, *Twombly* and *Iqbal*, and Third Circuit precedent require more. The Paredes Defendants therefore respectfully request that the Court dismiss the FAC in its entirety.

Dated: September 23, 2021

Respectfully submitted,

**GROOM LAW GROUP, CHARTERED**

By: */s/ Lars C. Golumbic*
Lars C. Golumbic (*pro hac vice*)
William J. Delany (PA Bar No. 74864)
Andrew D. Salek-Raham (*pro hac vice*)
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
lgolumbic@groom.com
wdelany@groom.com
asalek-raham@groom.com

*Attorneys for Paredes Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 23, 2021, I served the foregoing on all parties of record via ECF.

<u>*/s/ Lars C. Golumbic*</u>
Lars. C. Golumbic
