**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHARI AHRENDSEN, BARRY CLEMENT, and LISA BUSH on behalf of the World Travel, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>PRUDENT FIDUCIARY SERVICES, LLC, a California Limited Liability Company, MIGUEL PAREDES, JAMES A. WELLS, JAMES R. WELLS, AND RICHARD G. WELLS.<br><br>            Defendants. | **Case No. 2:21-cv-02157-HB** |

**REPLY IN SUPPORT OF THE PAREDES DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT[1]**

---

[1] Unless otherwise noted, the capitalized and abbreviated terms used here are defined in the Paredes Defendants' Memorandum in Support of Their Motion to Dismiss. (Dkt. 46-1 ("Paredes Mem.")).

Can an ERISA plaintiff reach discovery without alleging *any* facts from which to infer fiduciary misconduct attributable to the named defendants?

Plaintiffs think so. They say that they can slip past the pleadings stage by alleging only the basic elements of a transaction described by section 1106 of ERISA—here, just the fact that an ESOP used a loan to buy employer stock—and nothing more.[2] They argue that the Court has just one alternative—requiring them to disprove section 1108's exemptions to section 1106—which would be error because section 1108 contains affirmative defenses that defendants must prove.  On this theory, plaintiffs in ESOP lawsuits are effectively immune from motions to dismiss.

But Plaintiffs offer a false choice of two extremes. The Court would be wrong to endorse a pleading standard that would allow all plaintiffs to skate through to discovery by alleging only that an ESOP purchased employer stock. And the Court would be wrong to require plaintiffs—in every instance—to anticipate and plead defendants' affirmative defenses. The former is too low, the latter is too high, and neither is consistent with relevant precedent or Congressional intent in crafting ERISA's enforcement scheme.

The actual pleading standard lies between sections 1106 and 1108. The Supreme Court has instructed courts deciding motions to dismiss ERISA claims to undertake a "careful, context-sensitive scrutiny of a complaint's allegations . . . as discussed in *Twombly* and *Iqbal*." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425-26 (2014). These decisions require a court to "draw on its judicial experience and common sense" to determine whether the facts alleged "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As lower courts have acknowledged—including the Third Circuit in *Sweda*—it is common sense that the basic fact of a transaction described by section 1106 does not, without more, infer

---

[2] "Section 1104," "section 1106," and "section 1108," as used throughout this memorandum, refer to ERISA sections 404, 406, and 408. 29 U.S.C. §§ 1104, 1106, 1108.

plausible misconduct. As the Paredes Defendants explained in their opening motion, (Paredes Mem. at 14), federal notice pleading standards require that Plaintiffs offer **something more** than bare bones allegations of a section 1106 transaction—*i.e.*, some factual allegations that give rise to a plausible inference of wrongdoing or harm.

Plaintiffs' FAC does not allege any such plausible facts. Aside from a handful of paragraphs that Plaintiffs' counsel believes "will likely have evidentiary support" and that were copied near-verbatim from their numerous other lawsuits involving other ESOP transactions and other ESOP trustees, Plaintiffs use publicly available information to allege nothing more than the unremarkable fact that a routine ESOP transaction happened. All they can muster in their opposition, (Dkt. 51 ("Opposition")), are references to **other** parties to **other** ESOP transactions litigated in **other** courts. They then ask the Court to infer that any wrongdoing that occurred **there** also must have occurred **here**, without offering anything specific factual allegations grounded in **this transaction** that crosses the line from what is theoretically possible to what is actually plausible. Not only are their allegations of rampant ESOP industry-wide misconduct pure fiction, they are beside the point. The ESOP industry writ large is not a named defendant in this case. Mr. Paredes is, along with the specific fiduciary process he employed in this particular transaction—a process Mr. Paredes developed based on the knowledge and experience gained during a distinguished, twelve-year career as an investigator and supervisor at EBSA, the regulatory body within the U.S. Department of Labor ("DOL") responsible for investigating ESOPs. (*See* Paredes Mem. at 6). Rule 12(b)(6) is designed to weed out speculative, implausible, and generalized allegations, like Plaintiffs' claims here, to protect defendants like Mr. Paredes from the costly discovery appurtenant to fishing expeditions.[3]

---

[3] Plaintiffs' *ad hominem* attacks on Mr. Paredes throughout the Opposition—*e.g.*, that Mr. Paredes is making "frivolous" arguments, wants to "bamboozle" the Court, and lacks the financial acumen required of a trustee (Opp. at

The Court need only apply this Rule 8, base-level pleading standard to Counts I and II if it finds that two other, more rigorous standards are inapplicable. *First*, as to Count I, though a plaintiff ***normally*** need not fully disprove section 1108's affirmative defenses, Plaintiffs here must do so because the FAC shows that the relevant affirmative defense, section 1108(e), is satisfied. As explained in the Paredes Defendants' opening motion, the FAC incorporates by reference the ESOP's Forms 5500, which show that the ESOP did not overpay and, thus, that the Transaction is exempt under section 1108(e). *Second*, as to Count II's breach of fiduciary duty claim, Plaintiffs' allegations sound in fraud but fall far short of meeting Rule 9's heightened pleading standard.

