IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARI AHRENDSEN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PRUDENT FIDUCIARY SERVICES, LLC et al. | : | NO. 21-2157 |

MEMORANDUM

Bartle, J. February 1, 2022

Plaintiffs Shari Ahrendsen, Barry Clement, and Lisa Bush have sued defendants Prudent Fiduciary Services LLC, Miguel Paredes, James A. Wells, James R. Wells, and Richard G. Wells in this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiffs are former employees of World Travel, Inc. and current and former participants in the World Travel, Inc. Employee Stock Ownership Plan ("the Plan"), a pension plan. Defendants Prudent Fiduciary Services LLC ("PFS") and Miguel Paredes are alleged to have been the Trustee of the Plan at the time of a transaction in which defendants James A. Wells, James R. Wells, and Richard G. Wells (collectively "the Wells defendants"), the founders of World Travel, sold all their shares to the Plan.[1] In essence, plaintiffs claim that they and

1. The amended complaint refers to both Paredes and the company he founded, PFS, collectively as "the Trustee" in the singular. The court will likewise refer to both defendants as "the Trustee" for purposes of this memorandum.

the class they seek to represent were deprived of their hard-earned retirement benefits due to the actions of defendants. Plaintiffs seek declaratory, injunctive, and monetary relief.

Before the court are the motions of defendants to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Defendants rest their argument in large part on plaintiffs' failure to meet the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure as informed by the Supreme Court's decisions in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiffs. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

2. Defendants PFS and Paredes move for dismissal of Counts I, II, and III as against them. The Wells defendants move for dismissal of Counts IV and V as against them.

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court has explained, a complaint need not include "detailed factual allegations," but it must state "more than labels and conclusions" and must provide factual allegations "enough to raise a right to belief above the speculative level." Twombly, 550 U.S. at 555. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Id. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The court may also consider "matters incorporated by reference or integral to the claim, items

subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II

For present purposes, the court accepts as true the following well-pleaded facts set forth in the amended complaint. World Travel, Inc. is a corporate travel management company. Plaintiffs are all former employees of World Travel and current or former participants in the Plan. The Plan is sponsored and administered by World Travel and was adopted with the effective date of January 1, 2017. It is a leveraged employee stock ownership plan ("ESOP") designed to invest primarily in the securities of World Travel, the employer. It is a defined contribution plan with individual accounts for each participant. Paredes, the president and founder of PFS, and PFS served as the Trustee for the Plan at all relevant times in question. The Trustee was chosen by the Board of Directors of World Travel ("the Board").

The Wells defendants founded World Travel in 1983. James R. Wells and Richard Wells are brothers. James A. ("Jim") Wells is the son of James R. Wells. Jim Wells was and is the chairman of the Board and is the former president and chief

executive officer of World Travel. Richard Wells is the former secretary, treasurer, and chief financial officer. The three Wells defendants were Board directors at all relevant times.

On December 20, 2017, the Trustee negotiated the purchase by the Plan of 19,860,000 shares of World Travel common stock from the Wells defendants for $200,573,217. Until this transaction, the Wells defendants and their families had owned World Travel since its inception. At the time of the transaction, World Travel had over 500 employees. The Plan's purchase of World Travel stock was financed through a loan for the full amount from World Travel to the Plan at an annual interest rate of 2.64%. As a result of this transaction, World Travel is a 100% employee-owned company.

The Trustee received fees for negotiating the transaction and obtained an indemnification agreement from World Travel when it was still owned by the Wells defendants. Following the transaction, the Wells defendants "retained control" over World Travel through their positions on the Board.

Plaintiffs claim that the transaction at issue was prohibited under ERISA as it was a transfer of assets between the Plan and shareholders of the sponsor company, that is the Wells defendants. Plaintiffs seek to hold the Trustee and the Wells defendants liable for their roles in a prohibited transaction. Plaintiffs also aver that the Trustee breached its

fiduciary duties in negotiating this transaction and that the Wells defendants are liable as co-fiduciaries for this breach.

