# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

SHARI AHRENDSEN,
BARRY CLEMENT, LISA BUSH, and
THOMAS KALLAS, on behalf of the World
Travel, Inc. Employee Stock Ownership
Plan, and on behalf of a class of all other
persons similarly situated,

        Plaintiffs,

        Case No. 2:21-CV-02157-HB

v.

PRUDENT FIDUCIARY SERVICES, LLC,        Complaint – Class Action
a California Limited Liability Company,
MIGUEL PAREDES,
JAMES A. WELLS,
JAMES R. WELLS, and
RICHARD G. WELLS,

        Defendants.

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Shari Ahrendsen, Barry Clement, Lisa Bush, and Thomas Kallas by their

undersigned attorneys, on behalf of the World Travel, Inc. Employee Stock Ownership Plan and

similarly situated participants in the plan, and their beneficiaries, allege upon personal knowledge,

the investigation of their counsel, including interviews with Plaintiff Kallas (formerly

"Confidential Witness 1" or "CW1"), and upon information and belief as to all other matters, as

to which allegations they believe substantial evidentiary support will exist after a reasonable

opportunity for further investigation and discovery, as follows:

**BACKGROUND**

1.      Plaintiffs Shari Ahrendsen, Barry Clement, Lisa Bush, and Thomas Kallas

("Plaintiffs") bring this suit against: Prudent Fiduciary Services, LLC ("PFS") and its owner

1

Miguel Paredes (together, "the Trustee"), the trustee for the World Travel, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of World Travel, Inc. ("World Travel") in 2017; and selling shareholders James A. ("Jim") Wells, James R. Wells, and Richard G. Wells (together, the "Selling Shareholders").

2.    Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who were vested in shares of World Travel allocated to their accounts in the Plan.

3.    This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when it caused the Plan to buy shares of World Travel for more than fair market value in 2017, and other relief.

4.    As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.    At all relevant times, World Travel was a privately-held company and was the Plan's sponsor and administrator. World Travel adopted the Plan effective January 1, 2017. On or about December 20, 2017, the Plan purchased, directly or indirectly, from the Selling Shareholders, members of the Wells family, 19,860,000 shares of World Travel common stock for $200,573,217, which was financed by World Travel in a fully leveraged transaction with a loan bearing interest at an annual nominal rate of 2.64% that was to be repaid over a period of 45 years (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time World Travel became a 100% employee-owned company.

6. The Trustee represented the Plan and its participants as trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7. The ESOP Transaction allowed the Selling Shareholders to unload their interests in World Travel above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt payable over a 45-year repayment period to finance the Transaction. The Trustee failed to fulfill its ERISA duties, as trustee and fiduciary, to the Plan and its participants, including Plaintiffs.

8. The Selling Shareholders are parties in interest who sold shares in the ESOP Transaction. The Selling Shareholders are liable under ERISA for participating in prohibited transactions and the Trustee's breaches of fiduciary duty under ERISA.

9. Plaintiffs bring this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by them and similarly situated participants, resulting from the Trustee's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Selling Shareholders' participation in these violations.

## JURISDICTION AND VENUE

10. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Trustee to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against the Trustee and the Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of

3

Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan is administered in Exton, Pennsylvania.

## PARTIES

13.     Plaintiff Shari Ahrendsen has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff Ahrendsen resides in Omaha, Nebraska. She was Meeting & Events Coordinator for PRA Pharmaceuticals at World Travel. She was employed at World Travel from March 2014 to April 2020. She was vested in shares of World Travel in her Plan account.

14.     Plaintiff Barry Clement has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff Clement resides in Frisco, Texas. He was Lead Software Engineer at World Travel. Except for a two week period in January 2014, he was employed at World Travel from June 2013 to February 2, 2021, two weeks after he had given notice of his resignation. He was vested in shares of World Travel in his Plan account.

15.     Plaintiff Lisa Bush is a former employee of World Travel and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. She worked at World Travel for nine years, both as an account manager and in meeting technology. In January

2020, Plaintiff Bush left World Travel and cashed out her ESOP account. Had the violations outlined herein not occurred, she would have received substantially more from her ESOP account.

