**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHARI AHRENDSEN,** **BARRY CLEMENT, LISA BUSH, and** **THOMAS KALLAS, on behalf of the World** **Travel, Inc. Employee Stock Ownership** **Plan, and on behalf of a class of all other** **persons similarly situated,** | |
| **Plaintiffs,** | **Case No. 2:21-CV-02157-HB** |
| **v.** | |
| **PRUDENT FIDUCIARY SERVICES, LLC,** **et. al.,** | |
| **Defendants.** | |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF**
**LAW FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF**
**SETTLEMENT CLASS**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

      A.    Background and Motion Practice................................................. 2

      B.    Discovery and the Parties' Settlement Efforts ............................. 3

III.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS .............................. 5

      A.    Benefits to the Class.................................................................. 5

      B.    Notice and Administration ......................................................... 6

      C.    Attorneys' Fees, Expense Reimbursements, and Service Awards ............ 8

      D.    Release of Claims ..................................................................... 8

IV.   ARGUMENT ....................................................................................... 9

      A.    The Class Is Appropriately Certified for Settlement Purposes. .................. 9

      B.    The Settlement Is Fair, Reasonable and Adequate When Evaluated Under
            Rule 23(e)(2) and the Third Circuit's *Girsch* Factors. ............................... 10

            1.    The Girsch Factors Support Final Approval of the Settlement..... 12

                  a.    The Complexity, Expense, and Likely Duration of the
                        Litigation ........................................................................... 12

                  b.    The Reaction of the Class ................................................. 13

                  c.    The Stage of the Proceedings and the Amount of Discovery
                        Completed ........................................................................ 13

      d.     The Risks of Establishing Liability and Damages and Maintaining the Class Action through Trial .................... 14

      e.     The Ability of Defendants to Withstand a Greater Judgment ...................................................................................... 16

      f.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation............................................................. 16

   2.    The Rule 23(e) Factors Support Final Approval of the Settlement ................................................................................................ 19

      a.     The Class Representatives and Their Counsel Have Adequately Represented the Class.................................... 19

      b.     The Settlement Is the Product of Arm's Length Negotiations by Well-Informed and Experienced Counsel ...................................................................................... 21

      c.     The Relief Provided to the Class Is Adequate ................. 22

      d.     The Proposal Treats Class Members Equitably to Each Other ................................................................................ 24

   3.    The Non-Mandatory Prudential Factors Support Final Approval of the Settlement................................................................................ 24

V.    CONCLUSION .................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
   No. 1:15-cv-03053 (N.D. Ill. May 6, 2019), Dkt. 108 ............................................................18

*Brundle v. Wilmington Tr., N.A.*,
   919 F.3d 763 (4th Cir. 2019) ................................................................................................20

*Casey v. Reliance Tr. Co.*,
   No. 4:18-cv-00424-ALM-CMC (E.D. Tex. Aug. 6, 2020), Dkt. 176 .....................................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..................................................................................................15

*Chao v. Hall Holding Co, Inc.*,
   285 F.3d 415 (6th Cir. 2002) .................................................................................................17

*In re CIGNA Corp. Sec. Litig.*,
   2007 WL 2071898 (E.D. Pa. July 13, 2007) .........................................................................21

*In re Diet Drugs Prod. Liab. Litig.*,
   2010 WL 2735414 (E.D. Pa. July 2, 2010) ...........................................................................14

*Foster v. Adams & Assoc., Inc.*,
   No. 18-02723 (N.D. Cal. Feb. 11, 2022), Dkt. 244 ...............................................................18

*Gates v. Rohm and Hass Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) ..................................................................................14, 15, 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Litig.*,
   55 F.3d 768 (3d Cir. 1995) ....................................................................................................15

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ........................................................................................ *passim*

*Glynn v. Maine Oxy-Acetylene Supply Co.*,
   2022 WL 17617138 (D. Me. Dec. 13, 2022) ........................................................................18

*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481 (3d Cir. 2017) ..................................................................................................10

*Hochstadt v. Boston Sciences Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ......................................................................................18

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ................................................................. *passim*

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
  209 F.R.D. 94 (E.D. Pa. 2002) ............................................................................. 16

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008) ....................................................................... 16

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ............................................................. 24

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ...................................................................... 18

*Mehling v. New York Life Ins. Co.*,
  248 F.R.D. 455, 462 (E.D. Pa. 2008) ............................................................... 13, 18

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................................ 18, 19

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) .......................................................................... 11, 16

*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) ............................................................................. 17

*Perez v. First Bankers Trust Servs., Inc.*,
  2017 WL 1232527 (D.N.J. Mar. 31, 2017) ......................................................... 17, 22

*Pfeifer v. Wawa, Inc.*,
  2018 WL 2057466 (E.D. Pa. May 1, 2018) ................................................... 14, 17, 18

*In re Processed Egg Prod. Antitrust Litig.*,
  2016 WL 3584632 (E.D. Pa. June 30, 2016) ........................................................... 16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ..................................................................... 11, 13, 17

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................... 17

*Scalia v. Prof. Fid. Servs.*,
  No. 19-07874 (S.D.N.Y. Jan. 12, 2021), Dkt. 29 ...................................................... 19

*Stevens v. SEI Invs. Co.*,
  2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ........................................................ 12, 24

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)...........................................................................17

*Swain v. Wilmington Tr., N.A.*,
   No. 1:17-CV-00071 (D. Del. June 9, 2020), Dkt. 123.............................18

*Walsh v. Saakvitne*,
   No. 18-00155 (D. Haw. Apr. 22, 2021), Dkt. 453 (entering U.S. Department
   of Labor ("DOL") consent order and settlement for $1.46 million to ESOP)........................18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004).....................................................................11, 15

**Statutes**

29 U.S.C. § 1001 *et seq*...................................................................................1

§ 405(a), 29 U.S.C. § 1105(a)...........................................................................2

