IN THE UNITED STATES DISTRICT COURT9
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARI AHRENDSEN, et al.          :          CIVIL ACTION
                                 :
        v.                       :
                                 :
PRUDENT FIDUCIARY SERVICES,      :          NO. 21-2157
LLC, et al.

MEMORANDUM

Bartle, J.                                    June 22, 2023

        Before the court is the unopposed motion of

plaintiffs,[1] four former employees of World Travel, Inc. and

former or current members of the company's leveraged employee

stock ownership plan ("ESOP"), for certification of a settlement

class consisting of all persons who, at any time on or prior to

January 1, 2023, were vested participants in the ESOP and the

beneficiaries of such participants.[2]  Plaintiffs also seek

approval of a settlement for the class.  In addition, plaintiffs

have filed an unopposed motion for attorneys' fees, expense

_____

1.   The named plaintiffs are Shari Ahrendsen, Barry Clement,
Lisa Bush, and Thomas Kallas.

2.   The following groups are excluded from the settlement
class:  (1) initial shareholders who sold their company stock to
the ESOP, directly or indirectly, and their immediate families;
(2) the directors of World Travel, Inc. and their immediate
families; and (3) the legal representatives, successors, and
assigns of any such excluded persons.

reimbursement, settlement administration expenses, and service awards.

Plaintiffs brought this putative class action against Prudent Fiduciary Services, LLC ("PFS") and its president Miguel Paredes as well as the founders of World Travel:  James A. Wells, James R. Wells, and Richard G. Wells (collectively "the Wells defendants").  Plaintiffs allege that, while PFS and Paredes were trustees of the Employee Stock Ownership Plan ("the Plan"), the Wells defendants sold all their shares to the Plan in a transaction that is prohibited by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Plaintiffs filed an amended complaint on August 30, 2021.  Thereafter, the court denied the motions of defendants PFS and Paredes to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Ahrendsen v. Prudent Fiduciary Servs., LLC, No. CV 21-2157, 2022 WL 294394 (E.D. Pa. Feb. 1, 2022).  However, the court dismissed the action as to defendants James R. Wells and Richard G. Wells. Id.

Nearly one year later, the court granted plaintiffs' unopposed motion for preliminary certification of the settlement class under Rules 23(a) and 23(b)(1)(A) or 23(b)(1)(B) of the Federal Rules of Civil Procedure and for preliminary approval of the settlement.  On February 2, 2023, defendants served

-2-

settlement notices on the U.S. Attorney General and state
attorneys general for all 50 states in accordance with the Class
Action Fairness Act, 28 U.S.C. § 1715.  On March 2, 2023,
pursuant to the court's order, the settlement administrator,
Analytics Consulting, LLC, mailed the class notice to 608 class
members.  The class notice described in detail:  (1) background
information on the action; (2) the settlement amount; (3) the
calculation used to determine each class member's recovery; and
(4) class members' legal rights and options, including the
option to object to the settlement.  As of April 27, 2023, the
class notice was successfully sent to 597 class members.

On June 12, 2023, the court held a hearing pursuant to
Rule 23(e)(2) of the Federal Rules of Civil Procedure on:
(1) the propriety of the proposed settlement class; (2) the
fairness, reasonableness, and adequacy of the proposed
settlement; and (3) the reasonableness of the requested fees,
expenses, and service awards.

I

Plaintiffs are all former employees of World Travel,
Inc., a corporate travel management company, and are former or
current members of a pension plan offered and administered by
World Travel.  The Plan is an ESOP designed to invest primarily
in the securities of World Travel.  PFS and Paredes, its
president and founder, served as the Trustee for the Plan at all

-3-

relevant times in question. The Trustee was chosen by the Board of Directors of World Travel ("the Board").

The Wells defendants are relatives who founded World Travel in 1983. They, along with their families, owned World Travel until December 2017. James A. Wells was the former president and chief executive officer of World Travel and continues to serve as chairman of the Board. Richard Wells is the former secretary, treasurer, and chief financial officer. All three Wells defendants were Board directors at all relevant times.

On December 20, 2017, the Trustee, for a fee, negotiated the purchase by the Plan of 19,860,000 shares of World Travel common stock from the Wells defendants for $200,573,217. The purchase was financed through a loan for the full amount from World Travel to the Plan at an annual interest rate of 2.64%. The Trustee obtained an indemnification agreement from World Travel. As a result of the transaction, World Travel became a 100% employee-owned company. The Wells defendants, however, retained their positions on the Board.