## ARGUMENT

**A.      Counts I and II fail to meet Rule 8's pleading standard.**

**1.      Count I: An ERISA plaintiff must plead more than the occurrence of a section 1106(a) transaction, and Plaintiffs have not.**

ERISA's "prohibited transaction" structure is two-tiered. Section 1106 lists the kinds of transactions that are "prohibited." *See* 29 U.S.C. § 1106(a) (transactions between plans and ***parties in interest***); *id.* § 1106(b) (transactions between plans and ***plan fiduciaries***). The list encompasses a broad array of uses of plan assets. Section 1108 contains an expansive list of exemptions to those transactions that are ostensibly prohibited by section 1106. *See id.* § 1108.

As to section 1106(a), Plaintiffs argue throughout the Opposition that a plaintiff need not disprove section 1108's exemptions because they are affirmative defenses and, therefore, a plaintiff need only plead section 1106(a)'s basic elements—here, that the ESOP bought shares from the Wells Defendants (an uncontroversial and publicly-available fact)—to state a claim. The Paredes

---

1, 13, 14-15)—are baseless, unprofessional, and uncalled for. Mr. Paredes's clients hire him precisely because of the reputation he cultivated at the DOL as a scrupulous, thorough, and knowledgeable assessor of ESOP deals.

Defendants do not dispute the first portion of Plaintiffs' syllogism: it is true that, normally, a plaintiff need not fully disprove section 1108 in its complaint.

Plaintiffs' error lies in their logical leap from premise to conclusion. Just because a plaintiff *need not plead section 1108* does not mean they *need only plead section 1106(a)*. Plaintiffs are peddling a Hobson's choice. The actual pleading standard sits between section 1106(a) and 1108: though a plaintiff need not fully disprove section 1108, federal notice pleading standards require that he or she allege *something* supporting a plausible inference that the transaction in question is not exempt. (*See* Paredes Defendants' Motion at 14 (explaining standard and citing cases)).

In this circuit, the leading authority establishing this Goldilocks standard is *Sweda v. University of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020). There, the Third Circuit first emphasized the importance of ERISA's policy goal of maintaining "a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Sweda*, 923 F.3d at 327 (quoting *Dudenhoeffer*, 573 U.S. at 424). "Both pursuits—participant protection and plan creation," the court noted, "are important considerations at the pleadings stage." *Id.*

To strike the proper balance, the Third Circuit started by squarely rejecting the argument that simply reciting the elements of a section 1106(a) transaction is sufficient to state a claim:

> Reading § 1106(a)(1) as a per se rule barring all transactions between a plan and party in interest would miss the balance that Congress struck in ERISA, because it would expose fiduciaries to liability for every transaction whereby services are rendered to the plan. *See Renfro*, 671 F.3d at 321 ("In enacting ERISA, Congress 're-solved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs.' " (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993))).

*Id.* at 337. The *Sweda* court explained that this view of section 1106(a)—while it differs from its sister circuits, including the Seventh Circuit's decision in *Allen* that Plaintiffs trumpet—is consistent with longstanding Third Circuit precedent. *Id.* at 337-38. For example, the Third Circuit

4

has long required plaintiffs alleging claims under section 1106(a)(1)(D)—one of Plaintiffs' two

"principal claims" here (Opp. at 1)—to include allegations of "specific intent" that go beyond the

statutorily enumerated elements:

> We have interpreted § 1106(a)(1)(D) similarly, holding that a violation occurs when: (1) a fiduciary, (2) causes a plan to engage in a transaction, (3) that uses plan assets, (4) for the benefit of a party in interest, and (5) "the fiduciary 'knows or should know' that elements three and four are satisfied." *Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995). In *Reich*, we held that specific intent is required because of the plain meaning of the statutory phrase "for the benefit," and also because if § 1106(a)(1)(D) did not require "subjective intent to benefit a party in interest, [it] would produce unreasonable consequences that we feel confident Congress could not have wanted." *Id.* at 279.