In support of these claims, plaintiffs allege, according to a confidential witness, that Jim Wells exercised control over World Travel operations prior to and at the time of the transaction. They assert that he was "centrally involved in conceiving of, facilitating, and executing" this transaction which included directing the preparation of financial projections that formed the basis for the stock appraisal that the Trustee relied upon in assessing the sale price for this transaction.

Plaintiffs also claim that the Plan overpaid for World Travel stock because it did not receive a discount for its lack of control of the Board as the Wells defendants "retained control" following the transaction. According to the confidential witness, the Plan overpaid for World Travel because World Travel had revenue sharing agreements to refund earned commissions to its clients which Jim Wells instructed World Travel employees not to pay unless the clients raised the subject.

Plaintiffs further allege that World Travel did not fully disclose these liabilities, that it did not have money on hand to cover them, and that the sale price did not account for these liabilities. As a result, the company's financial

projections on which the Trustee relied for the ESOP transaction were unreasonably optimistic. Plaintiffs maintain that the Trustee performed a faulty valuation of World Travel for purposes of the ESOP transaction.

The amended complaint goes on to claim that the Trustee did not perform the due diligence for this transaction that a third-party buyer in a corporate transaction would have performed and that its due diligence was not extensive and thorough. According to plaintiffs, the Trustee was incentivized to act in favor of the Wells defendants by the possibility of business with those who understood the Trustee to apply less than due diligence in ESOP transactions as compared to non-ESOP transactions.

Specifically, the Trustee relied upon unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, and inappropriate comparable companies. The Trustee failed to test assumptions and/or to question or challenge underlying assumptions. Consequently, plaintiffs received diminished stock allocations, excessive debt to the Plan, and losses to their individual accounts. In addition, plaintiffs contend that the indemnification agreement between World Travel and the Trustee did not contain an exemption for violations of per se prohibited transactions under 29 U.S.C. § 1106.

Plaintiffs seek to hold the Wells defendants liable for their knowing participation in a prohibited transaction and as co-fiduciaries for the Trustee's breach. Plaintiffs maintain that as selling shareholders, directors of World Travel, and participants in the ESOP transaction, the Wells defendants knew or should have known that the Trustee engaged in a prohibited transaction and breached its fiduciary duties.

III

Plaintiffs aver in Count I that defendants Paredes and PFS as Trustee engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(a) and (b). Section 1106(a) provides:

> Except as provided in section 1108 of this title:
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect -
>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>> (B) lending of money or other extension of credit between the plan and a party in interest;
>> . . .
>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1)(A)-(D). ERISA includes in the definition for a "party in interest" any fiduciary of an employee benefit plan and shareholders with ten percent or more of shares. 29 U.S.C. § 1002(14).

Section 1108, to which § 1106(a) makes direct reference, allows for an exemption from § 1106(a) for acquisitions or sales by a plan of qualifying employer securities when certain conditions are met. It provides that:

> Sections 1106 and 1107 of this title shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . -
> (1) if such acquisition, sale, or lease is for adequate consideration . . .,
> (2) if no commission is charged with respect thereto, and
> (3) if –
> (A) the plan is an eligible individual account plan.

29 U.S.C. § 1108(e).

The statute defines "adequate consideration" for securities without a generally recognized market as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary [of Labor]." 29 U.S.C. § 1002(18)(B). The Department of Labor has explained in a proposed regulation that for adequate consideration, "the value assigned to an asset must reflect its fair market value" and "must be the product of a determination made by the fiduciary in good faith."[3] Henry v. Champlain Enters., Inc., 445 F.3d 610, 618-19 (2d Cir. 2006).

3. As the Court of Appeals for the Second Circuit has explained, "[a]lthough proposed regulations have no legal effect

Plaintiffs maintain that the Trustee, a plan fiduciary, caused the Plan to engage in a prohibited transaction in violation of § 1106(a)(1)(A) when it negotiated the sale of property, that is World Travel stock, with a party in interest, that is the Wells defendants who were shareholders with more than ten percent of shares each in World Travel.[4] According to plaintiffs, the Trustee violated § 1106(a)(1)(B) when it caused the Plan to borrow money from a party in interest, that is World Travel, by taking out a loan from World Travel to finance the ESOP transaction. Finally, plaintiffs assert that the Trustee violated § 1106(a)(1)(D) when it transferred assets for the benefit of the Wells defendants and to the detriment of Plan participants and beneficiaries.