16.     Plaintiff Thomas Kallas is a former employee of World Travel and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff Kallas resides in Livonia, Michigan. He worked at World Travel for nearly five years as General Manager, Client Programs. Plaintiff Kallas left World Travel in January 2020. He is vested in shares of World Travel in his ESOP account. Had the violations outlined herein not occurred, his ESOP account would be worth substantially more.

17.     Defendant Prudent Fiduciary Services, LLC ("PFS") is a California Limited Liability Company. PFS bills itself as a provider of professional Independent Fiduciary/ESOP Trustee, ERISA compliance consulting, and expert witness services related to employee benefit plans such as qualified retirement plans and health and welfare plans. PFS's headquarters is at 100 N. Barranca St., Suite 870, West Covina, California 91791.

18.     PFS was the trustee of the Plan at the time of the ESOP Transaction. As trustee, PFS had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

19.     Defendant Miguel Paredes is the President and Founder of PFS. Defendant Paredes's business address is at Prudent Fiduciary Services, LLC, 100 N. Barranca St., Suite 870, West Covina, California 91791.

20.     Defendant Paredes was the trustee of the Plan at the time of the ESOP Transaction and continued in that role until Larisa Langston, Vice President of PFS, was appointed trustee of the Plan effective April 30, 2020. As trustee, Defendant Paredes had sole and exclusive discretion

to authorize and negotiate the ESOP Transaction on behalf of the Plan. Defendant PFS acted in the ESOP Transaction through Defendant Paredes.

21.    At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

22.    As Plan trustee, Defendant PFS and Defendant Paredes were named fiduciaries, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained, including the World Travel, Inc. Employee Stock Ownership Trust.

23.    The Notes to Financial Statements to the Plan's Forms 5500 Annual Return/Report of Employee Benefit Plan state that service providers to the Plan are parties in interest under ERISA. Defendant PFS was and is a service provider to the Plan as its trustee and Defendant Paredes was a service provider to the Plan in his term as trustee.

24.    Throughout their terms as trustee of the Plan, including at the time of the ESOP Transaction, Defendant PFS and Defendant Paredes were parties in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

25.    Defendant Jim Wells is and was at the time of the ESOP Transaction the Chairman of the Board of Directors of World Travel. He was a selling shareholder in the ESOP Transaction. He is the former President and Chief Executive Officer (CEO) of World Travel. On information and belief, he resides or may be found in this District, where World Travel is located.

6

26.     Defendant Jim Wells was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of World Travel, directly or indirectly; and/or as a World Travel director; and/or as an individual having powers or responsibilities similar to those of officers.

27.     Defendant James R. Wells was at the time of the ESOP Transaction a Director of World Travel. He was a selling shareholder in the ESOP Transaction. On information and belief, he resides or may be found in this District.

28.     Defendant James R. Wells was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of World Travel, directly or indirectly; and/or as a World Travel director.

29.     Defendant Richard G. Wells was at the time of the ESOP Transaction a Director of World Travel. He was a selling shareholder in the ESOP Transaction. He is the former Secretary, Treasurer, and Chief Financial Officer (CFO) of World Travel. On information and belief, he resides or may be found in this District.

30.     Defendant Richard G. Wells was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of World Travel, directly or indirectly; and/or as a World Travel director; and/or as a World Travel officer, or individual having powers or responsibilities similar to those of officers.

31.     The members of World Travel's Board of Directors have, and had at all relevant times, the power to appoint and remove the Trustee of the Plan, and the power to appoint and remove the Plan Administrator. At the time of the ESOP Transaction, Selling Shareholders Jim Wells, James R. Wells, and Richard G. Wells, as World Travel directors, were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A) because they exercised discretionary authority or

7

discretionary control respecting management of the Plan and/or had discretionary authority or discretionary responsibility in the administration of the Plan. They were fiduciaries through their respective tenures as company directors.

## FACTUAL ALLEGATIONS

32.    Founded in 1983 by Defendants James R. Wells, Richard G. Wells, and Jim Wells, World Travel bills itself as a global mid-market leader in corporate travel management. Defendants James R. Wells, Richard G. Wells, and Jim Wells are related: James R. and Richard are brothers, and Jim Wells is James R. Wells' son. The Wells family owned World Travel for nearly 35 years, until the Plan purchased the company in December 2017. World Travel had more than 500 employees at the time of the ESOP Transaction.