§ 502(a)(3), 29 U.S.C. § 1132(a)(3)..................................................................2

§ 502(a)(1)(B).....................................................................................................9

Internal Revenue Code Section 1.468B-1..........................................................5

**Other Authorities**

68 Fed. Reg. 75,632............................................................................................9

75 Fed. Reg. 33,830............................................................................................9

Fed .R. Civ. P. 23.......................................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Shari Ahrendsen, Barry Clement, Lisa Bush, and Thomas Kallas, individually and as Class Representatives, request that the Court grant final approval of the class action settlement reached among Plaintiffs and Defendants Miguel Paredes ("Paredes"), Prudent Fiduciary Services, LLC ("PFS" and with Paredes, the "Trustee"), and James A. Wells ("Selling Shareholder" and with Paredes and PFS, "Defendants").[1]

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") class action (the "Lawsuit") for a payment of $8,700,000 in cash (an average recovery of approximately $14,309 per Class Member before any fees and expenses). Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds according to a Plan of Allocation ("POA"). The proposed Settlement Agreement ("Settlement Agreement" or "SA")[2] satisfies all of the criteria for final approval found in Rule 23(e)(2) and under Third Circuit law, providing an excellent result for the Class.

The Court granted Plaintiffs' motion for preliminary approval, certified a settlement class, and approved class notice on January 30, 2023 ("Preliminary Approval Order"). Dkt. 64. The Parties have fulfilled all their obligations under that Order, and Plaintiffs now ask the Court to: (1) grant final approval of the Settlement; (2) grant final certification of the Settlement Class for settlement purposes only; (3) find that the Notice Plan satisfies the requirements of due process and Rule 23(e)(1); (4) find the Settlement to be fair, reasonable and adequate; (5) dismiss on the

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] The Settlement Agreement is filed as Exhibit B to the Declaration of Gregory Y. Porter at Dkt. 85-1.

merits and with prejudice all claims asserted against Defendants; (6) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (7) approve the awards of Plaintiffs' Counsel attorneys' fees in the amount of $2,900,000.00 and expenses in the amount of $67,649.70 as requested in their separately filed motion for attorneys' fees; (8) approve the settlement administration expenses necessary to effectuate the Settlement; and (9) award $15,000 to Named Plaintiff Thomas Kallas and $10,000 to each of Named Plaintiffs Shari Ahrendsen, Barry Clement, and Lisa Bush as Service Awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background and Motion Practice

This class action is brought on behalf of participants and beneficiaries of the World Travel, Inc. Employee Stock Ownership Plan (the "Plan" or "World Travel ESOP"). The Second Amended Complaint ("SAC") alleges that Defendants violated ERISA in connection with the purchase of shares of World Travel, Inc. ("World Travel" or the "Company") common stock by the ESOP on December 20, 2017 (the "ESOP Transaction"). SAC, Dkt. 73 ¶¶ 3, 5. In Counts I and II, Plaintiffs asserted that the Trustee violated ERISA in connection with the ESOP Transaction by, *inter alia*, causing the ESOP to pay more than fair market value for World Travel stock. *Id*. at ¶¶ 81-101. In Count III, Plaintiffs alleged that agreements by the Company to indemnify the Trustee violated ERISA. *Id*. at ¶¶ 102-109. In Count IV, Plaintiffs asserted, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), that the Selling Shareholder engaged in prohibited transactions. *Id*. at ¶¶ 110-118. In Count V, Plaintiffs asserted, pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), that the Selling Shareholder is liable as co-fiduciary for the Trustee's fiduciary breaches. Defendants deny

these allegations, deny any wrongdoing or liability, and have defended themselves in this Lawsuit. Defendants do not admit wrongdoing of any kind regarding the ESOP Transaction.

Plaintiffs Shari Ahrendsen and Barry Clement filed their original Complaint on May 11, 2021. Dkt. 1. On July 30, 2021, the Trustee filed a motion to dismiss (Dkt. 34) and the Selling Shareholders (then including Defendants James R. Wells and Richard G. Wells) filed a motion to dismiss on August 9, 2021. Dkt. 35. Plaintiffs, then including Lisa Bush, filed an Amended Complaint on August 30, 2021 (Dkt. 36), and Defendants' motions to dismiss were therefore denied as moot. Dkt. 41. Defendants filed motions to dismiss the Amended Complaint on September 23, 2021 (Dkt. 45, 46), and the Parties completed briefing those motions on October 25, 2021. Dkt. 51, 52, 54, 55. On February 1, 2022, the Court denied the Trustee's motion to dismiss, denied Defendant James A. Wells' motion to dismiss, and granted Defendants James R. Wells' and Richard G. Wells' motion to dismiss. Dkt. 56, 57. On July 14, 2022, the Court granted leave for Plaintiffs to file the SAC, which named Thomas Kallas as a plaintiff. Dkt. 71-73.

### B.    Discovery and the Parties' Settlement Efforts

The Parties began discussing settlement on March 25, 2022. Declaration of Gregory Porter in Support of Plaintiffs' Motion for Final Approval of Settlement and Certification of Settlement Class and Plaintiffs' Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Service Awards ("Porter Decl."), attached hereto as Exhibit A, ¶ 21. As part of those discussions, Plaintiffs requested documents they would need to evaluate any potential settlement. *Id*. ¶ 18. In addition, Plaintiffs engaged in formal discovery, issuing Requests for Production of Documents to Defendants on April 1, 2022. *Id*. ¶ 19. Plaintiffs also issued document subpoenas to numerous individuals and entities involved in the ESOP Transaction:

World Travel; the Trustee's legal and financial advisors; entities that showed interest in acquiring World Travel; and advisors to World Travel and the Selling Shareholder. *Id*.