Plaintiffs claim that the transaction was prohibited by ERISA as a transfer of assets between the Plan and shareholders of the sponsor company, that is the Wells defendants. See 29 U.S.C. § 1106(a)-(b); 29 U.S.C. § 1132(a)(3). They also aver that the Trustee and Wells

-4-

defendants breached their fiduciary duties in negotiating the transaction.  See 29 U.S.C. § 1104(a); 29 U.S.C. § 1110.  To support these claims, plaintiffs allege:  (1) James A. Wells exercised control over the transaction, including by preparing the financial projections on which the Trustee relied; (2) the Plan overpaid for World Travel stock because it did not receive a discount for its lack of control of the Board; (3) the sale price did not account for World Travel's undisclosed liabilities; and (4) the Trustee failed to perform adequate due diligence by unquestioningly relying on inaccurate growth projections and financial analyses.

II

The court must first consider whether the requirements of Rules 23(a) and 23(b)(1)(A) or 23(b)(1)(B) are met.  A class can be certified only if the plaintiffs can satisfy the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the prerequisites of Rule 23(a), plaintiffs must also satisfy one of the requirements under Rule 23(b). Plaintiffs seek to certify the class under Rule 23(b)(1)(A) or (B), which permits class certification if:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

After thorough review of the record, the court is satisfied that plaintiffs' proposed class has met the requirements of Rules 23(a) and 23(b)(1)(A) or (B).  The court also finds that notice to the proposed class members was proper and in accordance with the procedure approved by the court.[3]

### III

Claims of a certified class or of a class proposed to be certified for purposes of settlement may be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  Before approving a settlement, the court must hold a hearing and find

---

[3].   The court also finds that defendants served timely settlement notices on the U.S. Attorney General and state attorneys general for all 50 states in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715.

that the settlement agreement is "fair, reasonable, and
adequate."  Fed. R. Civ. P. 23(e)(2).  Whether a settlement
agreement should be approved is "left to the sound discretion of
the district court."  In re Nat'l Football League Players
Concussion Injury Litig., 821 F.3d 410, 436 (3d Cir. 2016)
(quoting In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent
Actions, 148 F.3d 283, 299 (3d Cir. 1998)).

          The court turns to the two sets of factors in
assessing the fairness of a settlement agreement.  First, the
court analyzes the pertinent elements set forth in Rule
23(e)(2):

> (A) the class representatives and class
> counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's
> length;
>
> (C) the relief provided for the class is
> adequate, taking into account:
>
> > (i) the costs, risks, and delay of
> > trial and appeal;
> >
> > (ii) the effectiveness of any
> > proposed method of distributing
> > relief to the class, including the
> > method of processing class-member
> > claims;
> >
> > (iii) the terms of any proposed
> > award of attorney's fees,
> > including timing of payment; and
> >
> > (iv) any agreement required to be
> > identified under Rule 23(e)(3);
> > and

(D) the proposal treats class members
equitably relative to each other.

Second, the court considers the "traditional" factors
that our Court of Appeals delineated in Girsh v. Jepson, 521
F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense, and likely
> duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the
> stage of the proceedings and the amount of
> discovery completed; (4) the risks of
> establishing liability; (5) the risks of
> establishing damages; (6) the risks of
> maintaining the class action through the
> trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range
> of reasonableness of the settlement fund in
> light of the best possible recovery; and (9)
> the range of reasonableness of the
> settlement fund to a possible recovery in
> light of all the attendant risks of
> litigation.

There is an "overriding public interest in settling
class action litigation." In re Warfarin Sodium Antitrust
Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Settlement is
particularly favored "in class actions and other complex cases
where substantial judicial resources can be conserved by
avoiding formal litigation." Id. (quoting In re Gen. Motors
Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768,
784 (3d Cir. 1995)).

To further this policy of favoring settlement, our
Court of Appeals has instructed district courts to apply a
presumption of fairness to a proposed settlement when:  "(1) the

-8-

settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Warfarin, 391 F.3d at 535.  As explained in greater detail below, the parties conducted negotiations at arm's length.  They reached this settlement after exchanging extensive discovery and engaging in lengthy negotiations.  Counsel for both parties are highly qualified and have significant experience in this type of litigation.  Finally, there have been no objections to the settlement.  Thus, the court finds that the presumption of fairness applies here.

IV

The court next considers whether the settlement is fair, reasonable, and adequate under the Rule 23(e)(2)(A).