*Sweda*, 923 F.3d at 337-38.

*Sweda* is not an outlier. Other courts have likewise held that a plaintiff must allege more

than the basic elements of a section 1106(a) transaction to get past the pleadings stage. For exam-

ple, the court in *Scott v. Aon Hewitt Financial Advisors*, No. 17-cv-679, 2018 WL 1384300 (N.D.

Ill. Mar. 19, 2018), considered the exact argument Plaintiffs make here—namely, that they need

only plead section 1106. The *Scott* court correctly rejected this argument in light of federal notice

pleading standards and held that, while a plaintiff need not plead all the way to section 1108, they

must allege something more than just section 1106:

> The Court recognizes that ordinarily a plaintiff need not anticipate and attempt to plead around affirmative defenses. . . . [T]he relevant question at the motion to dismiss stage is . . . whether the complaint is sufficient to cross the federal pleading threshold. . . . . ERISA statutory provisions specifically permit a Plan fiduciary . . . to enter into a contract with a party in interest . . . "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). The question then becomes . . . whether Scott's conclusory allegation that the compensation at issue "constitutes excessive and unreasonable compensation" is enough "to raise the right to relief above the speculative level" as set forth in *Twombly*, 550 U.S. at 555. The Court concludes that Scott's allegations are not sufficient to raise the right to relief above the speculative level at this point without more.

*Id.* at *11.[4]

Plaintiffs' attempts to distinguish *Sweda* are unconvincing. *First*, they say that *Sweda* narrowly addressed 1106(a)(1)(C), which is not at issue here, and not section 1106(a)(1) as a whole. (Opp. at 11). But *Sweda* was not so limited. *See Sweda*, 923 F.3d at 337 ("Reading *§ 1106(a)(1)* as a per se rule barring all transactions between a plan and party in interest would miss the balance that Congress struck in ERISA.") (emphasis added). Plaintiffs know full-well that *Sweda* governs their claims: they cite the opinion throughout their Opposition when describing the applicable pleading standard. (*See* Opp. at 1, n.2; 6; 8; 9).

*Second*, Plaintiffs argue that *Sweda* narrowly addressed payments to service providers, not ESOP transactions. (Opp. at 11, 12). This is a red herring; section 1106 does not distinguish between types of transactions. Indeed, the Third Circuit in *Sweda* expressly rejected the argument that it should "adjust our pleadings standards to accommodate subcategories of sponsors and fiduciaries," as the dissent suggested. *Sweda*, 923 F.3d at 333 n.9.[5] And Plaintiffs' characterization of

---

[4] *See also Cervantes v. Invesco Holding Co.*, No. 1:18-cv-2551, 2019 WL 5067202, at *13-14 (N.D. Ga. Sept. 25, 2019) (holding that plaintiff, who "boldly alleg[ed] . . . a sweeping scheme" that a plan paid more than "reasonable compensation" as allowed by a section 1108 exemption, failed to state a claim by "failing to allege such basic information as the amount of compensation paid"); *Cho v. Prudential Ins. Co. of Am.*, No. 19-cv-19886, 2021 WL 4438186, at *12 (D.N.J. Sept. 27, 2021) (holding that plaintiffs must include allegations beyond the basic elements of 1106(a)—specifically, an "intent to benefit a party in interest"—to state a claim); *Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 20- CV-6827, 2021 WL 2103231, at *11 (D.N.J. May 24, 2021) (same); *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) (finding that the purpose of section 1106(a) is to address "those [transactions] in which a fiduciary might be inclined to favor a party in interest at the expense of the plan's beneficiaries" and holding that plaintiffs fail to meet their pleading burden "absent some evidence of self-dealing or other disloyal conduct") (cleaned up); *Sacerdote v. New York Univ.*, No. 16-cv-6284, 2017 WL 3701482, at *14 (S.D.N.Y. Aug. 25, 2017) (dismissing section 1106(a) claims because plaintiffs "offered only conclusory allegations suggesting self-dealing or disloyal conduct"), *vacated in part on other grounds,* 2021 WL 3610355 (2d Cir. Aug. 16, 2021); *Lee v. Argent Tr. Co.*, No. 5:19-cv-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) (engaging in a context specific inquiry into the economics of a leveraged stock purchase transaction and dismissing complaint for failing to allege that the ESOP had experienced any harm as a result of the deal).