Paredes and PFS move to dismiss arguing that plaintiffs have failed to allege sufficient facts to infer that the exemption listed in § 1108(e) does not apply and to infer deficiencies with the Trustee's process for reviewing the transaction.[5]

---

. . . numerous circuit courts have adopted the DOL's proposed definition of adequate consideration." Henry, 445 F.3d at 619.

4. PFS disputes that it was a fiduciary. The court at this pleading stage takes the facts in the light most favorable to plaintiffs and will therefore not reach the merits of this claim on a motion to dismiss.

5. PFS and Paredes also move to dismiss based on allegations that the Plan did not overpay for the World Travel shares. This

Plaintiffs counter that a sale between the Plan and parties in interest is enough to find a prohibited transaction under § 1106(a) and that defendants' motion to dismiss fails because they are relying on § 1108(e), an affirmative defense, which plaintiffs have no obligation to negate. Ignoring the reference to § 1108 in § 1106(a), plaintiffs assert that § 1106(a) categorically bars certain transactions such as this ESOP transaction between the Plan and the Wells defendants as parties in interest. Plaintiffs are incorrect. See Sweda v. Univ. of Pa., 923 F.3d 320, 336 (3d Cir. 2019). Section 1108 provides exceptions to the prohibited transactions listed in § 1106(a). These exceptions include acquisitions or sales by a plan of qualifying employer securities as long as there is adequate consideration. 29 U.S.C. § 1108(e).

Although plaintiffs do not make specific reference to § 1108(e) in their amended complaint, they clearly allege that there was inadequate consideration for this transaction. Plaintiffs have pleaded that defendant Jim Wells was centrally involved in the financial projections underlying the stock appraisal and knew of the accrued liabilities from revenue sharing agreements. Further, he instructed World Travel employees not to follow up on amounts due to clients from the

argument goes to the merits and will therefore not be addressed at this time.

revenue sharing agreements. Plaintiffs also contend that the liabilities from these revenue sharing agreements were not fully reported, that World Travel did not have money on hand to cover these liabilities, and that the price that the Plan paid for World Travel stock did not account for these liabilities. As a result, the financial projections for World Travel were unreasonably optimistic, that the Trustee performed a faulty valuation of the company as a result, and that World Travel stock was sold for a higher than fair market value price.

These allegations include specific claims regarding the deficiency of the sale price and the inadequacy of the consideration based on this deficiency as well as the Trustee's failure to properly evaluate the sale price. The court is mindful that our Court of Appeals has explained that "Rule 8(a)(2), Twombly, and Iqbal operate with contextual specificity" and that "ERISA's protective function is the focal point of the statute." Sweda, 923 F.3d at 326.

The court is also aware that plaintiffs do not plead any specifics as to what the fair market value of World Travel stock should have been, and they make many of their claims with the qualifier that these allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." ERISA, however, was a response to "'the lack of employee information and adequate safeguards

concerning [employee benefit plans'] operations.'" Id. (quoting 29 U.S.C. § 1001(a)). Plaintiffs at this stage are limited in the information to which they have access. In passing ERISA, Congress intended "'that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans.'" Id. (quoting 29 U.S.C. § 1001(a)).

Bearing in mind this information asymmetry for the Plan participants and beneficiaries, as well as the purpose of ERISA to protect employee participants and beneficiaries, the court finds that plaintiffs have pleaded sufficient facts to state a plausible claim against the Trustee of a prohibited transaction under § 1106(a) based on this ESOP transaction without adequate consideration between the Plan and parties in interest. The amended complaint is sufficient as to this claim not because it relates to an ESOP transaction, but because it involves an alleged ESOP transaction without adequate consideration and therefore is not exempted under § 1108(e).