33.    World Travel's corporate headquarters is at 620 Pennsylvania Drive, Exton, Pennsylvania 19341, in this District. That address is listed as the Plan Administrator's address in the Plan's Summary Plan Description issued February 2018 ("SPD").

34.    World Travel was incorporated in Pennsylvania on December 30, 1982.

35.    World Travel stock is not and never was readily tradable on an established securities market.

36.    World Travel adopted the Plan with an effective date of January 1, 2017.

37.    The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

38.    World Travel identified the Plan as a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of World Travel.

39.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

40.     The Plan is established and maintained pursuant to a written document. The assets of the Plan are held in trust, which is governed by the World Travel, Inc. Employee Stock Ownership Trust Agreement.

41.     The SPD discloses: "The Plan Trustee and the Plan Administrator are each selected by the Board of Directors of the Company."

42.     The Plan's Forms 5500 identify World Travel as the sponsor and administrator of the Plan.

43.     The SPD discloses that World Travel is the sponsor and administrator of the Plan.

44.     Employees of World Travel participate in the Plan.

45.     World Travel is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

46.     World Travel is the Plan's administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

47.     World Travel is and was an ERISA fiduciary to the Plan as its administrator.

48.     World Travel is a named fiduciary under the terms of the Plan, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

49.     The Schedule H, Line 4i, Schedule of Assets (Held at End of Year) in the Plan's Forms 5500 represent that World Travel is, and has been since the Plan's adoption, a party in interest to the Plan.

50. The Notes to Financial Statements to the Plan's Forms 5500 report that the Plan's investment in World Travel common stock and indebtedness guaranteed by World Travel are party-in-interest transactions.

51. The Plan's Forms 5500 were signed on behalf of World Travel, as Plan Administrator, under penalty of perjury.

52. World Travel is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

53. World Travel, upon selection by its Board of Directors, appointed the Trustee as trustee of the Plan. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for World Travel stock.

54. As trustee for the Plan, it was the Trustee's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and World Travel, including acquisitions of World Travel stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

55. The Trustee received consideration for its own personal account from World Travel for its services in the ESOP Transaction, in the form of fees and an indemnification agreement, under a contract made when the Selling Shareholders owned World Travel.

56. Defendant PFS was founded in February 2017. It registered as a limited liability company in California on February 24, 2017.

57. On or about December 20, 2017, the Plan purchased from the Selling Shareholders, directly or indirectly, 19,860,000 shares of World Travel common stock for $200,573,217. At that time, World Travel became 100% employee owned.

10

58.    World Travel issued new shares in December 2017 as it became 100% employee owned.

59.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan purchased World Travel stock, directly or indirectly, from the Selling Shareholders, and/or from World Travel after World Travel redeemed and/or purchased the Selling Shareholders' stock.

60.    In December 2017, the Plan entered into a $200,573,217 term loan agreement with World Travel to purchase the shares of World Travel common stock. The borrowing is collateralized by the unallocated shares of World Travel common stock. The loan bears interest at an annual nominal rate of 2.64%. The borrowing is to be repaid over a period of 45 years.

61.    Defendants James R. Wells, Richard G. Wells, and Jim Wells founded World Travel in 1983 and were World Travel shareholders and directors at the time of the ESOP Transaction in 2017. Jim Wells was Chairman of the Board of Directors prior to, at the time of, and after the ESOP Transaction, and continues in that role at present.

62.    According to Confidential Witness 1 ("CW1"), Defendant Jim Wells exercised control over most aspects of World Travel's operations prior to and at the time of the Transaction.

63.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. James R. Wells, Richard G. Wells, and Jim Wells were 10 percent or more shareholders directly or indirectly of World Travel. James R. Wells, Richard G. Wells, and Jim Wells sold, exchanged or transferred World Travel stock to the Plan, directly or indirectly. At the time of the ESOP Transaction, James R. Wells, Richard G. Wells, and Jim Wells were parties in interest to

11

the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as 10 percent or more shareholders, directly or indirectly, of World Travel, and/or as directors, and/or as officers or individuals having powers or responsibilities similar to those of officers. Defendant Jim Wells was centrally involved in conceiving of, facilitating, and executing the sale of World Travel to the Plan, including directing the preparation of financial projections underlying the stock appraisal that the Trustee relied upon.