Through this discovery process, Plaintiffs obtained and reviewed the categories of documents necessary to evaluate a potential settlement, including: typed notes from discussions the Trustee had about the ESOP Transaction; insurance policies; the World Travel ESOP Plan Document and Trust agreement; the executed ESOP Transaction documents; an opinion letter from the Trustee's financial advisor; memorandums from the Trustee detailing its fiduciary review process; the valuation report prepared by the Trustee's financial advisor; valuation report prepared by the Company's valuation advisor; an agenda for a due diligence meeting with the Trustee and its advisors; document request lists from World Travel's advisors; financial projections; communications from third parties expressing interest in acquiring World Travel; information on World Travel's top customers over time; information presented to ESOP participants including a presentation from a town hall meeting; due diligence task lists; and World Travel Board of Directors meeting minutes and resolutions. *Id*. ¶ 18.

Working with a valuation expert, Plaintiffs utilized the information received through discovery to obtain an estimate of damages consisting of the difference between what the ESOP paid for World Travel shares and (according to Plaintiffs' expert) the fair market value of those shares. Using that formula, Plaintiffs' valuation expert estimated potential damages of between $8.6 and $22.4 million. *Id*. ¶ 17. The Parties then engaged in negotiations starting on September 1, 2022 and engaged in several rounds of offers and counter offers thereafter. *Id*. ¶ 21. After months of intense negotiations, the Parties reached the terms of the proposed Settlement. *Id*.

**III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS**

The material terms of the Settlement Agreement (Dkt. 85-1, Exhibit B) are summarized below. The proposed Settlement Class consists of all persons who, at any time on or prior to January 1, 2023, were vested participants in the ESOP and the beneficiaries of such participants. SA ¶ 1.12. Excluded from the Settlement Class are the shareholders who sold their Company stock to the ESOP, directly or indirectly, and their immediate families; the directors of World Travel, Inc. and their immediate families; and legal representatives, successors, and assigns of any such excluded persons. *Id*.

**A.    Benefits to the Class**

Defendants, pursuant to the terms of the Settlement Agreement, will cause $8,700,000 ("Settlement Amount") to be deposited into a Settlement Fund Account established by the Settlement Administrator at a federally chartered financial institution (the "Financial Institution"), which shall be considered a common fund created as a result of the Lawsuit. SA ¶ 7. The Settlement Amount covers all payments to Settlement Class Members pursuant to the POA, any Court-awarded attorneys' fees, expense reimbursements, service awards to the Class Representatives, and expenses associated with the Class Notice and Settlement Administration. *Id*. ¶ 8.

Before subtracting expenses and attorneys' fees, each of the approximately 608 Class Members will receive approximately $14,309 on average. Porter Decl. ¶ 24. The Settlement Fund Account is structured to qualify as a "Qualified Settlement Fund" under Section 1.468B-1 of the Internal Revenue Code. SA ¶ 7.1. The Class is responsible for all taxes and tax-related expenses from income earned on the Qualified Settlement Fund, which shall be paid out of the Qualified Settlement Fund. *Id*. ¶ 8.1. Under the proposed Plan of Allocation, attached as Exhibit 3 to the Settlement Agreement, Class Members will receive their *pro rata* share of the Net Proceeds.

**B.      Notice and Administration**

The Notice Plan approved by the Court was implemented by the Settlement Administrator, Analytics Consulting, LLC ("Analytics"). Specifically, on March 2, 2023, Analytics mailed the Class Notices (79 of which also included election forms for those who had a payment option). *See* Declaration of Jeff Mitchell ("Mitchell Decl.") ¶ 9, attached as Exhibit 1 to the Porter Declaration. For any Notices returned with a forwarding address, Analytics updated the class list with the forwarding address and processed a re-mail of the Notice to the updated address. *Id.* ¶ 10. For any Notices returned as undeliverable, Analytics used a skip trace or other method to ascertain the Class Member's current mailing address, and where possible, Analytics re-mailed the Notice to the current mailing address. *Id.* ¶ 11. As of April 27, 2023, the Class Notice reached 597 of the 608 Class Members. *Id.* ¶ 12. Thus, the Class Notice was successfully transmitted to over 98% of Class Members (*id.*), which is above the targeted 70% to 95% "reach" for class notices. *See* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, Fed. Justice Ctr. (2010).[3]

The Class Notice, attached to the Mitchell Declaration as Exhibit A, is clear and straightforward, providing Class Members with key information such as: information about Class Members' rights and how to object to the Settlement or the requested attorneys' fees, expenses, or service awards; the deadline to object to the same; the date of the Fairness Hearing; and information about the terms of the Settlement Agreement. Analytics also established a settlement website with detailed information about the Settlement. Mitchell Decl. ¶ 13. The address, https://www.worldtravelesopsettlement.com, was printed on all Class Notices. Exhibit A to

---

[3]    *See*    https://www.formalu.com/forms/180563/judges-classaction-notice-and-claims-process-checklist-and-plain-language-guide.

Mitchell Decl. The website provides links to key documents, including all Court filings related to the Settlement. *Id*. ¶ 13. In particular, Plaintiffs' Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Service Awards and this Motion will be posted on the settlement website once filed. *Id*.

As of April 27, 2023, zero objections have been received. *Id*. ¶ 17. To date, Analytics has documented a total of 150 unique visitors to the website. *Id*. ¶ 13. The Class Notice also provided Class Members with a toll-free number, staffed by live agents, if Class Members have additional questions. *Id*. ¶ 14. To date, the Analytics' Call Center has received 43 calls and 10 emails related to the Settlement. *Id*. ¶¶ 14-15. In addition, Class Counsel has received one inquiry concerning the Settlement. Declaration of Michelle C. Yau in Support of Plaintiffs' Motion for Final Approval of Settlement and Certification of Settlement Class and Plaintiffs' Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Service Awards ("Yau Decl."), attached hereto as Exhibit B, ¶ 48. As of the date of this Motion, no Class Member has articulated concerns to Class Counsel or Analytics with any aspect of the Settlement. Mitchell Decl. ¶ 17; Yau Decl. ¶ 49. Analytics' fees and expense for serving as Settlement Administrator are expected to be approximately $16,700, with a cap of $17,500. Mitchell Decl. ¶ 6; Yau Decl. ¶ 38.