First, the court finds that the class representatives and class counsel have adequately represented the class throughout the litigation.  See Fed. R. Civ. P. 23(e)(2)(A). The inquiry into the adequacy of representation at the final settlement approval stage under Rule 23(e)(2)(A) requires review of class counsel's "actual performance . . . acting on behalf of the class."  Fed R. Civ. P. 23(e)(2) Advisory Committee Notes. Critical to this inquiry is whether class counsel had an "adequate information base," considering the "nature and amount of discovery," to agree to the settlement.  Id.

-9-

The parties, as noted above, have conducted extensive discovery.  After issuing document requests and subpoenas, plaintiffs obtained and reviewed sufficient discovery to evaluate a potential settlement.  Plaintiffs received documents on, among other things, the policies, procedures, and financial analyses relevant to the transaction in question as well as communications from third parties interested in acquiring World Travel.  Plaintiffs also engaged a valuation expert to estimate damages.  Using the information obtained during discovery, the expert calculated the difference between what ESOP paid for World Travel shares and the fair market value, as estimated by the expert, of the shares.  The court is satisfied that class counsel's decision to settle was adequately informed by this discovery.  Accordingly, the court finds that class counsel has adequately represented the interests of the certified class in this action.

The court next considers whether the proposed settlement was "negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Class counsel includes attorneys who are nationally recognized for their substantial class action practices.  Settlement was reached after parties fully briefed and plaintiffs received a favorable ruling on defendants' motion to dismiss.  After parties completed discovery sufficient to estimate the value of World Travel shares, they engaged in

lengthy settlement negotiations that spanned six weeks and involved several rounds of offers and counteroffers.  Thus, the court finds the settlement agreement was negotiated at arm's length.

The third consideration under Rule 23 is whether "the relief provided for the class is adequate."  Fed R. Civ. P. 23(e)(2)(C).  The Rule sets forth nonexhaustive factors to guide this determination:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).[4]

Id.

Pursuant to the settlement agreement, defendants will deposit $8,700,000 into a settlement fund account which will be established by the settlement administrator at a federally chartered financial institution.  Each of the approximately 608 class members will receive, on average, $14,309 before any

---

4.  The parties have not entered into any agreements not reflected in the settlement agreement.  Therefore, the court will not discuss this factor.

attorneys' fees, expenses, and service awards are deducted.
Class counsel seek to deduct the following from the settlement
account:  (1) $2,900,000 for attorney's fees; (2) $67,649.70 for
out-of-pocket litigation expenses; (3) $17,500 for settlement
administration expenses; (4) $15,000 for the fees and costs of
the independent fiduciary; (5) $15,000 to named plaintiff Thomas
Kallas as a service award[5]; and (6) $10,000 each to named
plaintiffs Shari Ahrendsen, Barry Clement, and Lisa Bush as
service awards.  If these requests are granted, the class
members would receive approximately $9,300 in individual net
payments.

Plaintiffs' expert estimates that the ESOP overpaid by
between $8.6 million and $22.4 million.  Thus, according to this
expert, the proposed settlement of $8.7 million is within the
range of the class's potential recovery and is 39% of the
maximum recovery the class could obtain.  The court finds this
relief is adequate given the costs, risks, and delay of trial
and appeal.  ERISA actions frequently require complex legal
theories that lead to lengthy litigation.  See Stevens v. SEI
Invs. Co., No. CV 18-4205, 2020 WL 996418, at *3 (E.D. Pa. Feb.
28, 2020).  Here, the parties vehemently contest whether the

---

5.   Plaintiffs note that they are requesting a higher service
award for Kallas "due to his unique contributions to the case's
legal theories, which exposed him to reputational and future
employment risks."

ESOP overpaid for World Travel Stock.  Defendants denied all
allegations in the complaint and asserted several affirmative
defenses.  As a result, litigation in this action would likely
require continued discovery and motion practice.  Furthermore, a
trial would involve fact-intensive inquiries and conflicting
expert testimony.  Thus, continued litigation would likely
demand significant resources from the parties and the judiciary.

        The court also finds that the proposed method of
distributing relief to the class is effective.  On March 2,
2023, the settlement administrator implemented a class notice
process that reached 597 of the 608 class members.  Under the
proposed settlement agreement, settlement payments will be
deposited directly into class members' ESOP accounts.  If there
are class members without ESOP accounts, they will receive their
recovery via check or a rollover to another retirement account
of their choosing.  This is an effective method of distributing
relief that requires little effort on the part of class members.