[5] Plaintiffs seem to argue that *Sweda*'s holding is limited to transactions involving "necessary services" to ERISA plans. (Opp. at 12 (quoting *Sweda*)). Assuming that is true, A stock purchase transaction in which an ESOP purchases shares from a selling shareholder is virtually the only way to establish an ESOP—and a method permitted and encouraged by Congress. (*See* Paredes Mem. at 4-5). In other words, stock purchase transactions such as this one are "necessary services" because ESOPs could not exist without them. Treating them as *per se* barred by section 406 would bring ESOP formation and its benefits to employees to a halt, frustrating Congress's express desire. *Sweda*, 923 F.3d at 337 ("[W]hen one interpretation of a statute leads to an absurd result, we may consider an alternative

ESOP transactions as unique and "precisely the type of transaction Congress contemplated as likely to injure a plan," (Opp. at 12), is absurd. It wholly ignores Congress's expressly-stated concern, which the Supreme Court has acknowledged, that courts would create rules and policies that would frustrate Congress's goal of promoting employee ownership via ESOPs:

> INTENT OF CONGRESS CONCERNING EMPLOYEE STOCK OWNERSHIP PLANS.—The Congress, in a series of laws [including ERISA] has made clear its interest in encouraging [ESOPs] as a bold and innovative method of . . . bringing about stock ownership by all corporate employees. ***The Congress is deeply concerned that the objectives sought by this series of laws will be made unattainable by regulations and rulings which treat [ESOPs] as conventional retirement plans, which reduce the freedom of the employee trusts and employers to take the necessary steps to implement the plans, and which otherwise block the establishment and success of these plans.*** Tax Reform Act of 1976, § 803(h), 90 Stat. 1590.

*Dudenhoeffer*, 573 U.S. at 416 (emphasis added) (alterations in original). Far from fearing ESOP deals, as Plaintiffs suggest, Congress ***feared interference*** with ESOP deals, like the creation of a pleading standard that would impose no barrier whatsoever to fishing expeditions by the ERISA class action plaintiffs' bar. [6, 7]

---

interpretation that avoids the absurdity.").

[6] Congress's fear is on the verge of coming to fruition. Plaintiffs' counsel here has regularly made ***near identical*** generic allegations against other ESOP trustees. *Compare, e.g.*, FAC ¶ 71, *with* Complaint ¶ 54, *Threadford v. Horizon Tr. and Inv. Mgmt.*, No. 3:20-cv-00188 (N.D. Ind. filed Feb. 28, 2020) (Dkt. 1) ("*Threadford* Compl."), Complaint ¶ 46, *Fink v. Wilmington Tr., N.A.*, No. 1:19-cv-01193 (D. Del. filed June 25, 2019) (Dkt. 1) ("*Fink* Compl."), *and* Complaint ¶ 42, *Henry v. Wilmington Tr., N.A.*, No. 1:19-cv-01925 (D. Del. filed Oct. 10, 2019) (Dkt. 1) ("*Henry* Compl."). For additional examples, see *Fink* Compl. ¶ 54 (*compare with* FAC ¶ 67); *Fink* Compl. ¶ 61 (*compare with* FAC ¶ 72); *Fink* Compl. ¶¶ 70-71 (*compare with* FAC ¶¶ 76-77); *Henry* Compl. ¶ 45 (*compare with* FAC ¶ 67), *Henry* Compl. ¶ 47 (*compare with* FAC ¶ 72); *Henry* Compl. ¶ 54 (*compare with* FAC ¶¶ 76-77); Complaint ¶ 43, *McMaken v. GreatBanc Trust Co.*, No. 1:17-cv-04983 (N.D. Ill. filed July 5, 2017) (Dkt. 1) ("*McMaken* Compl.") (*compare with* FAC ¶ 67); *McMaken* Compl. ¶ 44 (*compare with* FAC ¶ 72); Complaint ¶ 72, *Blackwell v. Bankers Tr. Co. of South Dakota*, No. 3:18-cv-00141 (S.D. Miss. filed Mar. 6, 2018) (Dkt. 1) ("*Blackwell* Compl.") (*compare with* FAC ¶ 67); *Blackwell* Compl. ¶ 89 (*compare with* FAC ¶ 72); *Threadford* Compl. ¶ 58 (*compare with* FAC ¶ 67); *Threadford* Compl. ¶ 60 (*compare with* FAC ¶ 72); *Threadford* Compl. ¶ 67 (*compare with* FAC ¶¶ 76-77).