The court notes that our Court of Appeals has found that specific intent is required to state a claim for a prohibited transaction under § 1106(a)(1)(D), a claim which plaintiffs plead here. See Reich v. Comptom, 57 F.3d 270, 278 (3d Cir. 1995). The Court in Sweda v. University of Pennsylvania extended this requirement to claims brought under

§ 1106(a)(1)(C) and found that "absent factual allegations that support an element of intent to benefit a party in interest, a plaintiff does not plausibly allege" a prohibited transaction under § 1106(a)(1)(C). Sweda, 923 F.3d at 337-38.

While the Court did not address whether allegations to support an element of intent are also required for claims brought under § 1106(a)(1)(A) and § 1106(a)(1)(B), it did conclude that reading § 1106(a)(1) with a requirement of intent to benefit a party in interest "represent[s] a more harmonious way to interpret the prohibited transactions listed in § 1106(a)(1) in the context of the statute as a whole." Id. at 338. It based this conclusion in part on the Supreme Court's identification of the common thread in § 1106(a)(1) as "a special risk to the plan from a transaction presumably not at arm's length." Id. (citing Lockeed Corp. v. Spink, 517 U.S. 882, 892-93 (1996)).

Plaintiffs allege that the Trustee did not perform due diligence in conducting this transaction which benefitted the Wells defendants who sold their shares in World Travel for more than market value. Plaintiffs further allege that the Trustee was incentivized to act in favor of the Wells defendants by the possibility of business from other companies who understand the Trustee to apply less than due diligence. These allegations can plausibly be interpreted as including an intent on the part of

the Trustee to benefit the Wells defendants by performing less than due diligence and acting in their favor with the prospect of future business. Thus, plaintiffs have pleaded sufficient facts to state a claim under § 1106(a) against the Trustee in Count I.

Plaintiffs also bring Count I pursuant to § 1106(b). This provision relates to transactions between a plan and a fiduciary and provides that:

> A fiduciary with respect to a plan shall not –
>
> . . .
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assts of the plan.

29 U.S.C. § 1106(b). Section 1106(b) is concerned with the risk of fiduciary self-dealing and therefore prohibits per se transactions between a plan and plan fiduciaries. Sweda, 932 F.3d at 336.

Plaintiffs claim that the Trustee violated § 1106(b)(2) when it caused the Plan to overpay for the World Travel shares to the benefit of the Wells defendants and to the

detriment of the Plan participants and beneficiaries. Plaintiffs also allege the Trustee violated § 1106(b)(3) by receiving consideration to its own personal account in the form of fees and an indemnification agreement from World Travel for its role in the ESOP transaction as the Trustee.

Defendants argue that the Trustee was not acting as a fiduciary with respect to its compensation in the form of fees and an indemnification agreement. As that argument goes to the merits of plaintiffs' claim, the court will not address it at this stage. The court finds sufficient facts in the amended complaint that the Trustee acted against the interests of the Plan and the Plan's participants and beneficiaries to state a claim under § 1106(b).

IV

Plaintiffs bring Count II for breach of fiduciary duties in violation of 29 U.S.C. § 1104(a) against defendants Paredes and PFS. Section 1104(a) provides that a fiduciary will operate under the "prudent man standard of care." It requires a fiduciary, in part, to:

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and

> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1).

The elements of a claim under § 1104(a)(1) are: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." Sweda, 923 F.3d at 328. Our Court of Appeals has explained that "a court assesses a fiduciary's performance by looking at process rather than results" by examining the "fiduciary's conduct in arriving at a . . . decision . . . and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." Id. at 329.

Plaintiffs claim that the Trustee violated its fiduciary duties under ERISA when it failed to conduct an appropriate and independent investigation into the fair market value of World Travel stock and the merits of the investment before approving the Plan's purchase of World Travel shares. As previously stated, plaintiffs contend that World Travel did not fully disclose its liabilities from revenue sharing agreements and that the Trustee did not account for these liabilities in

performing a financial evaluation of the company prior to the transaction. Plaintiffs also allege that the Trustee did not perform due diligence when it relied on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, and inappropriate comparable companies and failed to test and question assumptions.