64. Following the ESOP Transaction, the members of the World Travel Board of Directors maintained control of the company in part through their power to appoint and remove the Trustee and to appoint and remove the Plan Administrator, which has authority to direct the actions of the "directed trustee," including on matters not subject to the vote of Plan participants by law and under the Plan's governing instruments. Under the Plan and the Trust Agreement, the Trustee is not a directed trustee with regard to the acquisition of World Travel stock.

65. That the Selling Shareholders sold World Travel while retaining control over it has been corroborated by Plaintiff Kallas (formerly CW1), who understands that the idea to create an ESOP to purchase World Travel originated when Richard G. Wells wanted to monetize his interest in the company even as the Selling Shareholders did not want to divest their control over it by selling to an unaffiliated third-party.

66. Defendant Jim Wells stated following the Transaction that "our board of directors and management team remains in place."

67. Despite the Plan's purchase of 100% of World Travel, Jim Wells stated that "I'm not going anywhere" and that a senior leadership succession plan he had put in place several years earlier also was still intact.

68. Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. The Plan paid a control premium for World Travel even though the Plan did not obtain control over the World Travel Board of Directors upon its 2017 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for World Travel. The Selling Shareholders retained control of the Board as a result of warrants received in exchange for their World Travel shares, instruments governing the Plan, and other Transaction and/or corporate documents.

69.    According to Plaintiff Kallas (formerly CW1), World Travel had revenue-sharing agreements with a number of its clients, by which World Travel was to refund some of the commissions its travel partners provided it for earned bookings. According to Plaintiff Kallas (formerly CW1), Jim Wells was fully aware of and controlled how World Travel accrued liabilities resulting from these revenue-sharing agreements and Jim Wells instructed that World Travel employees should not follow up on amounts due to clients unless the client brought it up.

70.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. World Travel did not fully report the scale of these liabilities in its financial records, or have reserves on hand to cover them, at the time of the Transaction. The price the Plan paid the Selling Shareholders did not account for World Travel's undisclosed liabilities.

71.    As Plan trustee, the Trustee is subject to liability for a payment by the Plan of more than fair market value for World Travel stock caused by the Plan's payment of a control premium where a previous owner or owners retained control of World Travel, the Plan's failure to receive a discount for lack of control, and/or other factors in the Trustee's faulty valuation of World Travel in the ESOP Transaction.

13

72.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. World Travel provided financial projections to the Trustee for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic.

73.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Trustee did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. The Trustee's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for World Travel stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of World Travel stock in the ESOP Transaction faulty. Due to the Plan's overpayment, the Plan's participants, including Plaintiffs, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

74.    Incentives to the Trustee to act in favor of the Selling Shareholders in the ESOP Transaction in breach of its duty of loyalty to the Plan included the possibility of business from sellers of companies who understood that the Trustee applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

14

75.    The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of World Travel shares at the time of the ESOP Transaction.

76.    The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their World Travel shares at the time of the ESOP Transaction.

77.    Pursuant to the Trustee's engagement agreement, World Travel, when it was owned by the Selling Shareholders, agreed to indemnify the Trustee as Plan Trustee in connection with the ESOP Transaction, and the Trust Agreement contained an additional indemnification agreement. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

78.    Plaintiffs further allege that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should the Trustee ultimately be required to reimburse World Travel.

79.    The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because the Trustee violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

80.    Payment by World Travel of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to the Trustee necessarily would adversely impact World Travel's equity value and therefore the value of Plan assets. Direct payment or reimbursement of the Trustee's

15

attorneys' fees, costs, litigation expenses, and liabilities by World Travel, or the Plan that owns it, would adversely affect the Plan and Plaintiffs' and other participants' financial interests.

## CLAIMS FOR RELIEF

## COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Trustee PFS and Miguel Paredes**

81.      Plaintiffs incorporate the preceding paragraphs as though set forth herein.

82.      ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee, PFS and Miguel Paredes, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here World Travel stock, with a party in interest, here the Selling Shareholders and/or World Travel, as took place in the ESOP Transaction.

83.      ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here World Travel, as took place in the ESOP Transaction.

84.      ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for World Travel stock and in continuing payments on the loan.