Defendants have caused to be deposited $100,000 into the Settlement Fund Account. SA ¶ 7.2. Not later than thirty (30) calendar days after the entry of the Final Order by the Court, Selling Shareholder shall direct that $8,600,000 be deposited into the Settlement Fund Account, at which point, the total amount will collectively comprise the "Settlement Amount." *Id*. ¶ 7.3. Plaintiffs' Counsel will direct the Settlement Administrator to disburse money from the Settlement Fund Account. *Id*. ¶ 8. If the Court approves the Settlement, Analytics will determine the amounts

allocable to each Class Member. *Id.* ¶ 8.2.3; Mitchell Decl. ¶ 16. The net of disbursements called for in Sections 8.1, 8.2.1, and 8.2.2 of the Settlement Agreement ("Net Proceeds") will be distributed according to the Plan of Allocation.

Analytics will process distributions and payment elections by Class members and implement the Plan of Allocation. Mitchell Decl. ¶ 16. Class Members who have an active ESOP account will receive a cash allocation to their ESOP accounts to be deposited into a money market fund to be established by the trustee of the ESOP. SA ¶ 8.2.3. Class Members who no longer have an active ESOP account will receive a direct payment from the Settlement Fund by check unless they elect to rollover their Settlement payment into another retirement account. *Id.*

### C.    Attorneys' Fees, Expense Reimbursements, and Service Awards

The Settlement Agreement provides that Plaintiffs' Counsel may request an award of attorneys' fees not to exceed one-third of the Settlement Amount (or, $2,900,000) and the reimbursement of litigation expenses, including the cost and expense of the valuation expert retained by Plaintiffs' Counsel, in an amount not to exceed $100,000. SA ¶ 9.1; ECF 85-1 (Porter Decl. ¶ 25). The Settlement Agreement also allows for a request of service awards—not to exceed $15,000—for each Class Representative in recognition of their services to the Class. *Id.* ¶ 8.2.2. Contemporaneously with this motion, Plaintiffs are filing a motion for approval of an award of attorneys' fees of $2,900,000 (one-third of the Settlement Fund), reimbursement of $67,649.70 in litigation expenses spent prosecuting this Lawsuit, service awards of $10,000 to $15,000 each for the Class Representatives, and the payment of settlement administration expenses.

### D.    Release of Claims

In exchange for payment of the Settlement Amount and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release any claims which were,

or could have been, asserted in the Lawsuit that arise from the facts and claims alleged in the SAC. SA ¶ 3.2. The Released Claims and covenant not to sue are set forth in full in the Settlement Agreement. *Id*. ¶ 3.2 & ¶ 4.1. The Released Claims do not include any Class Members' claims for benefits under Section 502(a)(1)(B) of ERISA if the claims are based on errors unrelated to the allegations in the SAC, such as the participant's salary, age, or years of service. *Id*. Further, the Settlement is subject to a written determination by the Independent Fiduciary, that the scope of the released claims is reasonable consistent with ERISA's Prohibited Transaction Exemption 2003-39 that governs the "Release of Claims and Extensions of Credit in Connection with Litigation" ("PTE 2003-39"), 68 Fed. Reg. 75,632, as amended by 75 Fed. Reg. 33,830. The Independent Fiduciary will provide a report, with its determination of the reasonableness of the Settlement including the scope of the release, no later than May 15, 2023. *Id*. ¶ 2.3. Class Counsel will file the Independent Fiduciary report with the Court and post it to the Settlement website.

## IV.    ARGUMENT

### A.    The Class Is Appropriately Certified for Settlement Purposes.

The Court preliminarily certified the Class for settlement purposes when it granted preliminary approval and approved the issuance of class notice. Dkt. 86. For the reasons contained in the brief in support of preliminary approval (Dkt. 85 at 8-14), which have not changed, the Class meets all the requirements of Rule 23(a) and 23(b)(1).

Specifically, the Class is sufficiently numerous because it encompasses 608 Class Members. It satisfies commonality because questions about whether the Trustee engaged in prohibited transactions under ERISA by permitting the ESOP to purchase World Travel stock and take a loan from World Travel; whether the Trustee took sufficient steps to determine the value of the Company stock; whether the Trustee caused the ESOP to pay more than fair market value for

Company stock; and whether the Selling Shareholder received more than fair market value for their Company stock are substantially identical among Class Members. The Class satisfies typicality because Plaintiffs' claims arise from the same facts as other Class Members. The Class satisfies the adequacy requirement because Plaintiffs have no conflict with the Class and have been actively engaged in the litigation. In addition, class certification is appropriate under Rule 23(b)(1) because prosecuting separate actions by individual Class Members would create a risk of inconsistent adjudications and because an individual adjudication by one of the Class Members would dispose of the interests of absent Class Members. Therefore, the Court should finally certify the Class for settlement purposes.

### B.    The Settlement Is Fair, Reasonable and Adequate When Evaluated Under Rule 23(e)(2) and the Third Circuit's *Girsch* Factors.

Rule 23(e) provides that a class action cannot be settled without court approval. To be approved, a class action settlement must be fair, reasonable and adequate. Rule 23(e)(2); *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017). The 2018 Amendments to Rule 23 provide direction to courts considering whether to approve such a settlement. Rule 23(e)(2) provides that the Court should look to the following factors:

> (A) the class representatives and counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019).

In tandem with Rule 23(e), courts within the Third Circuit evaluate class action settlements under the nine factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which require a court to consider: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–38 (3d Cir. 2004) (citing *Girsh*).