        The court must consider "the terms of any proposed
award of attorney's fees, including timing of payment."  Fed R.
Civ. P. 23(e)(2)(C)(iii).  As discussed in greater detail below,
class counsel reasonably seeks one-third of the settlement fund,
$2.9 million, for attorneys' fees and an additional $145,149 for
other fees, expenses, and service awards.  "In complex ERISA
cases, courts in this Circuit and others also routinely award

attorneys' fees in the amount of one-third of the total
settlement fund." In re Cigna-Am. Specialty Health Admin. Fee
Litig., No. 2:16-CV-03967-NIQA, 2019 WL 4082946, at *14 (E.D.
Pa. Aug. 29, 2019). Attorneys' fees can only be paid from the
settlement fund after the settlement becomes final and,
therefore, any appeals have been resolved or extinguished.
Thus, all the factors under 23(e)(2)(C) indicate that the relief
provided to the class is adequate.

     The final consideration under Rule 23 is whether the
settlement "treats class members equitably relative to each
other." Fed. R. Civ. P. 23(e)(2)(D). Here, a class member's
allocation is determined by the total number of vested World
Travel shares allocated to that member's ESOP account divided by
the total number of vested World Travel shares allocated to all
ESOP accounts of all class members. Each class member's
allocation is calculated the same way. The settlement treats
all class members identically.

     Accordingly, all four factors in Rule 23(e)(2) weigh
in favor of approving the proposed class settlement.

V

     The court next reviews the settlement under the Girsh
factors. Many of the relevant factors overlap with the Rule
23(e)(2) factors set forth above. For example, the court's
findings under 23(e)(2)(C) are pertinent to the following Girsh

-14-

factors:  (1) "the complexity, expense, and likely duration of
the litigation"; (4) "the risks of establishing liability"; (5)
"the risks of establishing damages"; and (6) "the risks of
maintaining the class action through trial."  The court
reiterates its findings under 23(e)(2)(C):  the settlement
resolves a hotly contested ERISA action that would otherwise
require significant resources from the parties and the
judiciary.

Similarly, the court's findings under 23(e)(2)(C) also
apply to Girsh factors 8 and 9:  "the range of reasonableness of
the settlement fund in light of the best possible recovery" and
"the range of reasonableness of the settlement fund to a
possible recovery in light of all the attendant risks of
litigation."  As stated above, the proposed settlement, as
estimated by plaintiffs' valuation expert, is within the range
of the class's potential recovery and is 39% of the maximum
recovery the class could obtain.  The settlement fund amount is
reasonable given the complexity of the action and the challenges
the parties would face at trial.

The court's finding under Rule 23(e)(2)(A) also
mirrors the analysis under the third Girsh factor:  "the stage
of the proceedings and the amount of discovery completed."  In
making this settlement, the parties were informed by substantial

discovery on the transaction in question and the value of World Travel shares.

The court must still assess Girsh factor 2: "the reaction of the class to the settlement."  This factor requires the court to examine "the number and vociferousness of the objectors" in context with the size of the class.  Chester Upland Sch. Dist. v. Pennsylvania, 284 F.R.D. 305, 325 (E.D. Pa. 2012) (quoting Gen. Motors, 55 F.3d at 812).  Here, no class members have objected to the proposed settlement.

The seventh Girsh factor is "the ability of the defendants to withstand a greater judgment."  It is "most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."  In re Nat'l Football League Players Concussion Inj. Litig., 821 F.3d 410, 440 (3d Cir. 2016), as amended (May 2, 2016).  There is no evidence that defendant's ability to pay the judgment was a factor in determining the settlement amount.  However, "[e]ven if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement."  In re Processed Egg Prod. Antitrust Litig., 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016).

Here, the court finds that all <u>Girsh</u> factors, except for the seventh factor, weigh heavily in favor of approving the settlement.  Furthermore, even if the seventh factor--defendants' ability to withstand greater judgment--cautions against settlement, it does not outweigh the court's assessment of the other <u>Girsh</u> factors.

VI

The court must also review the motion of plaintiffs for attorney's fees, expense reimbursement, settlement administration expenses, and service awards.  Class counsel are entitled to reasonable attorney's fees and litigation expenses paid from a common fund settlement.  <u>See, e.g.</u>, <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980); <u>In re Gen. Motors Corp.</u>, 55 F.3d at 820 n.39.  The preferred method for calculating attorneys' fees in class actions, the percentage-of-recovery approach, involves applying a certain percentage to the total settlement fund to calculate attorney's fees.  <u>See, e.g.</u>, <u>Stevens v. SEI Invs. Co.</u>, No. CV 18-4205, 2020 WL 996418, at *10 (E.D. Pa. Feb. 28, 2020).  Our Court of Appeals has instructed district courts to consider the following factors from <u>Gunter v. Ridgewood Energy Corp.</u> when analyzing the reasonableness of a fee award in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial

-17-

> objections by members of the class to the
> settlement terms and/or fees requested by
> counsel; (3) the skill and efficiency of the
> attorneys involved; (4) the complexity and
> duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted
> to the case by plaintiffs' counsel; and (7)
> the awards in similar cases.