[7] Plaintiffs argue that *Sweda* court's discussion of the Seventh Circuit's decision in *Allen* shows that the Third Circuit intended to carve out ESOP transactions from the pleading standard it was announcing. Not so. The Third Circuit made plain that it disagreed with the Seventh Circuit's standard in *Allen*—"We decline to read § 1106(a)(1) as the Seventh Circuit does," *Sweda*, 923 F.3d at 336—and instead discussed the decision as an example of bad facts making bad law. As the Third Circuit explained, the transaction at issue in *Allen* included plausible allegations that the ESOP in question bought employer stock using a loan financed by the company's selling shareholders and, shortly after the purchase, "[t]he value of the stock then fell so drastically that '[t]he Plan's participants . . . wound up being on the hook for interest payments on the loan.'" *Id.* (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 673 (7th Cir. 2016)). No such allegations exist here, much less any plausible ones.

*Finally*, Plaintiffs' last argument is no counter at all, but instead a pure admission that the pleading standard the Paredes Defendants advance here is correct. They say that *Sweda* "did not shift the burden on a defense but required an additional allegation to state the specific claim at issue." (Opp. at 12). We agree wholeheartedly with this articulation of Plaintiffs' pleading standard under section 1106(a).

Plaintiffs principally rely on *Allen* for the proposition that they only need to plead the elements of section 1106(a) and nothing more. But that is a gross overstatement of *Allen*, which actually supports the notion that ***something more*** than the basic elements of section 1106(a)—though less than disproving section 1108—is required to state a claim.

In *Allen*, the Seventh Circuit held that plaintiffs normally need not disprove section 1108's affirmative defenses. 835 F.3d at 675-76. But the court ***did not*** hold—as Plaintiffs suggest—that a plaintiff need only plead section 1106 and nothing more. Instead, it explained that district courts must use their "ample tools"—namely, "the *Twombly-Iqbal* pleading standards" that "require the plaintiffs to cross the line from the 'possible' violation to the 'plausible'"—to "screen frivolous claims" that allege only "the occurrence of a section [1106] transaction" and that do not "stem from ERISA violations." *Id.* at 677. The court then pointed to facts alleged in the *Allen* complaint that went ***beyond*** the elements of section 1106, that do not ***fully*** negate section 1108, but that were ***necessary*** for the court to infer some wrongdoing and push the complaint past Rule 8. They included that "the stock value dropped dramatically" after the transaction "(implying that the sale price was inflated)," the "interest rate was uncommonly high (implying that the sale was risky, or that the shareholders executed the deal in order to siphon money from the Plan to themselves)," and that the trustee had recently "entered into a settlement with the [DOL]" that was "designed to address its record of shortcomings as a fiduciary." *Id.* at 674, 678.

8

In short, *Allen* did precisely what the Paredes Defendants ask, and Third Circuit authority requires, this Court to do here: scrutinize the FAC's allegations through the lens of *Iqbal* and *Twombly* to determine whether it contains plausible allegations of wrongdoing or harm, and not simply a recitation of section 1106(a)'s basic elements.

> ### 2.      Count I: The FAC describes that section 1108(e) has been met.

The Paredes Defendants explained in their opening motion the *Lee* court's analysis of 100% leveraged ESOP deals: just like a homebuyer who purchases a $100,000 home with a $100,000 mortgage, an ESOP that fully finances its purchase of a 100% interest in a company ***should*** hold no equity value post-transaction. (*See* Paredes Mem. at 9-11 (citing *Lee*, 2019 WL 3729721)). Here, the WTI ESOP's public Form 5500 filing with the DOL shows that, just eleven days after its fully-financed acquisition of a 100% interest in WTI, the ESOP held $20,654,400 worth of equity. (*Id.* at 10-11). Like the buyer described in *Lee*, the WTI ESOP thus made a "tidy profit" in the deal. (*Id.*) Because the Form 5500 is incorporated by reference into the FAC, the Court may consider and rely on it at the pleadings stage. (*See id.* at n.8). Plaintiffs' FAC, then— far from proving that the ESOP overpaid—proves that the ESOP ***did not*** overpay.

Plaintiffs retort that the court generally cannot take judicial notice of public filings for the truth of their contents. (Opp. at 13). Perhaps, but that is not the Paredes Defendants' point. The Court may consider the Form 5500, including for its truth, ***not*** because it is a public filing, but because Plaintiffs ***incorporated it by reference*** throughout the FAC, relying on it to allege core elements of their section 1106(a) party in interest claims. (*See* FAC ¶¶ 41 (citing Form 5500 as support for section 1106 element); 48 (same); 49 (same); 128 (citing Form 5500 to allege numerosity)).