Plaintiffs aver that this lack of due diligence resulted in overpayment by the Plan for World Travel shares thereby causing plaintiffs as Plan participants and beneficiaries to receive diminished stock allocations, excessive debt to finance the transaction, and caused losses to the individual accounts.

Defendants argue that plaintiffs do not allege insufficient process on the part of the Trustee. Defendants further argue that plaintiffs should be held to the Rule 9 pleading standard for fraud because these claims sound in fraud.

The court finds sufficient facts in the amended complaint to support a plausible claim that the Trustee breached its fiduciary duties as imposed by ERISA in failing to conduct a proper investigation into the sale price of World Travel shares for purposes of this ESOP transaction. Plaintiffs include facts about financial information that the Trustee failed to evaluate when it approved the sale price as well as the information the Trustee did not take into account. Plaintiffs also allege

losses as a result of the Trustee's actions in approving this sale. These claims are properly pleaded as a breach of fiduciary duty rather than fraud. The motion of Paredes and PFS to dismiss Count II of the amended complaint will therefore be denied.

V

The amended complaint states in Count III that Paredes and PFS violated § 1110 by having an indemnification agreement that relieves them from liability and that accepting this indemnification agreement was a breach of their fiduciary duties. Section 1110 provides that, with some exceptions, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). Plaintiffs allege that World Travel agreed to indemnify the Trustee in connection with the ESOP transaction and that this agreement is void as against public policy.[6] Plaintiffs do not

6. The only reference to Count III in the motion of Paredes and PFS to dismiss is in a footnote and asserts that the court must also dismiss this count if it dismisses Counts I and II. As our Court of Appeals has noted, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

attach a copy of the indemnification agreement to the amended complaint.

The Department of Labor has interpreted § 1110(a) to mean that "indemnification agreements which do not relieve a fiduciary of responsibility or liability" are permitted, including those that "leave the fiduciary fully responsibly and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased." 29 C.F.R. § 2509.75-4. In contrast, the Department of Labor interprets § 1110(a) as "rendering void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" since such a provision would "in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." Id.; see also Sec'y U.S. Dep't of Labor v. Koresko, 646 F. App'x 230, 244 (3d Cir. 2016).

Plaintiffs plead that World Travel agreed to indemnify the Trustee prior to the ESOP transaction. As a result of the ESOP transaction, the Plan owns World Travel outright. Our Court of Appeals has explained in dicta citing a non-precedential opinion from the Central District of California, Harris v. GreatBanc Trust Co., that an indemnification is not necessarily void as against public policy when the sponsor, rather than the plan, agrees to indemnify the

fiduciary. Koresko, 646 F. App'x at 244 (citing Harris, 2013 WL 1136558, at *1 (C.D. Cal. 2013)).

In Harris, however, the district court found that the indemnification agreement between the trustee and the sponsor company, which was fully owned by the ESOP, did not violate ERISA because the agreement contained a provision that prohibited indemnification if a court enters a final judgment that finds the trustee liable for a breach of fiduciary duties. Harris, 2013 WL 1136558, at *1. Plaintiffs allege in the amended complaint that no such exemption exists in the indemnification agreement as to violations of § 1106(a). Accordingly, the court will permit Count III to proceed.

VI

Plaintiffs assert Count IV against the Wells defendants pursuant to 29 U.S.C. § 1132(a)(3) for a prohibited transaction. Section 1132(a) states that:

> A civil action may be brought . . .
>
> (3) by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132. The Supreme Court has read this provision to authorize a participant, beneficiary, or fiduciary to bring a civil action against a nonfiduciary who knowingly participates in a transaction prohibited by § 1106(a). Harris Tr. & Savs. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 248-49 (2000).

Plaintiffs claim that the Wells defendants, as parties in interest, directors, and selling shareholders, participated in a transaction they knew or should have known to be prohibited under § 1106(a)(1)(A) and (D) when they sold their shares in World Travel to the Plan. Specifically, plaintiffs plead that Jim Wells was centrally involved in this transaction and the financial projections underlying the transaction. Plaintiffs also recite that he knew of the liabilities from revenue sharing agreements and had directed World Travel employees not to follow up on amounts due. Plaintiffs claim that these liabilities were not reflected in the sale price. These allegations are sufficient to plead that Jim Wells knowingly participated in the alleged prohibited transaction, that is a sale between the Plan and parties in interest not for adequate consideration.