85.      The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in its capacity as trustee for the Plan.

86.      The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

87.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

88.     The Trustee caused the Plan to acquire World Travel stock from the Selling Shareholders and/or World Travel above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though the Trustee was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

89.     The Trustee received consideration for its own personal account from World Travel—fees and an indemnification agreement—as trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

90.     The Trustee caused and engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), in the ESOP Transaction.

91.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

17

92.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

93.     The Trustee, PFS and Miguel Paredes, has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

**COUNT II**

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Trustee PFS and Miguel Paredes**

94.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

95.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

96.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

97.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

18

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

98.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

99.     The Trustee, PFS and Miguel Paredes, was required to undertake an appropriate and independent investigation of the fair market value of World Travel stock in or about December 2017 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the World Travel stock purchased by the Plan. The Trustee failed to conduct a thorough investigation into the merits of the investment and further breached its duties in approving the Plan's purchase of World Travel stock at the price agreed to in the ESOP Transaction.

100.    The Trustee breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

101.    The Trustee has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

### COUNT III

**Violation of ERISA §§ 410 and 404(a)(1)(A), (B),**
**29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Trustee PFS and Miguel Paredes**

102.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

103.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve The Trustee, PFS and Miguel Paredes, a

19

Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I and II claims here.

104.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

105.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

106.    The indemnification agreement purports to provide payment or reimbursement for the benefit of the Trustee for all expenses, including but not limited to costs and attorneys' fees.

107.    To the extent that the indemnification agreement attempts to relieve the Trustee of its responsibility or liability to discharge its duties under ERISA, or attempts to have World Travel (a Plan-owned company) and thereby the Plan be responsible for the Trustee's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

108.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar

20

with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

109.    As a result of the foregoing, should it be held liable under the preceding Counts I or II, the Trustee should be ordered to disgorge any indemnification payments made by World Travel and/or the Plan, plus interest.

## COUNT IV

**Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against the Selling Shareholders Jim Wells, James R. Wells, and Richard G. Wells**

110.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

111.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

112.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

113.    As a result of the prohibited transactions described above, the Selling Shareholders received Plan assets in payments above fair market value for their World Travel stock.

114.    The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

115.    The Selling Shareholders knew or should have known: (1) about the existence of the Plan, (2) about the Plan's purchase, directly or indirectly, of their World Travel stock in the

ESOP Transaction, (3) that the Trustee was a fiduciary to the Plan, (4) that they were directors and 10% or more shareholders of World Travel or otherwise parties in interest, and (5) that the Trustee caused the Plan to engage in the stock purchase transaction.

116.    As directors of World Travel and as selling shareholders, the Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

117.    The Selling Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

118.    The Selling Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT V

**Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a)**
**Against the Selling Shareholders Jim Wells, James R. Wells, and Richard G. Wells**

119.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

120.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

22

121.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

122.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

123.    The Selling Shareholders were all members of the World Travel Board of Directors with authority to appoint and remove the Trustee and the Plan Administrator, and thus each Selling Shareholder was a fiduciary with respect to the Plan at the time of the ESOP Transaction.

124.    Given their involvement in the ESOP Transaction, their positions as directors, their access to company financial information, Jim Wells' particular authority in the company, and their appointment of the Trustee, the Selling Shareholders knew or should have known of the fiduciary breaches of the Trustee in connection with its faulty due diligence and imprudent approval of the stock purchase for more than fair market value, and the Selling Shareholders knowingly participated in the Trustee's fiduciary breaches, and enabled the Trustee's fiduciary breach by themselves failing to monitor as required of an appointing fiduciary.

125.    As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), the Selling Shareholders are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

126.    The Selling Shareholders failed to make reasonable efforts to remedy the Trustee's violations of ERISA associated with the ESOP Transaction despite knowing of such violations,

23

such as preventing the Plan's overpayment, reimbursing the Plan, or bringing the matter to the attention of the Secretary of Labor.

127.    Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), the Selling Shareholders are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches

## CLASS ACTION ALLEGATIONS

128.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All vested participants in the World Travel, Inc. Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the December 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold their World Travel, Inc. stock to the Plan, directly or indirectly, and their immediate families; the directors of World Travel, Inc. and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

129.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's Form 5500 filing for 2019 indicates that as of December 31, 2019, there were 564 participants in the Plan.