Finally, when appropriate, courts may also consider the following non-mandatory factors known as "the *Prudential* factors":

> [a] the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [b] the existence and probable outcome of claims by other classes and subclasses; [c] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [d] whether class or subclass members are accorded the right to opt out of the settlement; [e] whether any provisions for attorneys' fees are reasonable; and [f] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). "Unlike the *Girsch* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) [hereinafter *In re NFL*].

Here, all of the relevant factors under *Girsch* and Rule 23(e), as well as under *Prudential*, support approval of the Settlement.

### 1. The Girsch Factors Support Final Approval of the Settlement

#### a. *The Complexity, Expense, and Likely Duration of the Litigation*

The first *Girsh* factor, which focuses on the complexity, cost and likely duration of the litigation, weighs strongly in favor of approval. It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *3 (E.D. Pa. Feb. 28, 2020) (citation omitted). This ERISA dispute is no different. The Parties had different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations—that the ESOP overpaid for World Travel stock—turned on facts that were hotly contested by the parties. These allegations involved the accuracy of World Travel's projections, whether the valuation methods (including the appropriate discount and premiums) employed by the Trustee's advisors were proper, and whether negative facts were ignored by or not sufficiently investigated by the Trustee during the due diligence and negotiation process.

Defendants vigorously denied all of the allegations asserted in the complaint, asserted a number of affirmative defenses, and vigorously defended the ESOP Transaction as prudent and fair to all ESOP participants (the Class Members). As evidence that the ESOP Transaction occurred at a fair price, Defendants pointed to evidence that other buyers sought to acquire World Travel at a similar value to what the ESOP paid. If the Lawsuit were to proceed, Plaintiffs would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony wherein no party could reasonably be certain that its expert or evidence would carry the day.

12

Continued litigation would have required Plaintiffs' Counsel to continue fact discovery, including briefing potential motions to compel, taking depositions, preparing witnesses, and engaging in formal expert discovery, as well as preparing and arguing motions for class certification and possibly summary judgment. Trial of Plaintiffs' claims would require substantial investment of attorney time and expenses, particularly with respect to experts. And, regardless of the outcome, there likely would have been appeals, further delaying resolution and incurring expense. A settlement avoids the risks and delays attendant with continued litigation and ensures the Class Members will each receive approximately $14,309—on average, before fees and expenses—which far exceeds most other ESOP settlements. *See infra* Section IV.B.1.f. Thus, the proposed Settlement is an excellent result for the Class, and there is no reason "to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class . . . ." *Mehling*, 246 F.R.D. at 472.

### b. The Reaction of the Class

The second *Girsh* factor considers the reaction of the class to the Settlement. To date, the Settlement Administrator has received 53 inquiries by telephone or email, and no Class Member has objected to the Settlement, nor articulated concerns with any aspect of the Settlement. Mitchell Decl. ¶ 14; Yau Decl. ¶ 50. The absence of any objections to date indicates that the Class views the Settlement terms favorably. However, if any objections are submitted after the motion for final approval is filed, Plaintiffs will submit a response thereto before the Fairness Hearing.

### c. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Girsh* factor requires the Court to evaluate whether Plaintiff had an "adequate appreciation of the merits of the case before negotiating" settlement. *Prudential*, 148 F.3d at 319 (internal quotation marks omitted).

As described in Plaintiffs' Motion for Preliminary Approval (Dkt. 85), the Parties engaged in extensive written discovery to obtain the necessary documents to understand the strength of Plaintiffs' claims. They also litigated motions to dismiss and worked with a valuation expert, which allowed them to negotiate a fair, adequate and reasonable settlement. *See Pfeifer v. Wawa, Inc.*, 2018 WL 2057466, at *6 (E.D. Pa. May 1, 2018)  (finding "substantial discovery" where documents related to the merits and the Class's potential recovery had been produced, and plaintiff had hired valuation experts); *see also Gates v. Rohm and Hass Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (finding settlement reasonable after "the parties have conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case against [Defendants] and reach a reasonable settlement").

In addition to this case-specific knowledge gained through discovery, Plaintiffs' Counsel have deep ESOP experience amassed from litigating at least 20 other ESOP class actions in the last five years. *See* Porter Decl. ¶ 22; Yau Decl. ¶ 46; *see also infra* Section IV.B.2.a (describing adequacy of Plaintiffs' Counsel). As a result, Plaintiffs' Counsel was intimately familiar with the factual and legal hurdles the Class would face through continued litigation. Likewise, Defendants' Counsel have ample ESOP experience and were familiar with the issues at play. That both sides were represented by sophisticated counsel, who were able to fairly assess the strengths and weaknesses of their respective positions through dispositive motion briefing, document discovery, and consultation with experts indicates that the Settlement reached was fair and reasonable.

### d. *The Risks of Establishing Liability and Damages and Maintaining the Class Action through Trial*

The fourth, fifth, and sixth *Girsh* factors address various risks associated with ongoing litigation and asks courts to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Diet Drugs Prod.*

*Liab. Litig.*, 2010 WL 2735414, at *8 (E.D. Pa. July 2, 2010) (quoting *In re Prudential*, 148 F.3d at 319). As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp. Pick-Up Truck Fuel Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238–39 (3d Cir. 2001) (quoting *Gen. Motors*, 55 F.3d at 816). Finally, this factor considers the likelihood of maintaining a class certification through trial. *In re Warfarin*, 391 F.3d at 537.