In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir.

2005), as amended (Feb. 25, 2005) (citing Gunter v. Ridgewood

Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

As stated above, defendants have agreed to pay

$8,700,000 into a settlement fund for class members.  This

amount is, according to plaintiffs' expert, within the range of

the class's potential recovery and is 39% of the maximum

recovery the class could obtain.  The settlement fund would

provide each class members with, on average, a $14,309 recovery

before payment of attorneys' fees, expenses, and service awards.

Class counsel seek to deduct the following from the

settlement account:  (1) $2,900,000 for attorney's fees; (2)

$67,649.70 for out-of-pocket litigation expenses; (3) $17,500

for settlement administration expenses; (4) $15,000 for the fees

and costs of the independent fiduciary; (5) $15,000 to named

plaintiff Thomas Kallas as a service award; and (6) $10,000 each

to named plaintiffs Shari Ahrendsen, Barry Clement, and Lisa

Bush as service awards.  Class counsel's request for $2,900,000

for attorneys' fees amounts to one-third of the settlement fund,

which is an amount consistent with other comparable ERISA cases. See, e.g., In re Cigna-Am., 2019 WL 4082946, at *14.  If the requested fees, expenses, and awards are deducted from the settlement fund, class members would receive, on average, payments of $9,300.  This amount still exceeds the typical recovery in other ERISA cases in our Circuit. See, e.g., Stevens v. SEI Invs. Co., 2020 WL 996418, at *10 (E.D. Pa. Feb. 28, 2020).  Given this analysis, the first and seventh Gunter factors--"the size of the fund created and the number of persons benefitted" and "the awards in similar cases"--indicate that the proposed attorneys' fees are reasonable.

The remaining Gunter factors mirror the Rule 23 and Girsh factor analyses above.  Qualified class counsel devoted 1,599.90 hours on a contingency basis, at the risk of nonpayment, to this complex and hotly contested ERISA action. After substantial discovery, both parties engaged in several rounds of negotiations to arrive at a settlement to which no class members have objected.  The settlement conserves resources of the parties and the judiciary.  Accordingly, the Gunter factor analysis demonstrates that the proposed fee award is reasonable.

Furthermore, the lodestar method affirms that the proposed attorney's fee award is reasonable.  Our Court of Appeals has indicated that the lodestar method can be used "to

-19-

cross-check the reasonableness of a percentage-of-recovery fee award." Sullivan v. DB Invs., Inc., 667 F.3d 273, 330 (3d Cir. 2011). The lodestar method requires multiplying "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid Corp. Sec. Litig., 396 F.3d at 305-07. When using the lodestar method as a cross-check, the court can use an abridged analysis that does not require "mathematical precision nor bean counting." Id. at 305. The court is permitted to "rely on summaries submitted by the attorneys and need not review actual billing records." Id. at 307.

Class counsel, as noted above, devoted approximately 1,599.90 hours to this action. They estimate an average hourly rate of $653.72, which is well within the range often approved by courts in this Circuit. See, e.g., Pfeifer v. Wawa, Inc., No. CV 16-497, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018). Multiplying 1,599.90 hours by an hourly rate of $653.72 produces an estimated lodestar of $1,045,300.50. Dividing the requested fee of $2,900,000 by the $1,045,300.50 lodestar yields a multiplier of approximately 2.77. In common fund cases, a multiplier between one and four is frequently awarded. See,

e.g., In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998).

After considering the Gunter factors and using the lodestar method as a cross-check, the court finds that the proposed fees, expenses, and awards are reasonable.

VII

The court determines that the proposed settlement of this action is fair, reasonable, and adequate under the Rule 23(e)(2) and Girsh factors.  Furthermore, the court finds that class counsel has proposed reasonable fees, expenses, and awards.  Accordingly, the court will grant the unopposed motion of the plaintiffs for certification of the settlement class and approval of the settlement.  The court will also grant the unopposed motion of the plaintiffs for attorneys' fees, expense reimbursement, settlement administration expenses, and service awards.