This is key. Courts hesitate to consider documents outside the four corners of a complaint

when the document in question is not in the plaintiff's possession. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (discussing rule's underlying rationale). But fairness concerns dissipate "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see Chambers*, 282 F.3d at 153 (collecting cases, and holding that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion"); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding, in context of claims arising from an unprofitable corporate acquisition, that district court properly considered documents related to the purchase because they were documents "plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit"), *cert. denied*, 503 U.S. 960 (1992).

That is precisely the case here. Plaintiffs cannot at once make the form 5500 the lynchpin of its claims and also question its veracity when the Paredes Defendants cite it.[8] A plaintiff who puts a public filing at issue "can hardly show prejudice." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) ("Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure. Foreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."). Plaintiffs' complaints about the Form 5500 are therefore meritless.[9]

---

[8] And, as Plaintiffs themselves acknowledge, the Form 5500 is likely not to contain misrepresentation because it is filed "under penalty of perjury." (FAC ¶ 50).

[9] From there, Plaintiffs' Opposition arguments devolve into *ad hominem* accusations (*e.g.*, the Paredes Defendants are attempting to "bamboozle" the Court with "voodoo economics" by citing *Lee*'s plain holding, and are

**3.      Count I: Plaintiffs fail to meet their burden of plausibly alleging a breach of sections 1106(b)(2) and (3).**

Plaintiffs argue that the following is sufficient to allege that the Paredes Defendants acted for the benefit of the sellers in violation of section 1106(b)(2): "The Trustee caused the Plan to acquire World Travel stock from the Selling Shareholders and/or World Travel above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders." (FAC ¶ 87).  It is not. As described above, the FAC contains no plausible allegations that the Paredes Defendants "acted on behalf of" or "represent[ed]" a party to the Transaction other than the ESOP. Instead, the FAC raises the ***possibility*** that the Paredes Defendants had "incentives" to inflate the stock's value for their own pecuniary gain, but nothing specific to the Paredes Defendants or this Transaction that make such a baseless allegation ***plausible***. As such, they fail to establish the elements of 1106(b)(2). (*See also* Paredes Mem. at 17).

With respect to their section 1106(b)(3) claim, Plaintiffs address none of the Paredes Defendants' case law and instead obfuscate the issue. Of course, as Plaintiffs point out, this is not a breach of fiduciary duty claim. (Opp. at 17). But fiduciary status is an element of section 1106(b)(3) because, as the plain language of the statute makes clear, only fiduciaries are subject to its prohibitions. *E.g.*, *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("ERISA § 406(b)(3) applies only to transactions between a plan and a fiduciary."). Because the FAC does not allege that the Paredes Defendants were fiduciaries when negotiating their fees, they fail to establish a necessary element of their section 1106(b)(3) claim. *See Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x. 120, 126 (3rd Cir. 2013) ("Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries

---

"ignorant of basic valuation methods"), unsupported general assertions regarding ESOP operations (*e.g.*, "money or unencumbered stock will be set aside to allocate stock to participants"), and red herrings (*e.g.*, discussion of ESOP loss calculation, which is irrelevant to the issue). (Opp. at 13-14).

from being paid for their work. A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain.").

Plaintiffs also emphasize their allegations that WTI agreed to indemnify the Paredes Defendants if they were sued in their capacity as WTI ESOP trustee, arguing that this is the "most valuable consideration" in question. (Opp. at 18). But, again, Plaintiffs have failed to meet their burden of pleading the elements of their claim. Plaintiffs cite to no case holding that an agreement to indemnify at some point in the future is "consideration for [the trustee's] own personal account," or that it is a "transaction" as defined by section 1106(b)(3).[10] Actual indemnification payments could be a "transaction" involving "consideration for [the trustee's] own personal account," but the FAC does not allege that any such payments have been made. Even if it did so allege, those payments, made years after the Transaction, would not be "in connection with a transaction involving the assets of the plan," as required by section 1106(b)(3). The 1106(b)(3) claim fails.

### 4. Count II: Plaintiffs fail to meet their burden of plausibly alleging a breach of fiduciary duty.

Plaintiffs rely on *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), and its progeny, including *Allen*, to argue that he is not required to "plead non-public information about the ESOP Transaction known only to insiders." (Opp. at 21-22.) True, *Braden* held that plaintiffs need not "describe directly the ways in which [defendants] breached their fiduciary duties." *Braden*, 588 F.3d at 595. But the court also held that a plaintiff must "plead facts indirectly showing unlawful behavior" that "allow [ ] the court to draw the reasonable inference" that the complained-of misconduct occurred. *Id*. Even under Plaintiffs' caselaw, then, simply alleging that the

---

[10] The *Constellis* decision Plaintiffs blazon held that the indemnification arrangement at issue ***did not*** violate section 1106(b)(3). *Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 645 (E.D. Va. 2017) ("[T]he indemnification [agreement] . . . is a form of 'reimbursement for expenses properly and actually incurred.' 29 U.S.C. § 1108(c)(2).") (citing *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir. 1988) ("Very few people would become [fiduciaries] if subjected to the 'extensive potential costs' associated with ERISA litigation.")), *aff'd*, 919 F.3d 763 (4th Cir. 2019).