Plaintiffs, however, fail to plead any specific facts as to how James R. Wells or Richard Wells knowingly participated in a prohibited transaction. As previously explained, an ESOP transaction for adequate consideration is not prohibited per se under § 1106(a) even if between a plan and parties in interest.

Their knowledge of the transaction itself is therefore not enough to plead that they knew the transaction was prohibited, that is it was not for adequate consideration under § 1108(e).

The facts in the amended complaint regarding the lack of adequate consideration, that is that the Plan paid the Wells defendants too much, do not implicate in any way James R. Wells or Richard Wells. Plaintiffs do not plead any specific allegations that these two defendants knew that the transaction was not for adequate consideration. There is nothing in the amended complaint stating that they knew of liabilities not reflected in the sale price or that they were involved in preparing the company's financial projections, in contrast to what is pleaded as to Jim Wells. The fact that both James R. Wells and Richard Wells were selling shareholders and are directors of World Travel or that Richard Wells is a former secretary and chief financial officer of World Travel does not state a plausible claim that either had any knowledge that the ESOP transaction at issue was prohibited. Any claims against James R. Wells and Richard Wells are speculative. In addition, it is not relevant that Richard Wells wanted to monetize his interest in the company. ESOP transactions are permitted by ERISA when they occur for adequate consideration. See 29 U.S.C. § 1108(e).

In the absence of any specific allegations regarding the knowing participation of James R. Wells or Richard Wells in a prohibited transaction pursuant to 29 U.S.C. § 1132(a)(3), the court will dismiss Count IV against James R. Wells and Richard Wells. Count IV as to Jim Wells will remain.

VII

Finally, plaintiffs allege in Count V that the Wells defendants are liable as co-fiduciaries for breach of fiduciary duties under 29 U.S.C. § 1105(a). This provision of ERISA provides that:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if . . . he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Actual knowledge of the breach is necessary for liability under § 1105(a)(1) and (3). Renfro v. Unisys Corp., 671 F.3d 314, 324 (3d Cir. 2011).

Plaintiffs allege that the Wells defendants, as directors of World Travel with access to World Travel's financial information and as selling shareholders in the ESOP transaction, knew or should have known of the Trustee's breach of its fiduciary duties in failing to perform due diligence in approving the sale price for more than fair market value. As previously stated, plaintiffs also aver that Jim Wells was centrally involved in this transaction and the preparation of the financial projections underlying the transaction. They claim that he knew of the liabilities from the revenue sharing agreements and instructed employees not to follow up on amounts due.

Plaintiffs have sufficiently pleaded facts that defendant Jim Wells had actual knowledge that the sale price was more than fair market value due to his knowledge of the liabilities from revenue sharing agreements that were not reflected in the financial projections and his role in the transaction.

As for defendants James R. Wells and Richard Wells, plaintiffs have not pleaded any facts that these two defendants "participate[d] knowingly" in a fiduciary's breach, enabled a fiduciary to commit a breach, or "ha[d] knowledge of a breach" as is required to state a claim under 29 U.S.C. § 1105(a). Our Court of Appeals has found that "sections 1105(a)(1) and (3)

require actual knowledge of the breach." Renfro, 671 F.3d at 324-35. The fact that they are directors and were selling shareholders in this transaction is not enough to make plausible the assertion that they had actual knowledge that the Trustee failed to conduct a proper investigation and exercise due diligence in approving the sale price. Whether either defendant should have known of the fiduciary's breach, as plaintiffs claim, is therefore irrelevant.

There is also nothing in the amended complaint as to how James R. Wells or Richard Wells enabled the fiduciary's breach. Any claim against these two defendants is merely speculation. Count V of the amended complaint will therefore be dismissed as to James R. Wells and Richard Wells. Count V against Jim Wells will stand.