130.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

     i.   Whether the Trustee served as trustee in the Plan's acquisition of World Travel stock;

    ii.   Whether the Trustee was an ERISA fiduciary of the Plan;

   iii.   Whether the Trustee caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase World Travel stock and take loans from parties in interest;

iv.   Whether the Trustee engaged in good faith valuations of the World Travel stock in connection with the ESOP Transaction;

v.   Whether the Trustee caused the Plan to pay more than fair market value for World Travel stock;

vi.   Whether the Trustee engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii.   Whether the Trustee engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii.   Whether the Trustee breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of World Travel stock in or about December 2017 and to prevent the Plan from overpaying;

ix.   Whether World Travel was a party in interest;

x.   Whether the Selling Shareholders were parties in interest;

xi.   Whether the Selling Shareholders, as parties in interest, participated in prohibited transactions;

xii.   Whether the Selling Shareholders were fiduciaries;

xiii.   Whether the Selling Shareholders are liable as co-fiduciaries for the fiduciary breaches by the Trustee;

xiv.   The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations;

xv.   The appropriate relief for the Trustee's violations of ERISA; and

25

xvi. The appropriate relief for Selling Shareholders' knowing participation in the Trustee's violations of ERISA.

131. Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan paid above fair market value and took on an excessive loan for World Travel stock, resulting in them being allocated fewer shares of stock, and they continue to suffer such losses in the present because the Trustee failed to correct the overpayment by the Plan.

132. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

133. Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Trustee, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

134. In the alternative, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the Plan as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

135.     The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.     Declare that Defendant Trustee caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.     Declare that the Selling Shareholders participated in prohibited transactions with the Plan in violation of ERISA;

C.     Declare that Defendant Trustee breached its fiduciary duties under ERISA to the Plan and the class members;

D.     Declare that the Selling Shareholders are liable as co-fiduciaries for Defendant Trustee's breaches of fiduciary duty;

E.     Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

F.     Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

G.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

27

H.  Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

I.  Declare that the indemnification agreement between Defendant Trustee and World Travel violates ERISA § 410, 29 U.S.C. § 1110;

J.  Order Defendant Trustee to reimburse World Travel for any money paid by World Travel under any indemnification agreement between the Trustee and World Travel, plus interest;

K.  Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

L.  Order Defendant Trustee to disgorge any fees it received in conjunction with its services as trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

M.  Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

N.  Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

O.  Order Defendants to pay prejudgment and post-judgment interest;

P.  Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel; and

28

Q.    Award such other and further relief as the Court deems equitable and just.

Dated:  July 13, 2022                    Respectfully submitted,

                                        */s/ Gregory Y. Porter*

                                        **BAILEY & GLASSER LLP**

                                        Gregory Y. Porter (*pro hac vice*)
                                        Ryan T. Jenny (*pro hac vice*)
                                        1055 Thomas Jefferson Street NW, Suite 540
                                        Washington, DC 20007
                                        Telephone: (202) 463-2101
                                        Facsimile: (202) 463-2103
                                        gporter@baileyglasser.com
                                        rjenny@baileyglasser.com

                                        Patricia Mulvoy Kipnis (PA Bar No. 91470)
                                        923 Haddonfield Road, Suite 300
                                        Cherry Hill, NJ 08002
                                        Telephone: (856) 324-8219
                                        Facsimile: (304) 342-1110
                                        pkipnis@baileyglasser.com

                                        Patrick O. Muench (*pro hac vice*)
                                        318 W. Adams, Suite 1606
                                        Chicago, IL 60606
                                        T: (312) 995-7143
                                        F: (314) 863-5483
                                        pmuench@baileyglasser.com

                                        Laura E. Babiak (*pro hac vice*)
                                        209 Capital Street
                                        Charleston, WV 25301
                                        T: (304) 345-6555
                                        F: (304) 342-1110
                                        lbabiak@baileyglasser.com

                                        **COHEN MILSTEIN SELLERS & TOLL
                                        PLLC**

                                        Michelle C. Yau (*pro hac vice*)
                                        Mary J. Bortscheller (*pro hac vice*)
                                        Daniel R. Sutter (*pro hac vice*)
                                        Laura E. Older (*pro hac vice*)
                                        1100 New York Ave. NW, Fifth Floor
                                        Washington, DC 20005
                                        (202) 408-4600
                                        myau@cohenmilstein.com

29

mbortscheller@cohenmilstein.com
dsutter@cohenmilstein.com
lolder@cohenmilstein.com

*Attorneys for Plaintiffs*