Here, Plaintiffs faced significant risks. As described above, the Parties had different views about the likely outcome of the litigation and the proper value of Company stock at the time of the ESOP Transaction. Defendants contend the ESOP and its participants were not harmed at all. *See supra* Section IV.B.1.a. Defendants' experts would likely disagree with Plaintiffs' expert who believed the ESOP overpaid by approximately $8.7 to $22 million. The core dispute concerning the true value of a privately held company (World Travel) was and would continue be hotly contested through trial. This uncertainty put all Parties at risk. Ultimately, those factual issues and inevitable battle of the experts would have made the outcome of further litigation uncertain at best. Because these factual disputes placed the ultimate outcome of the litigation in doubt, all Parties faced substantial risk. *See Mehling*, 248 F.R.D. at 461 (noting "proving damages would involve a 'battle of the experts' on complex factual questions" and "there is no guarantee that the Court would accept their estimate of damages over Defendants' estimate"). With respect to class certification, Plaintiffs likely would have brought a contested class certification motion. The uncertainty of the result, as well as the time and expense necessary to litigate class certification,

further supports final settlement approval. *In re Ikon Off. Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (recognizing the risks of maintaining an ERISA class action through trial).

The Parties, having litigated similar issues extensively in the past, were fully aware of these risks and the possible outcomes, and were able to reach a settlement early on in the process. Therefore, the certain recovery of $8.7 million represents a very good result for the Class.

### e.    The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor assesses the ability of the defendant to withstand a greater judgment and "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL*, 821 F.3d at 440. This factor is not a significant concern here because the Parties reached the Settlement Agreement based on the strengths and weaknesses of the case, not due to Defendants' ability to pay a greater judgment. But even if the Defendants here *could* withstand a larger judgment, the balance of other factors still supports approval of this Settlement. *See In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement."); *see also McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 462 (D.N.J. 2008) (enumerating cases where court granted final approval of settlement and the settling defendant had the ability to pay greater amounts). Thus, this factor supports final approval of this Settlement.

### f.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation

The eighth and ninth *Girsh* factors assess the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors weigh "the

present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, . . . compared with the amount of the proposed settlement." *In re Prudential Ins. Co.*, 148 F.3d at 322. "[I]n conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

In cases alleging that an ESOP Transaction violates ERISA because the ESOP overpaid Defendants for the company stock purchased, the measure of loss is the difference between what the ESOP paid for the stock and the true value of the stock. *See Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Chao v. Hall Holding Co, Inc.*, 285 F.3d 415, 423, 444 (6th Cir. 2002); *Perez v. First Bankers Trust Servs., Inc.*, 2017 WL 1232527, at *81 (D.N.J. Mar. 31, 2017). Applying that theory, Plaintiffs' valuation expert—after reviewing documents and information obtained through discovery—estimated that the ESOP overpaid by between $8.6 and $22.4 million. The proposed Settlement of $8.7 million is above the low end of the Class's potential recovery, and is 39% of the maximum recovery the Class could obtain, based on Plaintiffs' expert's opinion. A settlement that provides 39% to 100% of the potential recovery the Class ***might*** obtain after years of litigation is an outstanding result. Even recoveries representing a small percentage of the defendant's maximum exposure—which this is not—may be found to be fair, adequate and reasonable. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Evaluating settlements achieved in ESOP cases in this Circuit indicates that the Settlement achieved here is fair and reasonable. For example, in *Pfeifer v. Wawa, Inc.*, an ESOP case, the

court concluded that a settlement representing between 25% (under one damages theory) and 50% (under the other damages theory) fell within the permissible range. 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018). And, in *McDonough v. Toys R Us, Inc.*, the court concluded that a settlement that represented approximately 24% of estimated actual damages was reasonable, noting that it had "upheld far smaller settlements." 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015). Likewise, in *Hochstadt v. Boston Sciences Corp.*, the parties settled for $8.2 million in a case with damages estimated at the high end by the plaintiffs' counsel to be $160 million and more conservatively by the court to be $30 million. 708 F. Supp. 2d 95, 108–09 (D. Mass. 2010). And in *Mehling v. New York Life Ins. Co.*, the court found that a settlement of 20% of the "best possible" recovery was comparable to other class settlements approved in that district. 248 F.R.D. 455, 462 (E.D. Pa. 2008); *see also In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (approving settlement of $41.5 million where the damages would have been "substantial in light of the billions of dollars grossed from global sales").

Moreover, comparing the gross dollar value achieved here ($8.7 million) to the gross value of ESOP settlements approved by courts around the country, confirms that this Settlement should be finally approved. *See, e.g.*, *Swain v. Wilmington Tr., N.A.*, No. 1:17-CV-00071 (D. Del. June 9, 2020), Dkt. 123 (granting final approval of $5.0 million ESOP settlement); *Glynn v. Maine Oxy-Acetylene Supply Co.*, 2022 WL 17617138, at *7 (D. Me. Dec. 13, 2022) (granting final approval of $6.3 million ESOP settlement); *Foster v. Adams & Assoc., Inc.*, No. 18-02723 (N.D. Cal. Feb. 11, 2022), Dkt. 244 (granting final approval of $3.0 million ESOP settlement); *Allen v. GreatBanc Tr. Co.*, No. 1:15-cv-03053 (N.D. Ill. May 6, 2019), Dkt. 108 (granting final approval of $2.25 million ESOP settlement); *Casey v. Reliance Tr. Co.*, No. 4:18-cv-00424-ALM-CMC (E.D. Tex. Aug. 6, 2020), Dkt. 176 (granting final approval of $6.25 million ESOP settlement); *Walsh v.*

*Saakvitne*, No. 18-00155 (D. Haw. Apr. 22, 2021), Dkt. 453 (entering U.S. Department of Labor ("DOL") consent order and settlement for $1.46 million to ESOP); *Scalia v. Prof. Fid. Servs.*, No. 19-07874 (S.D.N.Y. Jan. 12, 2021), Dkt. 29 (entering DOL consent order and settlement providing for $0.75 million in cash to ESOP).

Finally, the average gross recovery of $14,309 per Class Member is significantly greater than per class member recoveries in other ERISA cases. *See* Porter Decl. ¶ 24 (showing detail of 10 ERISA class action settlement recoveries and per class member average gross recovery values that are less than the instant Settlement recovery and average gross participant payment). Even if one deducts the maximum possible award for attorneys' fees, expenses, and service awards, the average net recovery is more than $9,000 per Class Member. *Id*. ¶ 25. Thus, whether evaluated on a gross or net recovery basis, the Settlement provides outstanding results for each Class Member. And certainly "represents a better option than little or no recovery at all." *Vytorin Erisa Litigation*, 2010 WL 547613, at *9.