Transaction occurred is not enough to survive a motion to dismiss a section 1104 claim. For example, as noted above, the court in *Allen* found that the plaintiffs alleged ***some*** facts—not present here—"tell[ing] a plausible story" that defendant breached its fiduciary duties. *Allen*, 835 F.3d at 678. While they "could not describe in detail" the non-public processes defendants employed, the court found they alleged sufficient "facts from which [the] factfinder could infer that the process was inadequate." *Id*. The "story" Plaintiffs tell here is that an ESOP transaction happened—nothing more. Their other allegations are generic recitations of issues that sometimes arise in ESOP valuations with zero plausible facts to suggest they arose in ***this Transaction***. That is insufficient.[11]

## B.    Count II sounds in fraud but fails to meet Rule 9's particularity standard.

Plaintiffs begin by arguing that plaintiffs never need to plead ERISA breach of fiduciary duty claims with particularity under Rule 9. (Opp. at 18-19). True, not all breach of fiduciary duty claims sound in fraud, but those that do must meet Rule 9. (*See* Paredes Mem. at 21-22, n.13 (collecting cases, only one of which Plaintiffs address)).

And Plaintiffs ***do*** allege a fraud here. The FAC attempts to tell the following unsupported, implausible story: The Wells Defendants controlled WTI and influenced its creation of financial projections, which were inflated by, among other things, a fraudulent accounting of the company's revenue-sharing liabilities. Mr. Paredes relied on these projections to determine the company's fair market value. He did so because he was incentivized by (i) the desire to be engaged post-Transaction and (ii) the possibility of future business from other potential clients who would learn that, if they hire him, Mr. Paredes will do the same for them. (*See* Paredes Mem. at 21 (summarizing FAC

---

[11] Lacking access to "insider information" is not license to manufacture ***possible*** flaws in Mr. Paredes's valuation process and hope that discovery will bear those guesses out—such a standard improperly replaces plausibility with possibility. Rule 8 instead requires a plaintiff to allege facts that he believes will "***likely***" have evidentiary support on ***some basis*** from which a court could infer an inadequacy in the process more generally. (*See* Paredes Mem. at 7-8). Plaintiffs allege no facts suggesting that generic valuation flaws are "likely" to have occurred in this Transaction.

allegations)). That is fraud, plain and simple. (*Id.* at 21-22 (collecting cases)).

And Plaintiffs know it. While they try to downplay their fraud allegations in their Opposition to the Paredes Defendants' motion, (Opp. at 18 ("Plaintiffs simply allege" that the "Selling Shareholders supplied unreasonably optimistic financial projections."), Plaintiffs sing a different tune in their opposition to the Wells Defendants' motion, (Dkt. 52 at 15). There, they admit they are alleging a fraud: that Jim Wells "direct[ed] the preparation of financial projections," "'was fully aware of and controlled how' the company accrued liabilities," and "did not fully report the scale of these liabilities . . . at the time of the Transaction." (*Id.*).

This story bears a remarkable similarity to the facts in *Vigeant v. Meek*, the only one of the Paredes Defendants' cases that Plaintiffs attempt to distinguish. 352 F. Supp. 3d 890 (D. Minn. 2018) ("*Vigeant* I"), *aff'd,* 953 F.3d 1022 (8th Cir. 2020) ("*Vigeant* II"). True, *Vigeant* II did not hold that "***all*** allegations" of providing false information to a trustee sound in fraud, (Opp. at 21), nor is that the Paredes Defendants' position. Instead, the *Vigeant* decisions affirm that Rule 9(b) applies to ERISA "breach of fiduciary duty claim[s] when the alleged breach is the commission of a fraud." *Vigeant* II, 953 F.3d at 1027. Like the FAC here, the *Vigeant* plaintiffs alleged that the Lifetouch directors and its ESOP trustees knowingly created false financial information and provided it to the Lifetouch ESOP's appraiser to boost the company's value. *Vigeant* I, 352 F. Supp. 3d at 893-94. The district court applied Rule 9(b) to plaintiffs' ERISA breach of fiduciary duty claims for creating the fraudulent data that the appraiser used in its valuation. *Id.* at 896. It determined that these allegations fell short of Rule 9's particularity standard and ignored them. *Id.* The Eighth Circuit upheld the district court's approach, *Vigeant* II, 953 F.3d at 1027, and explained that it did not need to otherwise address Rule 9's application given that plaintiffs had effectively withdrawn the issue by reinterpreting their complaint on appeal. The same reasoning applies here.