Therefore, all of the *Girsch* factors support final approval of the proposed Settlement.

        **2.**        **The Rule 23(e) Factors Support Final Approval of the Settlement**

                *a.*        *The Class Representatives and Their Counsel Have Adequately Represented the Class*

Rule 23(e)(2)(A) requires adequate representation by Plaintiffs and their counsel, and it was addressed in Plaintiffs' Preliminary Approval Motion (Dkt. 85 at 11) and in the concurrently-filed Memorandum in Support of Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Service Awards. In sum, Plaintiffs and Plaintiffs' Counsel have efficiently and diligently served the Class. The Named Plaintiffs have loyally and competently represented the Class since the original Complaint was filed almost two years ago. Yau Decl. ¶¶ 40–42; Declarations of Thomas Kallas and Lisa Bush, attached as Exhibits 3 and 4

to the Yau Decl.; Porter Decl. ¶ 20; Declarations of Shari Ahrendsen and Barry Clement, attached as Exhibits 2 and 3 to the Porter Decl. If they had not pursued the case, there would be no settlement benefits at all for the Class. They have participated in the informal discovery process and obtained and provided documents to their counsel including critical information used to prepare the complaints. *Id*. They consulted with counsel during settlement negotiations and were prepared to testify at deposition and trial. *Id*. They have no interests that are antagonistic to, or in conflict with, the Class.

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have defeated motions to dismiss, engaged in formal and informal discovery, and worked closely with a valuation expert to understand the range of potential recovery for the Class. Class Counsel engaged in lengthy settlement negotiations spanning over six weeks, and had the case not settled, they were prepared to complete fact and expert discovery, and if necessary, to go to trial. *See* Porter Decl. ¶ 21; Yau Decl. ¶ 16. Bailey and Glasser has an active class action practice with extensive experience in ERISA litigation and specifically ESOP class actions. Porter Decl. ¶¶ 8-14, 22. Indeed, *Chambers and Partners*, a widely recognized independent attorney ranking publication, has recognized Bailey & Glasser's lead partner in this Lawsuit, Gregory Porter, as one of only six "Band 1" attorneys for ERISA Plaintiffs' Litigation. *Id*. ¶ 10. Bailey & Glasser is one of the most experienced firms prosecuting ERISA class actions and has obtained hundreds of millions of dollars in recovery for ERISA classes. *Id*. ¶¶ 8-14. Mr. Porter has deep ESOP experience and has obtained one of only a few post trial judgments over $25 million. *Id*. ¶ 9; *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763 (4th Cir. 2019).

Cohen Milstein is a national leader in class action litigation generally and has been named by Law360 as one of the ten "Most Feared Plaintiffs Firms." *See* Yau Decl. ¶¶ 43–47; Ex. 1 to

Yau Decl. (Cohen Milstein resume).  For over 20 years, Cohen Milstein has had a dedicated group of ERISA class action specialists. For three of the last four years, Cohen Milstein has been recognized by Law360 for its Employee Benefits Practice Group of the Year. *Id*. ¶ 43. Michelle Yau chairs the ERISA practice group and was named an MVP in the area of Employee Benefits by Law360. *See id.* ¶ 44; Ex. 2 to Yau Decl. (Law360 article entitled *MVP: Cohen Milstein's Michelle Yau*). Ms. Yau began her career as an Honors attorney at the Department of Labor and has specialized in ERISA fiduciary breach cases involving complex financial transactions or investments for the last two decades. *Id*. ¶ 44.  Ms. Yau also worked as a financial analyst at Goldman Sachs where she performed valuations of private and public companies using the same valuation methodologies at issue in this case. *Id*.

> b.  *The Settlement Is the Product of Arm's Length Negotiations by Well-Informed and Experienced Counsel*

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically a presumption of fairness that a proposed settlement is fair and reasonable if it was the result of arm's length negotiations between experienced counsel in similar litigation after sufficient discovery. *See In re CIGNA Corp. Sec. Litig*., 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (granting final settlement approval).

Here, the Parties engaged in protracted negotiations which included the exchange of documents and information requested by Plaintiffs' Counsel and their expert, and numerous rounds of proposals and counterproposals. These hard-fought negotiations spanned months. Yau Decl. ¶ 17; Porter Decl. ¶ 21.

Further indication that the Settlement is reasonable is that it was reached after Defendants' motion to dismiss was fully briefed and ruled upon, and after substantial discovery was completed concerning the critical issue in all ESOP cases: how much the company stock was worth when the

ESOP purchased it. After obtaining this discovery, Plaintiffs' Counsel retained a valuation expert to review the valuation reports, transaction documents, and information related to World Travel's financial performance including notes taken during the due diligence process that preceded the ESOP Transaction. Porter Decl. ¶¶ 17-18. It was only after Plaintiffs received, reviewed, and had their valuation expert examine the discovery materials that the Parties began their settlement negotiations. Yau Decl. ¶ 17; Porter Decl. ¶¶ 18-19, 21. The fact that "counsel negotiating on behalf of the class had an adequate information base" was indicative of a fair settlement. *See* Advisory Committee's Notes to 2018 amendment to Rule 23(e). Indeed, Plaintiffs' Counsel entered the negotiations with a thorough understanding of Defendants' arguments and defenses, and both sides engaged in hard bargaining during settlement negotiations. In short, the proposed Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel. Rule 23(e)(2)(B) is met.

### c.    *The Relief Provided to the Class Is Adequate*

Rule 23(e)(2)(C) instructs courts to evaluate whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

*First*, as discussed in detail above, the Settlement recovery of $8.7 million is substantial and adequate for the Class in light of the costs, risks, and delay of trial and appeal. *See* Section IV.B.1.f, *supra*.