14

### C.    Descriptions of the ESOP industry and unrelated parties are irrelevant.

Plaintiffs attempt to bolster the Complaint's shortcomings with new assertions unrelated to the Transaction: they point to **another** court's finding that **another** trustee and **another** seller in **unrelated** deal were found liable, along with statements from DOL officials that **other parties** may have violated ERISA. (*See* Opp. at 2-4). But matters involving unrelated ESOPs are irrelevant. And, contrary to Plaintiffs' view, ESOP deals are not *per se* suspect. Congress would not **specifically encourage** leveraged ESOP transactions like the one at issue here—as it has for decades—if ESOPs were the danger Plaintiffs claim. (*Paredes Mem. at 3-5*). Indeed, there are countless ESOP success stories.[12] And, despite Plaintiffs' insinuations about their odds of success, ESOP lawsuits like this are frequently found to be meritless: many courts have dispatched with similar claims,[13] while many other suits have settled for small sums or been voluntarily dismissed.[14] In short, ESOP transactions are anything but the scourge Plaintiffs would have the court believe.[15]

---

[12] *E.g.*, Loren Rodgers & Corey Rosen, Employee Ownership Blog, *What Does the Sale of New Belgium Brewing Mean for Employee Ownership?* (Nov. 21, 2019), https://bit.ly/3ba3vyW (noting 300 ESOP participants received at least $100,000 in company's 2019 sale).

[13] *Lee*, 2019 WL 3729721 (granting motion to dismiss); *Vigeant I*, 352 F. Supp. 3d 890 (same); *Godfrey v. GreatBanc Tr. Co*., No. 18 C 7918, 2019 WL 4735422 (N.D. Ill. Sept. 26, 2019) (granting motion to dismiss in part); *Swain v. Wilmington Tr., N.A*., No. CV 17-71-RGA-MPT, 2018 WL 934598 (D. Del. Feb. 16, 2018) (adopting report and recommendation dismissing an 1106(a) claim); *see also Fish v. GreatBanc Tr. Co*., No. 09 C 1668, 2016 WL 5923448, at *1 (N.D. Ill. Sept. 1, 2016) (entering judgment in favor of defendants on all claims).

[14] *E.g.*, *Blackwell* (settled by mediation with no finding of liability); *McMaken*; *Swain v. Wilmington Tr.*, No. 1:17-cv-00071 (D. Del. filed July 27, 2017); *Acosta v. Zander Grp. Holdings*, No. 3:17-cv-011187 (M.D. Tenn. filed Aug. 23, 2017).

[15] Plaintiffs say the DOL's investigations revealed a "chronic" problem with ESOPs, Opp. at 3, but the facts say otherwise. A recent study showed that the obtained a "monetary recovery" *in just one-third* of its 2,069 ESOP investigations, and only about half of those "recoveries" involved actual funds being restored to the ESOP. *See* Nathan Nicholson, Employee Ownership Blog, *New NCEO Publication Analyzes DOL ESOP Investigations* (Oct. 14, 2019), https://bit.ly/3ywrt0l. Over 50% of the DOL's ESOP investigations from 2015-2017 closed with $0 monetary recovery, approximately 20% resulted in  less than $100,000 and only 10% resulted in more than $1 million, *id.*—small sums considering that leveraged ESOP deals frequently involve tens or hundreds of millions of dollars. ESOP investigations have consistently made up just 5% of all of the Employee Benefits Security Administration's civil caseload, *id.*, and the number of ESOP investigations closed has declined, *id.* (150 closed with results in 2007, just 54 in 2017).

Dated: October 25, 2021

Respectfully submitted,

**GROOM LAW GROUP, CHARTERED**

By: */s/ Lars C. Golumbic*
Lars C. Golumbic (*pro hac vice*)
William J. Delany (PA Bar No. 74864)
Andrew D. Salek-Raham (*pro hac vice*)
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
lgolumbic@groom.com
wdelany@groom.com
asalek-raham@groom.com

*Attorneys for Paredes Defendants*

## CERTIFICATE OF SERVICE

I certify that, on October 25, 2021, I served the foregoing on all parties of record via ECF.

*/s/ Lars C. Golumbic*
Lars. C. Golumbic