*Second*, the proposed method of distributing relief to the class is fair, convenient, and effective. Under the proposed Settlement Agreement, all Class Members that still have active

ESOP accounts will automatically receive their Settlement payments directly into their ESOP accounts. For Class Members that do not have active ESOP accounts, they will automatically receive their recoveries via check (or alternatively, via a rollover to another retirement account if they so elect). No claim forms are required. Because this method of distributing relief is both effective and efficient, this factor weighs in favor of granting final approval.

*Third*, the proposed award of attorneys' fees, including the timing of the payment of any award, is reasonable. As discussed in detail in Plaintiffs' Motion for Attorneys' Fees, Expense Reimbursements and Service Awards, Class Counsel seeks $2.9 million for attorneys' fees, which is consistent with ERISA class action fee awards of 1/3 the common fund created by class counsel and is amply justified given the substantial time invested by counsel in this Lawsuit, bearing a real risk of zero compensation for their time. Further, ERISA's regulation (Prohibited Transaction Exemption 2003-39) governing class-wide releases of claims asserted on behalf of an ERISA-governed plan requires that an independent fiduciary evaluate the proposed attorneys' fees to be paid from the Class recovery and provide a written opinion as to whether it is reasonable. Plaintiffs will discuss the independent fiduciary's written determination concerning the requested attorneys' fees in their supplemental brief which will be filed after the report is submitted to the Court. Relatedly, the timing of any attorneys' fees payment from the Settlement Fund is reasonable and adequately protects Class Members because any Court-awarded attorneys' fees may ***not*** be paid from the Settlement Fund until the Settlement becomes Final (meaning any appeals have been resolved or extinguished). *See* SA ¶ 8.2. Likewise, Settlement payments to Class Members are payable after the Settlement becomes Final. *Id*. ¶ 8.2.3.

*Fourth*, there are no agreements entered by any party to this Settlement that is not reflected in the Settlement Agreement, meaning there are no side agreements that must be disclosed under Rule 23(e)(3).

### d.    The Proposal Treats Class Members Equitably to Each Other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats Class Members equitably relative to each other. Here, allocations to **_all_** Class Members are based on the number of World Travel shares allocated to their ESOP accounts compared to all the allocated shares across the entire ESOP. Specifically, each Class Member's share of the net Settlement recovery will be determined by the total number of vested shares of World Travel stock allocated to that Class Member's ESOP account divided by the total number of vested shares stock allocated to all ESOP accounts of all Class Members. *See* POA, Ex. 3 to SA. The Settlement, therefore, does not treat any Class Members better than other Class Members; indeed all Class Members are treated identically. Hence, this factor weighs strongly in favor of approval *See Mehling*, 248 F.R.D. at 463 (E.D. Pa. 2008) (granting final approval to pension plan class action settlement allocating settlement payment on *pro rata* basis); *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *6 (E.D. Pa. Jan. 18, 2023) (granting final approval where settlement was distributed on a *pro rata* basis).

### 3.    The Non-Mandatory Prudential Factors Support Final Approval of the Settlement

Finally, the few *Prudential* factors relevant to this action, and not addressed above, support granting final approval. Although Class Members do not have the opportunity to opt out, they were provided with robust notice and the opportunity to file objections to the Settlement. *See Stevens*, 2020 WL 996418 at *6 (considering opportunity to file objections under this *Prudential* factor). Class Members will also be able to review the petition for attorneys' fees and expenses and have

24

more than sufficient time to object to those requests. Finally, Class Members do not need to submit a claim form and the procedure for Class Members to choose their payment option, detailed in the Plan of Allocation, is fair and reasonable. In sum, the applicable *Prudential* factors further support approval granting final approval.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court: : (1) grant final approval of the Settlement; (2) grant final certification of the Settlement Class for settlement purposes only; (3) find that the Notice Plan satisfies the requirements of due process and Rule 23(e)(1); (4) find the Settlement to be fair, reasonable and adequate; (5) dismiss on the merits and with prejudice all claims asserted against Defendants; (6) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (7) approve the awards of Plaintiffs' Counsel attorneys' fees in the amount of $2,900,000.00 and expenses in the amount of $67,649.70 as requested in their separately filed motion for attorneys' fees; (8) approve the settlement administration expenses necessary to effectuate the Settlement; and (9) award $15,000 to Named Plaintiff Thomas Kallas and $10,000 to each of Named Plaintiffs Shari Ahrendsen, Barry Clement, and Lisa Bush as Service Awards.

Dated: April 28, 2023                          Respectfully Submitted,


By: */s/ Gregory Y. Porter*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michelle C. Yau (admitted *pro hac vice*)
Daniel R. Sutter (admitted *pro hac vice*)
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Caroline E. Bressman (admitted *pro hac vice*)
400 South Fourth Street ● #401-26
Minneapolis, MN 55415
(612) 807-1575
cbressman@cohenmilstein.com

**BAILEY & GLASSER LLP**
Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Patrick O. Muench (*pro hac vice*)
318 W. Adams, Suite 1512
Chicago, IL 60606
Telephone: (312) 995-7143
Facsimile: (314) 863-5483
pmuench@baileyglasser.com

Laura E. Babiak (*pro hac vice*)
209 Capital Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
lbabiak@baileyglasser.com

Patricia Mulvoy Kipnis (PA Bar No. 91470)
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
Telephone: (856) 324-8219
Facsimile: (304) 342-1110
pkipnis@baileyglasser.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COUNSEL</u>

Pursuant to Local Rule 7.1(b), I certify that I have conferred with counsel for all Parties and this motion is uncontested.

<u>*/s/ Gregory Y. Porter*</u>
Gregory Y. Porter

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2023, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Gregory Y. Porter*
Gregory Y. Porter